# EXHIBIT D



One Barker Avenue
White Plains, New York 10601
**T**    914.821.3089
kaufman@leasonellis.com

**Matthew L. Kaufman**
PARTNER

February 22, 2022

Lionel M. Lavenue, Esq.
1875 Explorer Street
Suite 800
Reston, VA 20190-6023

Dear Lionel,

Thank you for your responsive correspondence of 28 January 2022 reiterating CentralSquare's commitment to pursuing licensing discussions and attempting to provide further clarity as to how Carbyne's Apex product ("Apex") allegedly infringes CentralSquare's U.S. Patent No. 9,301,117 (the "'117 Patent").

Despite your further explanation, we remain unconvinced that Apex infringes the '117 Patent based on our understanding of the manner in which the '117 Patent describes implementation of the individual functional limitations that the web-hosting module provides.  We also note and point your attention to the fact that CentralSquare's latest assertion fails to make a prima facie showing of infringement, at least with respect to claim 1, based on its omission from the claim chart or any discussion of multiple limitations comprising the claim ("presentation module configured to…"; "wherein the first outgoing textual message includes a uniform resource locator (URL) link to the web resources").

Regarding the distinctions that we believe exist between the '117 Patent as claimed and Apex with respect to receiving and querying location information, we note for example that CentralSquare has not presented a compelling argument with respect to the inclusion and use of multiple networks by Apex as required for the receiving and querying.  More specifically, the independent claims of the '117 Patent each recite that voice calls are "**placed** to an emergency call center **through an emergency communications network**," (*i.e.*, receiving) and that "**outgoing** textual messages [are sent] to the appropriate wireless mobile devices **through a second communications network that is different than** the emergency communications network" (*i.e.*, querying) (emphasis added). Apex does not implement such features or functionality.

Contrary to your assertions, the only evidence of use that CentralSquare presents is the use by Apex of "a secondary secure path" to a caller, but there is no mention of or reference to the use of multiple communication networks.  Indeed, this evidence does not even appear to support your conclusion that "[t]he second communications network (Carbyne's cloud network) is different from the emergency communications network that received the call (e.g., a locality's 911 emergency communications network)," which in any event is not how the limitations are phrased.  Instead, Apex works in conjunction with existing infrastructure located at a 911 call center to provide enhanced services, but Apex only uses the same first emergency communications network over which a call is received at the call center, *i.e.*, the 4G or 5G wireless network used to carry data (and voice) between the caller and the emergency call center. Nor does Apex utilize another, separate communication network, distinct from the emergency communications

# LEASON ELLIS

Lionel M. Lavenue, Esq.
February 22, 2022
Page 2

network over which the call is initially received, to carry responsive communications back to the caller from the 911 call center or Apex.

Based on its current non-infringement positions, Carbyne respectfully elects at this time to not engage CentralSquare in license negotiations, but otherwise continues to reserve all rights.

Warmest regards,

Matthew L. Kaufman