**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>        v.<br><br>CARBYNE, INC., and CARBYNE LTD.<br><br>    Defendants and Counterclaim-Plaintiffs. | Civil Action No. 1:24-cv-01497-ADA<br><br>JURY TRIAL DEMANDED |

## CARBYNE ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT AND AMENDED COUNTERCLAIMS

Defendants and Counterclaim-Plaintiffs Carbyne, Inc. and Carbyne Ltd. ("Carbyne"), by and through its undersigned counsel, states the following as their Answer to Plaintiff and Counterclaim-Defendant CentralSquare Technologies LLC's ("CentralSquare") Complaint ("the Complaint"). To the extent any allegation contained in CentralSquare's Complaint is not specifically admitted in this Answer, it is hereby denied. The numbered paragraphs in this answer correspond to the numbered paragraphs of CentralSquare's Complaint. Carbyne further denies any allegation that may be implied by or inferred from any content in CentralSquare's Complaint. The headings used in Carbyne's answer are for reference only and are not admissions of any kind.

## BACKGROUND AND NATURE OF THE SUIT

1.      Carbyne admits that the Complaint includes a claim for patent infringement under Title 35 of the United States Code, and that CentralSquare asserts infringement of United States Reissue

Patent No. RE50,016 (the "'016 Patent"). Carbyne denies that it infringes, or has ever infringed, the '016 Patent. Carbyne denies any remaining allegations in this paragraph.

2.      Carbyne lacks information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore denies such allegations.

3.      Carbyne lacks information sufficient to form a belief as to the truth of the allegation in this Paragraph, and therefore denies such allegation.

4.      Carbyne lacks information sufficient to form a belief as to the truth of the allegations and statements in this Paragraph, and therefore denies such allegations.

5.      Carbyne denies the allegation that CentralSquare's technology is "unique," or that it "revolutionizes" anything. Carbyne lacks information sufficient to form a belief as to the truth of the other allegations and statements in this Paragraph, and therefore denies such allegations.

6.      Carbyne lacks information sufficient to form a belief as to the truth of the allegations and statements in this Paragraph, and therefore denies such allegations.

7.      Carbyne lacks information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore denies such allegations.

8.      Carbyne denies that CentralSquare was the first to market technology that determined a cellphone caller's location by sending a hyperlink to a user's wireless phone.  Carbyne lacks information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies such allegations.

9.      Carbyne admits that Carbyne and CentralSquare signed a one-year reseller agreement in 2022, and that such agreement was not renewed. Carbyne further admits that the agreement authorized CentralSquare's resale of Carbyne products. Carbyne lacks information sufficient to

form a belief as to the truth of the other allegations and statements in this Paragraph, and therefore denies such allegations.

10.    Denied.

11.    Carbyne admits that CentralSquare sent Carbyne the letter attached at Exhibit A to the Complaint on or around November 4, 2021, and that in the letter CentralSquare accused Carbyne of practicing certain limitations of U.S. Patent No. 9,301,117 ("the '117 Patent"). Carbyne denies the remaining allegations of this Paragraph.

12.    Carbyne admits that on or around January 3, 2022, Carbyne sent, through its attorneys, the letter attached to CentralSquare's Complaint at Exhibit B. Carbyne admits that in this letter, Carbyne informed CentralSquare that Carbyne did not require a license to the '117 Patent because Carbyne did not infringe the patent. Carbyne admits that its letter included the language quoted by CentralSquare in this Paragraph. Carbyne denies the remaining allegations of this Paragraph.

13.    Carbyne admits that on or around January 28, 2022, CentralSquare sent the letter attached to CentralSquare's Complaint at Exhibit C. Carbyne denies that the letter demonstrated how the '117 Patent's limitations are present in Carbyne's Apex product.  Carbyne denies the remaining allegations of this Paragraph.

14.    Carbyne admits that on or around February 22, 2022, Carbyne sent, through its attorneys, the letter attached to CentralSquare's Complaint at Exhibit D. Carbyne admits that this letter explained to CentralSquare reasons why certain limitations of the '117 Patent are not present in Carbyne's products. Carbyne denies the remaining allegations of this Paragraph.

15.    Carbyne admits that on or around April 9, 2022, CentralSquare sent the letter attached to CentralSquare's Complaint at Exhibit E. Carbyne denies that this letter explained how the '117

Patent's limitations were met by Carbyne's products. Carbyne denies the remaining allegations of this Paragraph.

16.     Carbyne admits that on or around July 21, 2022, Carbyne sent, through its attorneys, the letter attached to CentralSquare's Complaint at Exhibit F. Carbyne admits that this letter, among other things, alleged the invalidity of the '117 Patent under 35 U.S.C. § 103 over U.S. Patent Publication Nos. 2010/0261492 to Salafia et al., and 2012/0190384 to Marr et al.

17.     Carbyne admits that nearly two years after Carbyne's previous communication, CentralSquare sent the letter attached to CentralSquare's Complaint at Exhibit G. Carbyne admits that this letter informed Carbyne of the existence of U.S. Patent No. RE50,016, and that CentralSquare asserted that it was prepared to offer Carbyne a license to the '016 Patent for past and future infringement. Carbyne admits that the '016 Patent was issued on June 18, 2024, as a reissue of the '117 Patent. Carbyne denies the remaining allegations of this Paragraph.

## THE PARTIES

18.     Carbyne lacks information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore denies such allegations.

19.     Admitted.

20.     Admitted.

21.     Carbyne Ltd. and Carbyne, Inc. admit that colloquially they each refer to themselves as "Carbyne."  Carbyne, Inc. admits that it operates in the United States under the business name Carbyne.  Carbyne Ltd. admits that it was founded by Amir Elichai in 2015. Carbyne further admits that the link provided by CentralSquare in this Paragraph directs to Carbyne's website, and in particular a page entitled "About Us" describing Carbyne's business. Otherwise, Carbyne is unable to understand the remaining allegations in this Paragraph, and therefore unable to form a belief as to the truth of the remaining allegations in this Paragraph, and therefore denies such allegations.

## JURISDICTION AND VENUE

22.    Carbyne admits that the action arises under the patent laws of the United States, which include 35 U.S.C. §§ 271, 281, and 284-85. Carbyne admits that this Court has subject matter jurisdiction over meritorious actions for patent infringement generally pursuant to 35 U.S.C. § 271, et seq, 28 U.S.C. §§ 1331 and 1338. Carbyne denies, however, that CentralSquare's Complaint sets forth a valid or meritorious claim for patent infringement. Carbyne denies the remaining allegations of this Paragraph.

23.    Carbyne Ltd. denies that it is subject to this Court's personal jurisdiction but does not contest personal jurisdiction solely for purposes of this case.  Carbyne, Inc. admits, solely for purposes of this case, that it is subject to personal jurisdiction in this Court.  Carbyne denies the remaining allegations set forth in this Paragraph.

24.    Carbyne Ltd. denies that it is subject to this Court's personal jurisdiction but does not contest personal jurisdiction solely for purposes of this case.  Carbyne, Inc. admits, solely for purposes of this case, that it is subject to personal jurisdiction in this Court.  Carbyne, Inc. admits that it conducts some business operations in Texas. Carbyne, Inc. admits that it has a contract with the Texas Department of Information Resources to sell directly to "state and local government, public education, [and] other public entities in Texas" and that this contract concerns "[Carbyne] Software-as-a-Service (SaaS) emergency preparedness and public safety solutions for Next Generation 911 (NG911) call handling." Carbyne denies that either Carbyne Ltd. or Carbyne, Inc. maintains a regular business within this forum, at least insofar as this allegation is intended as a reference to proper venue under 28 USC § 1400 or § 1391.  Carbyne denies the remaining allegations set forth in this Paragraph.

25.    Carbyne Ltd. denies that it is subject to this Court's personal jurisdiction but does not contest personal jurisdiction solely for purposes of this case.  Carbyne, Inc. admits, solely for

purposes of this case, that it is subject to personal jurisdiction in this Court. Carbyne denies the remaining allegations set forth in this Paragraph.

26.     Denied.

27.     Carbyne, Inc. admits that it maintains a commercial website accessible to residents of the state of Texas, and this judicial district. Carbyne, Inc. admits that it describes and promotes the accused products on its website. Carbyne, Inc. admits that it has realized revenue from the sale of its products and services in this state. Carbyne denies the remaining allegations set forth in this Paragraph.

28.     Carbyne Ltd. denies that it offers products and services and conducts business in the Western District of Texas. Carbyne Ltd. denies that it is subject to this Court's personal jurisdiction but does not contest personal jurisdiction solely for purposes of this case. Carbyne, Inc. admits that it conducts business operations in Texas. Carbyne, Inc. admits that it has sold products and services to customers in the Rio Grande Council of Governments region of Texas. Carbyne, Inc. admits, solely for purposes of this case, that it is subject to personal jurisdiction in this Court. Carbyne denies that the description of a video on Carbyne's website in this Paragraph is accurate. Carbyne denies the remaining allegations set forth in this Paragraph.

29.     Denied.

30.     Carbyne admits that Carbyne Inc. has employees in this District. Carbyne otherwise denies the allegations in this Paragraph.

31.     Carbyne admits that Carbyne Inc. provides its employees with necessary equipment and materials to perform their jobs. Carbyne otherwise denies the allegations in this Paragraph.

32.     Denied.

33.     Denied.

34.     Carbyne Ltd. denies that it is subject to this Court's personal jurisdiction but does not contest personal jurisdiction solely for purposes of this case.   Carbyne otherwise denies the remaining allegations set forth in this Paragraph.

## THE ACCUSED PRODUCTS

35.     Carbyne incorporates its responses to Paragraphs 1-34 as if fully set forth herein.

36.     Admitted as to Carbyne, Inc. Carbyne otherwise denies the remaining allegations set forth in this Paragraph.

37.     Carbyne admits that two of its products are named APEX and Universe. Carbyne otherwise denies the allegations in this Paragraph, and specifically denies that any Carbyne product or service infringes or has infringed any CentralSquare patent.

38.     Carbyne admits that it provides training and support for customers of its products. Carbyne otherwise denies the remaining allegations set forth in this Paragraph.

39.     Denied.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. RE50,016

40.     Carbyne incorporates its responses to Paragraphs 1-39 as if fully set forth herein.

41.     Carbyne admits that the '016 Patent is titled "SMS Communication During Emergencies." Carbyne admits that the face of the '016 Patent includes an issuance date of June 18, 2024. Carbyne otherwise lacks information sufficient to form a belief as to the truth of the other allegations and statements in this Paragraph, and therefore denies such allegations.

42.     Carbyne lacks information sufficient to form a belief as to the truth of the allegations and statements in this Paragraph, and therefore denies such allegations.

43.     Carbyne lacks information sufficient to form a belief as to the truth of the allegations and statements in this Paragraph, and therefore denies such allegations.

44.     Carbyne lacks information sufficient to form a belief as to the truth of the allegations and statements in this Paragraph, and therefore denies such allegations.

45.     Carbyne lacks information sufficient to form a belief as to the truth of the allegations and statements in this Paragraph, and therefore denies such allegations.

46.     Denied.

47.     Carbyne admits that it has not obtained an express license to the '016 Patent. Carbyne otherwise denies the remaining allegations set forth in this Paragraph.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

## DEMAND FOR A JURY TRIAL

No response is required for CentralSquare's demand for a jury trial.

## PRAYER FOR RELIEF

Carbyne denies that CentralSquare is entitled to any relief in connection with the allegations in this Complaint, including, without limitation, the Paragraphs A–G in the Prayer for Relief.

## **AFFIRMATIVE DEFENSES**

Based on information and belief, Carbyne asserts the following defenses and reserves the right to amend its defenses and to add additional defenses, including, without limitation, any defenses revealed during discovery. Carbyne asserts its defenses as set forth below.

### **First Affirmative Defense:**

### **(Non-Infringement)**

CentralSquare is not entitled to any relief on its patent infringement claims because, such as for example and without limitation as set forth in Paragraphs 8-46 and 67-73 of Carbyne's Counterclaims, Carbyne does not and has not infringed, induced infringement, or contributorily infringed, directly, indirectly, willfully or otherwise, the asserted claims of the '016 Patent, literally or under the doctrine of equivalents.

### **Second Affirmative Defense:**

### **(Invalidity)**

For at least the reasons set forth below and herein, such as for example and without limitation as set forth in Paragraphs 36-39, 46, and 74-81 of Carbyne's Counterclaims, one or more claims of the '016 Patent are invalid, void, and/or unenforceable for failing to satisfy the conditions of patentability set forth in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. To the extent any of the responses to the allegations in the Complaint above constitute affirmative defenses, they are incorporated herein by reference for all purposes. To the extent any of the Counterclaims provided below herein constitute affirmative defenses, they are incorporated herein by reference for all purposes.

### Third Affirmative Defense

### (Failure to State a Claim Upon Which Relief May be Granted)

CentralSquare's claims are barred in whole or in part because CentralSquare has failed to state a claim against Carbyne upon which relief can be granted, for example as discussed in the paragraphs herein.

### Fourth Affirmative Defense

### (Unavailability of Injunctive Relief)

CentralSquare is not entitled to injunctive relief as a matter of law and cannot satisfy the requirements applicable to its request for injunctive relief in any form. By way of example only, CentralSquare cannot demonstrate irreparable harm, as any damages it could demonstrate are remedied by monetary damages.

### Fifth Affirmative Defense

### (Prosecution Disclaimer/Estoppel)

CentralSquare is barred, under the doctrine of prosecution history disclaimer and prosecution history estoppel, from construing the claims of the '016 Patent in such a way as they may cover any accused products by reasons of statements made to the United States Patent and Trademark Office during the prosecution of the applications which led to the issuance of the '016 Patent, or the '117 Patent.

### Sixth Affirmative Defense

### (No Attorneys' Fees)

Carbyne has a good faith belief that the '016 Patent is invalid and not infringed and, therefore, CentralSquare cannot obtain attorneys' fees or costs and cannot demonstrate an exceptional case under 35 U.S.C. § 285.

## Seventh Affirmative Defense

### (Intervening Rights)

CentralSquare's claims for relief are limited and/or barred by absolute and equitable intervening rights. The '016 Patent was reissued on June 18, 2024, and the reissue published that same date. The claims of the '016 Patent substantively changed during the reissue proceeding. The Carbyne functionality CentralSquare accuses of infringing the '016 Patent was developed, released, and practiced by Carbyne prior to June 18, 2024.

## Eighth Affirmative Defense

### (Estoppel)

CentralSquare's claims are barred, in whole or in part, by the doctrine of estoppel because, on information and belief, CentralSquare misled Carbyne (and Carbyne relied on those statements) to the detriment of Carbyne concerning, among other things, whether and to what extent CentralSquare intended to enforce intellectual property rights against Carbyne, and whether and to what extent CentralSquare believed that Carbyne infringed any such rights and needed a license, as set forth in Paragraphs 11-46.

## Ninth Affirmative Defense

### (Acquiescence)

CentralSquare's claims are barred, in whole or in part, by the doctrine of acquiescence because, CentralSquare has implicitly and/or explicitly acquiesced to the conduct described in the Complaint and has therefore waived any purported claim for relief against Carbyne. For example, CentralSquare had actual knowledge of Carbyne's activities, CentralSquare failed to take timely action to assert its rights, Carbyne relied on CentralSquare's inaction and/or silence, and Carbyne has thereafter been prejudiced, as discussed in the paragraphs below.

**Tenth Affirmative Defense**

**(Implied License)**

CentralSquare's claims are barred, in whole or in part, by the doctrine of implied license because, on information and belief, CentralSquare has implicitly and/or explicitly acquiesced to the conduct described in the Complaint, Carbyne relied on CentralSquare's conduct and statements, and CentralSquare has therefore granted Carbyne an implied license to the '016 Patent, through operation of which CentralSquare fails to state a claim for relief against Carbyne.

**Eleventh Affirmative Defense**

**(Lack of Prudential Standing/Failure to Join Indispensable Party)**

CentralSquare has not pleaded that it holds all rights or substantially all rights to the '016 Patent nor joined the alleged patent owner, Tritech Software Systems, and therefore lacks prudential standing and/or statutory standing under 35 U.S.C. § 281 to bring this suit. *WiAV Sols. LLC v. Motorola Inc.*, 631 F. 3d 1257, 1264 n.1 (Fed. Cir. 2010).

**Twelfth Affirmative Defense**

**(No Willful Infringement)**

Carbyne's conduct in marketing, offering for sale, and selling Carbyne products does not meet the requisite standard for willful infringement of the '016 Patent. Thus, Plaintiff's claims and potential damages are barred in whole or in part because Defendant's conduct has not been willful.

**Fifteenth Affirmative Defense**

**(No Basis for Enhanced Damages)**

Any conduct of Carbyne was in good faith and/or non-willful and precludes all claims for enhanced damages, even if CentralSquare were to prevail on one or more claims asserted in the Complaint.

## **RESERVATION OF ADDITIONAL DEFENSES**

Carbyne reserves the right to assert additional separate defenses that may be developed through discovery, or otherwise, in this action.

WHEREFORE, Carbyne prays that the Court enter judgment in its favor and against Plaintiffs as follows:

A.  Finding in favor of Carbyne and against CentralSquare;

B.  Denying CentralSquare's prayer for injunctive relief;

C.  Finding in favor of Carbyne and against CentralSquare on Carbyne's affirmative defenses.

D.  Finding that the claims of the '016 Patent are invalid;

E.  Finding that Carbyne has not infringed the '016 Patent.

F.  Declaring that this case is exceptional under 35 U.S.C. § 285;

G.  Awarding Carbyne its costs and attorneys' fees incurred in this action; and

H.  Granting such other and further relief as the Court may deem just and proper.

## AMENDED COUNTERCLAIMS FOR PATENT INFRINGEMENT

Carbyne, Inc. and Carbyne Ltd. (collectively, "Carbyne"), by and through its undersigned counsel, assert the following counterclaims for patent infringement against CentralSquare, LLC ("CentralSquare").

## THE PARTIES

1. Carbyne, Inc. is a corporation organized under the laws of Delaware and its principal place of business located at 45 W 27th Street, 2nd Floor, New York, NY 10001.

2. Carbyne Ltd. is a corporation organized under the laws of Israel and its principal place of business located at Alon Towers 2(B), 94 Yigal Alon Street, 16th Floor, Tel-Aviv Yafo 6789139.

3. On information and belief, Plaintiff CentralSquare, LLC is a limited liability company organized and existing under the laws of Delaware with its corporate headquarters at 1000 Business Center Drive, Lake Mary, FL 32746.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. CentralSquare is subject to this Court's personal jurisdiction at least because CentralSquare subjected themselves to the jurisdiction of this Court by filing their Complaint here.  On information and belief, CentralSquare is also subject to personal jurisdiction in this Court because CentralSquare sells its services and products here, because CentralSquare regularly practices business here, and because Central Square has purposefully availed itself of the benefits of jurisdiction in this State.

6. In addition, CentralSquare is subject to this Court's personal jurisdiction because, on information and belief, CentralSquare has engaged and does engage in continuous, systemic, and substantial activities in this District. CentralSquare has infringed and continues to infringe at least

one of Carbyne's patents in this District by, among other things, engaging in infringing conduct within and directed at or from this District (e.g., in Austin, Texas) and purposely and voluntarily offers its infringing services in this District, and has committed acts giving rise to Carbyne's claims for patent infringement within and directed to this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), and (c), and 1400(b) and by CentralSquare's choice of forum.

## STATEMENT OF FACTS

8.     Carbyne is recognized as a global leader in next-generation public-safety technology, offering cloud-native solutions designed to enhance collaboration among call centers during emergencies and facilitate the sharing of critical data. These solutions are intended to improve operational efficiency, reduce response times, and save lives.

9.     Carbyne is one of the largest providers of cloud-native, emergency call handling services worldwide. Carbyne is one of the largest rich-data providers for emergency response centers, delivering over 250M data points per year, all in a unified platform. Its services reach over 280 million individuals globally. The company's advanced data platforms allow first responders and emergency call centers to connect with callers through a highly secure communication system that does not require the use of an app.

10.    As one of the world's largest providers of video and instant messaging to 9-1-1, Carbyne delivers over 4M live video minutes between callers and Emergency Call Centers (ECCs) yearly, along with a substantial volume of secure and verified instant messages.

## CentralSquare Seeks Out Business Relationship with Carbyne

11.    The relationship between Carbyne and CentralSquare began in 2020 when a mutual acquaintance of CentralSquare and Carbyne facilitated a CEO-to-CEO discussion between the companies, in order to explore ways for CentralSquare and Carbyne to work together.

12.     At that time, while CentralSquare was a much larger company, its 9-1-1 offerings lagged significantly behind the industry—and certainly behind Carbyne—in terms of reliability, scalability, and available features.  Accordingly, CentralSquare aimed to partner with Carbyne so that CentralSquare could introduce Carbyne's superior technology to CentralSquare's prospective customers.  More specifically, CentralSquare sought to learn about Carbyne's innovations in order to become more competitive in the space.

13.     In one of the early communications between the parties, CentralSquare explained it was "excited to start introducing [Carbyne's] c-Live Universe to our prospects" and identified dozens of prospective customers for such an introduction.

14.     Those early conversations quickly culminated in the execution of a Teaming Agreement, dated January 25, 2021, allowing the partners to submit joint responses to public requests for information and requests for proposals (RFPs) to various local counties and cities.

15.     Next, the parties executed a "Software License and Subcontractor Agreement" in May of 2021, wherein CentralSquare would have the right to grant sublicenses to Carbyne's services. Under that agreement CentralSquare received the right to sublicense, among other things, Carbyne's "[d]ynamic device location (For All calls) – Pinpoint location (SMS/WhatsApp)" as well as Carbyne's "Live Streaming – Caller Video & Images (one-way from the caller to the call taker). Unique Patented Technology."

16.     Pursuant to those agreements, CentralSquare repeatedly approached prospective customers offering them *Carbyne's* technology.  On information and belief, in these communications, CentralSquare did not make reference to any of its own patents, but *did* repeatedly acknowledge that Carbyne owned patents in the 9-1-1 video space.

17.     For example, on August 6, 2021, CentralSquare submitted a Proposal for Department of Public Safety Communications to the government of Fairfax County, Virginia.  In that proposal CentralSquare offered Carbyne's APEX solution, which CentralSquare described as "enabl[ing] Emergency Communications Specialists to unify the flow of audio and data (video, chat and map) into a single platform."  CentralSquare explained that "[w]hile CentralSquare offers a robust 9-1-1 solution, *Central Square believes the County can be best served by utilizing the c-Live Apex solution provided by its partner, Carbyne*."  The proposal acknowledged that, as part of Carbyne's solution, "a special patented Carbyne Link can also be sent, transforming the event from a text session to a next-generation, live video session."

18.     Throughout 2021, the parties submitted over 50 prospective customer submissions together, including to the city of Chicago.  Many of which, like that to Fairfax County, offered *Carbyne's* solution to prospective customers.

19.     CentralSquare also touted its Carbyne relationship with other third parties.  For example, in August of 2021, Central Square's Chief Product Officer sent letters to two major technology companies, explaining that "Central Square has partnered with Carbyne to deliver best of class Mapping, Call Handling and CAD capabilities to PSAPs."  The letters went on to request that the companies provide their respective location services to Carbyne Ltd. noting that "it is imperative that we are able to control our own destiny and have options to access critical data for our public safety customers."  The parties went on to meet with those companies together to discuss their offerings.

20.     Throughout this time, CentralSquare never informed Carbyne that it had any location-related patents or that it believed Carbyne infringed any CentralSquare patent.

### Carbyne and CentralSquare Apply for, and Receive, a BIRD Grant

21.    In 2021, CentralSquare and Carbyne were looking into additional ways to solidify their relationship. By March 2021 the companies had decided to jointly pursue a BIRD grant.

22.    A BIRD grant refers to funding provided by the Israel-U.S. Binational Industrial Research and Development (BIRD) Foundation (funded, in part, by the United States Department of Homeland Security). The BIRD Foundation was established to promote collaboration between Israeli and American companies in developing innovative technologies and products. Companies interested in applying for a BIRD grant must submit a joint proposal outlining their project, objectives, and expected outcomes. The foundation reviews proposals and selects projects based on their innovation potential and feasibility.

23.    During the spring of 2021, Carbyne and CentralSquare worked closely together to draft a grant proposal.  For the proposal draft, Carbyne shared much of its proprietary information with CentralSquare and hosted the CentralSquare technology team in their NY offices.

24.    On June 17, 2021, Carbyne and CentralSquare jointly submitted their BIRD grant proposal for a project titled "Real-Time Multi-Media Emergency Call (911) Communications for Public Safety-First Responders."   That submission explained "Carbyne and Central Square are announcing their partnership, which now enables emergency call centers to dispatch first responders with the most accurate caller location while also sharing live video and chat with the caller.  This dramatically increases the situational awareness of the first responders."

25.    The BIRD grant application continued: "Through Carbyne's technology, the call taker now has the ability to receive the caller's location and phone number, even before the call is answered at the center. In addition, without the requirement of an app, the caller can share live video and communicate via instant chat through a web activation link sent to the caller's device in the form of a text message by the call taker."  And further, "[a]s first responders are deployed to the site of

the emergency, they will now have the ability to receive a live video feed, chat, or location view generated by Carbyne's technology."

26.    The joint proposal discusses this technology at length, and consistently describes it as ***Carbyne's***.  The only patents mentioned in the proposal are those owned by Carbyne, including a video to 911 patent.

27.    Despite working closely with Carbyne to draft this proposal, CentralSquare never mentioned that it had its own patents in the space, or any belief that Carbyne's technology infringed any CentralSquare patent.

28.    In August 2021, the BIRD Foundation notified Carbyne and CentralSquare that they were winners of the 2021 BIRD HLS program.  Carbyne wanted to begin the signature and acceptance process of the awarded BIRD grant and begin work on the proposal, but CentralSquare was reluctant for reasons unknown to Carbyne at the time.

### CentralSquare and Carbyne Solidify Their Partnership and Make Future Plans

29.    During their close partnership in 2020 and 2021 and in order to strengthen and solidify ties between the companies, an Advisory Board Member for Carbyne became a senior member of the CentralSquare executive team and was privy to much of Carbyne's sales strategy and product road map plans.

30.    Over this year, the executives of Carbyne and CentralSquare also forged a tight bond.  For example, in addition to generally sharing news and updates regularly, the CEO of CentralSquare introduced some of CentralSquare's own investors to Carbyne and CentralSquare's CEO made presentations to Carbyne's investors about the collaborations between Carbyne and CentralSquare. CentralSquare's CEO also was invited to and attended a Carbyne board meeting.

31.    Then, on October 26, 2021, Carbyne hosted CentralSquare's executives at Carbyne's offices in New York to discuss their joint strategy for the coming year.  The parties discussed a

wide range of topics at that meeting, including: (i) Carbyne providing use licensing and training for CentralSquare sellers to demo Carbyne's solution, (ii) CentralSquare and Carbyne working together on Regional Summits in the coming year, (iii) the parties working together to produce combined marking materials, (iv) future sales and marketing opportunities, and (v) future agreements between the parties. At no time during this meeting did CentralSquare mention its patents or indicate that it believed Carbyne infringed any CentralSquare patent.

32.    On November 4, 2021, certain Carbyne and CentralSquare executives held a follow-on meeting to align the parties' pipelines and goals for the coming year.  Again, at no time during this meeting did CentralSquare mention its patents or indicate that it believed Carbyne infringed any CentralSquare patent.

### Without Warning, CentralSquare Accuses Carbyne of Infringement

33.    In a letter dated November 4, 2021—the *same* day that Carbyne and CentralSquare executives were meeting to make plans for the following year—CentralSquare, without warning purported to accuse Carbyne of infringing CentralSquare's U.S. Patent No. 9,301,117 ("the '117 Patent").

34.    Despite having worked closely together for almost a year, the November letter was the first time CentralSquare had ever mentioned its patents or any allegation that Carbyne might infringe or need to take a license.  The November letter came as a complete shock to Carbyne, given the close relationship that the parties had developed over the course of 2021.

35.    Carbyne's CEO, Amir Elichai, immediately reached out to CentralSquare's CEO to try to understand the purpose of the letter.  Mr. Elichai was assured that the letter was merely a formality being sent to many vendors in the industry, that CentralSquare had no intention of taking any money from Carbyne or harming Carbyne's business in any way, and that all Carbyne needed to do was respond to the letter and that would settle the matter.

36.    Accordingly, and because it takes intellectual property issues seriously, Carbyne, through its counsel, responded to CentralSquare's accusations.  Between January 2022 and July 2022, the parties exchanged letters through counsel.  In those letters, Carbyne explained why it did not believe it infringed the '117 Patent, and also why it believed the '117 Patent was invalid.  In those letters, Carbyne also reminded CentralSquare something CentralSquare already knew—that Carbyne had a patent portfolio that covered, among other things, 9-1-1 video capabilities.

37.    Starting in 2020 and throughout 2022, and in reliance on CentralSquare's statement and prior conduct, Carbyne continued to invest significant time and resources both in its relationship with CentralSquare (by, e.g., facilitating further executive introductions and providing product, customer, and investment updates) and in the development of its market-leading cloud-native, emergency call handling solutions.

38.    The final letter sent between the parties in 2022 relating to patents was sent by Carbyne on July 21, 2022.  In that letter, Carbyne identified specific prior art that disclosed the claimed function of texting a URL to query a phone's location that CentralSquare had previously touted was a novel feature of its invention.  To this day, CentralSquare has not refuted that the art identified by Carbyne teaches the claimed function of texting a URL to query a phone's location.

39.    CentralSquare never responded to Carbyne's July 2022 letter.

40.    While the lawyers were exchanging these letters, Carbyne and CentralSquare's business relationship continued with business as usual.  Reinforcing the promises of CentralSquare's CEO, on December 31, 2021, the parties entered into a Master Reseller Agreement.  The Agreement states, in part, "CentralSquare desires to market, resell and support Carbyne products and services identified below to its customers." The identified services included "[d]ynamic device location

(For All calls) – Pinpoint location (SMS/WhatsApp)" and "Live Streaming – Caller Video & Images (one-way from the caller to the call taker). Unique Patented Technology."

41.    The parties continued working together, as partners, on day-to-day operations.  For example, Carbyne and CentralSquare invested substantial time and resources attempting to finalize the BIRD grant (after being told they had been selected). And the parties bid for, and won, new business opportunities with at least Murrieta and St. Louis.

42.    During this time, Carbyne continued to share details about its offerings, in an attempt to help CentralSquare.  For example, at CentralSquare's request, CentralSquare's Chief Technology Officer and Carbyne's Chief Technology Officer held multiple phone calls where CentralSquare requested demonstrations and asked questions about Carbyne's success in offering a cloud-based emergency call handling platform.

43.    In August 2022, CentralSquare informed Carbyne through a letter that CentralSquare did not intend to renew the Master Reseller Agreement upon its expiration at the end of 2022, but that CentralSquare "would welcome exploring future opportunities with existing or new customers should those opportunities arise."  CentralSquare did not provide any reason for its decision.

44.    Carbyne spent the next two years investing substantial time and resources growing its business, servicing its customers, and further advancing and developing its cloud-native, emergency call handling offerings.

45.    In June 2024—after two years of silence from CentralSquare on any patent issue– CentralSquare sent a letter to Carbyne informing Carbyne that it had received a reissue patent, RE50,016 and alleging that Carbyne infringed.

46.    The parties thereafter re-started their letter-writing campaign, where Carbyne reiterated both that it did not infringe CentralSquare's patent and that CentralSquare's patent was invalid.

Throughout this time, Carbyne reiterated its desire to resolve this issue amicably. Despite numerous letters and various direct conversations occurring at the behest of Carbyne, CentralSquare did not appear to be interested in reciprocating.

47.    As part of these communications, on March 14, 2025, Carbyne notified CentralSquare that CentralSquare's Vertex NG911 Call Handling Solution ("CentralSquare's Vertex System") infringed Carbyne's U.S. Pat. No. 11,689,383 ("the '383 Patent").

48.    CentralSquare uses, causes to be used, sells, offers for sale, provides, supplies, distributes, and/or imports into the United States its infringing products and services, which includes, but is not limited to CentralSquare's Vertex System.

49.    On information and belief, CentralSquare owns, operates, and/or controls the website https://www.centralsquare.com, on which it advertises, sells, offers to sell, provides and/or educates customers about its products and services, including CentralSquare's Vertex System.

50.    CentralSquare also instructs its customers, agents, employees, and affiliates regarding how to use CentralSquare's Vertex System.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,689,383

51.    Carbyne incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.

52.    U.S. Pat. No. 11,689,383 ("the '383 Patent") is titled "System, method, and computer-readable medium for streaming real-time data from a user device," and was issued by the U.S. Patent and Trademark Office on June 27, 2023. A true and correct copy of the '383 Patent is attached as Exhibit A.

53.    Carbyne Ltd. is the owner by assignment of substantially all rights in the '383 Patent.

54.    The '383 Patent claims priority to U.S. Provisional Application No. 62/544,835, filed on August 13, 2017.

55.     The '383 Patent is valid and enforceable.

56.     CentralSquare has not obtained a license to the '383 Patent, or obtained Carbyne Ltd.'s permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of the '383 Patent.

57.     CentralSquare has infringed and continues to infringe, directly and/or indirectly, the claims of the '383 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and operating within the United States without authority CentralSquare's Vertex System.

58.     CentralSquare's infringing Vertex System infringes at least Claim 1 of the '383 Patent at least in the exemplary manner set forth in the claim chart attached as Exhibit B, incorporated herein by reference. This exemplary claim chart is not intended to limit Carbyne's right to allege that other CentralSquare activities infringe the identified claim or any other claims of the '383 Patent or any other patents.

59.     CentralSquare has had knowledge of the '383 Patent, and of its infringement of the '383 Patent, through at least Carbyne's latest March 14, 2025 letter.

60.     CentralSquare, on information and belief, has indirectly infringed the '383 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase CentralSquare's Vertex System and/or by instructing customers how to use the Vertex System in a way that directly infringes one or more claims of the '383 Patent. From the documentation and statements that are publicly available, it is clear that CentralSquare provides detailed instruction and documentation on how to operate the Vertex System. *See, e.g,* documents and screen shots included in Exhibit B. However, because CentralSquare does not publish its full instructional and training material for the Vertex System, Carbyne requires discovery to ascertain the full specifics of how CentralSquare

instructs customers and induces infringement. Moreover, CentralSquare induces infringement by providing software (the Vertex System) that, when used by customers as directed and intended by CentralSquare, causes those customers to make, use, and practice the inventions claimed in the '383 Patent.

61.    CentralSquare's customers have directly infringed the '383 Patent by using the Accused Products. Through its product manuals, website, instructional videos and/or sales and marketing activities, on-site training, new-hire training, site surveys, training and support, installations, CentralSquare solicited, instructed, encouraged, and aided and abetted its customers to purchase and use the Accused Products in an infringing way. *See* Exhibit B.

62.    CentralSquare has and continues to willfully infringe the '383 Patent as it has had express notice of the '383 Patent since at least March 14, 2025, and has chosen to copy Carbyne's patented technology. At a minimum, CentralSquare had actual knowledge of its infringement of the '383 Patent no later than the filing date of these Counterclaims. Despite this knowledge, CentralSquare has not sought to remedy its infringement.

63.    CentralSquare's infringement of the '383 Patent was and continues to be willful, egregious, wanton, and deliberate in disregard to Carbyne's rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284.

64.    CentralSquare's conduct has been and continues to be exceptional, entitling Carbyne to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

65.    CentralSquare's infringement of the '383 Patent has caused irreparable harm to Carbyne and will continue to do so unless enjoined by this Court.

66.     CentralSquare's infringement has caused and continues to cause damage to Carbyne, and Carbyne is entitled to recover damages sustained as a result of CentralSquare's wrongful acts in an amount subject to proof at trial.

## COUNT II: DECLARATORY JUDGMENT OF NONINFRINGEMENT

67.     Carbyne incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.

68.     This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that no valid claim of the '016 Patent has been or will be infringed by the manufacture, use, sale, offer for sale, or importation into the United States of Carbyne's accused products.

69.     An actual and justiciable controversy exists between Carbyne and CentralSquare regarding whether Carbyne infringes any valid and enforceable claim of the '016 Patent.

70.     CentralSquare's patent infringement complaint against Carbyne asserts the '016 Patent against two Carbyne products, APEX and Universe, and provides charts alleging to show how the two products infringe claim 1 of the '016 Patent.

71.     Carbyne does not and has not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '016 Patent for at least the reasons Carbyne presented in letters dated January 3, 2022, February 22, 2022, and December 13, 2024, which are incorporated by reference. Each of those letters identifies examples of specific claim elements found in the '016 Patent that Carbyne contends is missing from the accused products.

72.     Further, Carbyne will not infringe, contribute to the infringement of, or induce the infringement of any valid and/or enforceable claim of the '016 Patent, and will not be liable for such infringement, for at least the reasons Carbyne presented in those same letters, which are incorporated by reference.

73.    Carbyne is entitled to declaratory judgment declaring that Carbyne does not infringe and has not infringed any valid and enforceable claim of the '016 Patent.

## COUNT III: DECLARATORY JUDGMENT OF INVALIDITY

74.    Carbyne incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.

75.    An actual and justiciable controversy exists between Carbyne and CentralSquare regarding the invalidity of the '016 Patent.

76.    This counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeks a declaration that the claims of the '016 patent are invalid for failure to comply with the statutory prerequisites of 35 U.S.C. §§ 101, 102, 103, and/or 112, or other judicially-created bases of invalidation and unenforceability.

77.    All claims of the '016 patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, 112, 116, the defenses recognized in 35 U.S.C. § 282(b), double patenting, and/or other judicially-created bases for invalidation.

78.    As a sufficient example, and in no way limiting, the claims of the '016 Patent are invalid under 35 U.S.C. § 101 at least because the claimed inventions are directed to an abstract idea, natural phenomenon, and/or law of nature and lack an inventive concept that transforms the claimed subject matter into a patentable invention. For example, the specification of the '016 Patent acknowledges that "[c]onventionally, emergency phone calls are answered by an emergency call center, such as, e.g., a public safety answering point (PSAP)" ('016 Patent, 1:27-30) and that "[o]perators…may gather and/or attempt to gather information during emergency calls." (*Id.*, 1:30-33).  The '016 Patent improperly attempts to claim this well understood, routine,

27

conventional and fundamentally *human* operation by applying it "using a computer," without claiming any technological improvements.

79.    By way of further, non-limiting example, the claims of the '016 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 because the claimed invention was patented, described in  printed publication, on sale, or otherwise available to the public prior the earliest priority date of the '016 Patent, and/or the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art.  By way of non-limiting example, a system named SARLOC was in public use before the priority date of the '016 Patent and, when combined with standard PSAP systems of the time, would have rendered the claims of the '016 Patent obvious.

80.    Carbyne is entitled to declaratory judgment declaring that the claims of the '016 Patent are invalid.

## **PRAYER FOR RELIEF**

WHEREFORE, Carbyne respectfully requests the following relief:

A.  A judgment that CentralSquare has infringed, directly and/or indirectly, literally or under the doctrine of equivalents, one or more claims of Carbyne's '383 Patent in violation of 35 U.S.C. § 271, and that such infringement is willful;

B.  An order preliminarily and/or permanently enjoining CentralSquare and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting on behalf of or in active concert or participation therewith, from further infringing Carbyne's '383 Patent;

C.  An award of damages sufficient to compensate Carbyne for CentralSquare's infringement under 35 U.S.C. § 284, and an enhancement of damages on account of CentralSquare's willful infringement;

D.  A judgment declaring that Carbyne has not infringed, directly or indirectly, any claim of the '016 Patent.

E.  A judgment declaring that the '016 Patent is invalid.

F.  A determination that this case is an exceptional case under 35 U.S.C. § 285 and that Carbyne be awarded attorneys' fees;

G.  Costs and expenses in this action;

H.  An award of prejudgment and post-judgment interest; and

I.  Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Carbyne respectfully demands a trial by jury on all triable issues.

Dated: June 16, 2025

*/s/ Mark D. Siegmund*_____
Mark Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Phone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

Alyssa Caridis
**Orrick, Herrington & Sutcliffe LLP**
355 S. Grand Ave
Suite 2700
Los Angeles, CA 90071
Phone: (213) 612-2372
Email: acaridis@orrick.com

*Attorney for Defendants*
CARBYNE, INC., AND CARBYNE, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I caused the foregoing to be electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") all counsel of record who have appeared in this case. I also caused the document above and exhibits thereto to be sent to all counsel of record via electronic mail June 16, 2025.

*/s/ Mark D. Siegmund*
Mark D. Siegmund