**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC<br><br>*Plaintiff and Counterclaim-Defendant*,<br><br>v.<br><br>CARBYNE, INC., AND CARBYNE, LTD.<br><br>*Defendants and Counterclaim-Plaintiffs*. | Civil Action No. 1:24-cv-01497-ADA |

**CENTRALSQUARE'S RENEWED MOTION TO DISMISS CARBYNE'S
COUNTERCLAIMS I-III**

## TABLE OF CONTENTS

I.    Introduction – Carbyne's Amended Counterclaims Lack the Necessary Pleadings Specified by this Court................................................................................ 1

II.   Background – Carbyne's Allegations Lack Support and Rest Nearly Solely on Speculation........................................................................................... 3

      A.    The '383 Patent ............................................................................. 3

      B.    Direct Infringement Allegations ..................................................... 5

      C.    Indirect Infringement Allegations .................................................. 6

III.  Legal Standard – A Counterclaim Must Provide Fair Notice to a Counterclaim Defendant of the Claims Against It and the Grounds on Which the Claims Rest ............. 6

IV.   Argument – Carbyne's Amended Counterclaim I Infringement Allegations Fail to Raise a Right to Relief Above the Speculative Level ....................................... 8

      A.    Carbyne's Amended Counterclaim I Fails to Sufficiently Plead a Claim for Direct Infringement and Should Be Dismissed .................................... 8

            1.    Carbyne's Amended Pleadings for Element [1C] Not Only Are Woefully Insufficient But Further Reveal an Incurable Implausible Infringement Theory ................................................................. 10

            2.    Carbyne's Amended Pleadings for Element [1E] Likewise Are Woefully Insufficient And Further Reveal an Incurable Implausible Infringement Theory ............................................... 12

            3.    Carbyne's Alleged Exemplarily Infringement Scenario Actually Underscores the Implausible Infringement Allegation for Both Limitations [1C] and [1E] ....................................................... 14

      B.    Carbyne's Amended Counterclaim I Fails to State a Claim for Indirect Infringement................................................................................. 16

      C.    Carbyne's Amended Counterclaim I Fails to State a Claim for Willful Infringement................................................................................. 18

V.    Argument – Carbyne's Amended Counterclaims II and III for Declaratory Judgment Fail to Raise a Right to Relief Above the Speculative Level ........................ 19

      A.    Carbyne's Amended Counterclaim II Fails to Sufficiently Plead a Claim for Declaratory Judgment of Noninfringement.................................... 19

B.    Carbyne's Amended Counterclaim III Fails to Sufficiently Plead a Claim for Declaratory Judgment of Invalidity.................................................. 20

VI.    CONCLUSION................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
   620 F. App'x 934 (Fed. Cir. 2015) ..................................................................... 18

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
   109 F. Supp. 3d 916, 931 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016).............. 7

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
   No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ................................. 8, 18

*Aguirre v. Powerchute Sports, LLC*,
   No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. June 17, 2011) ..................... 17, 18

*Aids Healthcare Found., Inc. v. Gilead Scis., Inc.*,
   890 F.3d 986 (Fed. Cir. 2018), *cert denied*, 139 S. Ct. 415, 202 L. Ed. 2d 314 (2018) ......... 17

*Ashcroft v. Iqbal*,
   556 U.S. 556 (2009) ................................................................................................ 6, 7

*Askan v. FARO Techs., Inc.*,
   No. 2024-2258, 2025 WL 1363303 (Fed. Cir. May 12, 2025) ................................................ 12

*Atlas Global Tech., LLC v. Sercomm Corp.*,
   638 F.Supp.3d 721 (W.D. Tex. Oct. 31, 2022) ........................................................................ 19

*Atlas IP, LLC v. Exelon Corp.*,
   189 F. Supp. 3d 768, 775 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v.
   Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) ............................................. 7

*Bayer HealthCare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021) ................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 6, 7

*BillJCo, LLC v. Apple Inc.*,
   583 F.Supp.3d 769 (W.D. Tex. 2022) ....................................................................................... 6

*Bot M8 LLC v. Sony Corporation of America*,
   4 F.4th 1342 (Fed. Cir. 2021) ................................................................................... 2, 7, 12, 14

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
   904 F. Supp. 2d 1260 (M.D. Fla. 2012) .................................................................................. 18

iii

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632, 639 (2015) ................................................................................. 2, 8

*Datanet LLC v. Dropbox Inc.*,
    2023 WL 7118041 (W.D. Tex. Oct. 27, 2023) .................................................... 8

*De La Vega v. Microsoft Corp.*,
    2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................................................. 17

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
    No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) ...................... 19

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ...................................................................... 18

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018) ....................................................................... 17

*Fenner Invs., Ltd. v. Cellco P'ship*,
    No. 6:11-cv-0348, 2012 WL 12785031 (E.D. Tex. Mar. 27, 2012) ...................... 7

*Gillespie v. Dywidag Systems Intern., USA*,
    501 F.3d 1285 (Fed. Cir. 2007) ................................................................ 12, 14

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ........................................................................................ 8

*Hypermedia Navigation LLC v. Google LLC*,
    No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ................. 19

*Innomemory, LLC v. Cullen/Frost Bankers, Inc.*,
    No. 6:22-cv-00672-ADA (W.D. Tex. Sept. 30, 2022) ......................................... 7

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320, 1328 (Fed. Cir. 2017) ............................................................ 16

*Iron Oak Techs., LLC v. Acer America Corp.*,
    2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) .................................................. 8

*LBT II, LLC v. Uber Techs., Inc.*,
    No. 6:21-cv-01210-ADA, 2022 WL 2329321 (W.D. Tex. June 28, 2022) ............. 7

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ...................................................................................... 17

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) .................................................................. 7, 20

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005)..................................................................... 10

*Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*,
    No. 6:21-CV-01178-ADA, 2023 WL 2904583 (W.D. Tex. Apr. 11, 2023) .......... 7, 16, 17, 18

*Parity Networks, LLC v. Cisco Sys., Inc.*,
    No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019)................... 18

*Parus Holdings Inc. v. Apple Inc.*,
    No. 6:19-cv-432 (W.D. Tex. Feb. 20, 2020)......................................................... 17

*Shamoon v. City of San Antonio*,
    2025 WL 1356399 (W.D. Tex. 2025)................................................................. 9

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns LP*,
    No. 6:20-cv-01175-ADA, 2022 WL 299732 (W.D. Tex. 2022) ............................. 7

*Xpoint Techs., Inc. v. Microsoft Corp.*, 7
    30 F. Supp. 2d 349 (D. Del. 2010).................................................................. 18

**Rules**

Rule 12(b)(6).......................................................................................................... 7

I.    **Introduction – Carbyne's Amended Counterclaims Lack the Necessary Pleadings Specified by this Court**

Carbyne, Inc.'s and Carbyne, Ltd.'s (collectively "Carbyne")'s amended counterclaims for infringement, and for declaratory judgment of non-infringement and invalidity should be dismissed for failure: (1) to assert plausible claims of direct infringement, indirect infringement, or willful infringement; and (2) to plead facts sufficient to support Carbyne's conclusory allegations that U.S. Pat. No. RE50,016 ("the '016 patent") is not infringed or is invalid.

Carbyne's amended pleadings allege infringement without providing sufficient support for a plausible infringement theory alleging that the Vertex NG911 system ("Accused Product") sold by CentralSquare, LLC ("CentralSquare") includes each limitation of the asserted claim 1 of U.S. Patent No. 11,689,383 ("the '383 Patent").

Carbyne's amended pleadings for direct infringement fail due to an incurable implausible infringement theory in direct contrast to prosecution arguments Carbyne raised to traverse prior art. Setting aside that the pleadings across all limitations lack support, what little pleadings remain reveal an implausible infringement read on the Accused Product of two claim elements pertaining to associating data to the claimed mobile device—[1C], "wherein the URL link is associated with the phone number of the mobile device;" and [1E], "wherein the real-time video stream is associated with a unique identifier for the mobile device." Carbyne still rests its infringement theory on a text message with a URL sent to a mobile device as allegedly associating, as claimed in [1C] and [1E], both the URL and the video feed with the mobile device. But Carbyne expressly disclaimed such data association during prosecution and cannot recapture disclaimed claim scope.

Carbyne's theories not only remain conclusory and deficient as improper claim scope grabs, but Carbyne pled itself out of court by pointing to a case example of the accused Vertex NG911 system that *establishes* that the accused system *does not associate* links or real-time video

as alleged nor claimed. By relying on Vertex NG911 system's data association functionality—which does not associate in the manner claimed—those "allegation[s] render[] [Carbyne's infringement claim not even possible, much less plausible. *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1354-55 (Fed. Cir. 2021). The claims require obtaining, transmitting, and associating data with the *same* mobile device. Yet, under the guise of mapping to a single mobile device, Carbyne's amended pleadings misquote CentralSquare's Director of 911 speaking to a journalist describing Vertex NG911's capabilities as "automatically [] send[ing] a text message" to the initial mobile device, when in fact the cited quote *actually* describes sending the message to *a second* mobile device (i.e., not the claimed mobile device), *and* that the Vertex NG911 system does not associates data to any particular device (also required by the claims). Thus, Carbyne pled itself out of court by pointing to evidence that splits the claimed data functionality across *two* devices when the claims limitations [1C] and [1E] require a *single* device. Carbyne's amended infringement pleadings should be dismissed with prejudice.

As direct infringement is a prerequisite for a finding of indirect infringement, Carbyne's claim for indirect infringement is similarly insufficient. Carbyne also fails to provide any factual allegations, plausible or otherwise, that show CentralSquare had the requisite pre-suit knowledge of the '383 Patent. Absent a showing of pre-suit knowledge, there can be no specific intent to infringe. As such, Carbyne's indirect[1] and willful infringement counterclaims should be dismissed.

For the declaratory judgment counterclaims, Carbyne merely recites statutory and claim language with no actual pled facts sufficient to support its conclusory allegations that Carbyne (1)

---

[1] Carbyne's Counterclaim does not allege that CentralSquare contributorily infringed the '383 Patent. For the avoidance of doubt, any allegations of contributory infringement would likewise fail. *See Commil USA, LLC v. Cisco Sys., Inc*., 575 U.S. 632, 639 (2015) ("contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.").

does not infringe CentralSquare's U.S. Pat. No. RE50,016 ("the '016 patent"), and (2) that the '016 patent is invalid. Thus, CentralSquare's amended Counterclaims I-III should be dismissed.

## II.    Background – Carbyne's Allegations Lack Support and Rest Nearly Solely on Speculation

CentralSquare filed its Complaint on December 04, 2024, alleging that specific products sold by Carbyne infringe U.S. Patent No. RE50,016 (the "'016 patent"). Then, on March 14, 2025, Carbyne—for the first time—identified the '383 patent in a letter, alleging that CentralSquare's "Vertex NG911 Call Handling Solution infringes its video-streaming patents," including the '383 patent. Carbyne attached a vague claim chart to its letter purporting to map claim 1 of the '383 patent to the Vertex NG911 system. *See* Exhibit A. The claim chart, with little narrative or mapping to the claim language, included screen shots from CentralSquare's website, a subscription agreement, and a user guide, along with quotes from an interview by a CentralSquare employee discussing the Vertex NG911 system. *Id.* The chart relied on conclusory and generic allegations, reiterating the claim language verbatim and failing to connect the functionality of CentralSquare's Vertex NG911 system to a plausible infringement theory. *Id.*

On May 12, 2025, Carbyne filed its Answer with counterclaims, including Counterclaim I, alleging that "CentralSquare's Vertex System infringes at least claim 1 of the '383 Patent" at least in the exemplary manner set forth in the claim chart attached as Exhibit A. Dkt. 11 at ¶ 58. Exhibit A is identical to the claim chart that was previously shared by Carbyne in its March 14 letter, and did not include any additional explanation or analysis. *See* Dkt. 11-2. On June 2, 2025, CentralSquare filed a Motion to Dismiss Carbyne's Counterclaims I-III. *See* Dkt. 15. In response, Carbyne filed amended counterclaims on June 16, 2025, mooting the original counterclaims and CentralSquare's first Motion to Dismiss. *See* Dkt. 18; Dkt. 19.

### A.    The '383 Patent

The '383 patent issued on June 27, 2023, entitled "System, method and computer-readable medium for streaming real-time data from a user device," and claims priority to a provisional application filed on August 13, 2017. Carbyne's Counterclaim asserts independent claim 1 against CentralSquare. Dkt. 11 at ¶¶ 57-58.

During prosecution of the '383 Patent, the United States Patent and Trademark Office (the "Office") rejected the as-filed claims of the '383 patent as obvious over multiple references, including U.S. Patent Application Pub. No. 2014/0293046 A1 to Ni ("Ni"). *See* Exhibit B, Application No. 17/943,956, Final Rejection at p. 3, dated March 13, 2023. For the limitations, "wherein the URL link is associated with the phone number of the mobile device;" the Office cited Ni as disclosing this limitation by "identifying a user account." *Id.* at p. 5. In response, Carbyne cited the following language from Ni:

> Alert module 430 may provide an alert to a predetermined group of devices in response to detection of a triggering event (i.e., unauthorized access to surveillance premises 110). ***The alert may be sent via*** email***, short message***, social network and/or other types of online application notifications to the user and any specified members authorized by the user (e.g., family members, friends, designated security management company or police/fire/emergency departments, etc.) to receive such notifications. ***The notification may contain a*** short event description, a recommended action and a ***link to receive the webRTC call*** initiated by alert module 430.

Exhibit C, Application No. 17/943,956, RCE and Response to Final Rejection at p. 11, dated April 17, 2023 (emphasis added). This language, quoted from Ni, describes a "short message" (or text message) that is sent to the user containing a "link to receive the webRTC call." *Id.* Thus, Ni discloses a link sent through text messaging to initiate a WebRTC call, as required by the claims.

In its response, Carbyne argued that the link sent through text to the user in Ni did not meet the limitations of "the URL link is ***associated with the phone number*** of the mobile device," because "a user account is not a phone number." *Id.* Carbyne, therefore acknowledged that merely

texting a link to a mobile device to establish a WebRTC call is insufficient to show the link is "associated with the phone number of the mobile device."

The Office also cited Ni for teaching and suggesting the limitation: "wherein the real-time video stream is associated with a unique identifier for the mobile device." *See* Exhibit B at p. 6. Specifically, the Office cited paragraphs [0076]-[0077] in Ni discussing Fig. 9, as teaching this limitation where it discloses "identifying a user account associated with the web call." *Id.*



NI, FIG. 9

In its response, Carbyne acknowledged that "Ni teaches establishing an Internet-based WebRTC audio/video call," but argued that the video stream uses "a user account, not a unique identifier for the mobile device." Exhibit C at p. 12.

## B.    Direct Infringement Allegations

Carbyne's amended direct infringement allegation pleadings rest solely on two paragraphs of amended Counterclaim I (Dkt. 18 at ¶¶ 57-58) and in the attached Exhibit B (Dkt. 18-2), both of which contain formulaic and conclusory language without articulating supporting facts sufficient for CentralSquare to understand and respond to the allegations. Specifically, amended Counterclaim I alleges that "CentralSquare's Vertex System infringes at least claim 1 of the '383

Patent" at least in the exemplary manner set forth in the claim chart attached as Exhibit B. Dkt. 18 at ¶ 58. Notably, the pleadings fail to identify how the features of the Vertex NG911 system read on to elements of the asserted claim.

For example, the amended pleadings grossly gloss over required limitations in independent claim 1: "the URL link is associated with the phone number," and "the real-time video stream is associated with a unique identifier for the mobile device." *See also* '383 Patent, Claims 8 and 15.

### C.    Indirect Infringement Allegations

Carbyne's amended pleadings provide the same formulaic recitation of the legal elements of induced infringement, without providing any plausible factual allegations to support those claims. Dkt. 18 at ¶¶ 60-61. Moreover, Carbyne's amended pleadings do not allege that CentralSquare had knowledge of the '383 patent prior to the filing of CentralSquare's Complaint. Rather, it alleges that CentralSquare has had knowledge of the '383 patent "through at least Carbyne's latest March 14, 2025, letter," and "[a]t a minimum . . . no later than the filing date of these Counterclaims." *Id.* at ¶¶ 59, 62. Despite CentralSquare's lack of pre-suit knowledge of the '383 patent, Carbyne improperly asks for high relief that the Court to declare that CentralSquare "has infringed, directly and/or indirectly . . . and that such infringement is willful." *Id.* at Prayer for Relief ¶ A; *see BillJCo, LLC v. Apple Inc.,* 583 F.Supp.3d 769, 777 (W.D. Tex. 2022) ("indirect infringement claims require a showing that the accused infringer knew of its infringement.").

### III.    Legal Standard – A Counterclaim Must Provide Fair Notice to a Counterclaim Defendant of the Claims Against It and the Grounds on Which the Claims Rest

To survive a motion to dismiss, a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 556, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires factual allegations that are "enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the [counterclaims] are true." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 931 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016). The level of detail in the counterclaim must be "sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). For example, "factual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement—they are merely compatible with infringement." *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017). A party "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by re-citing the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1352.

As "[m]erely identifying the entire system and directing the Court and the Defendant[] to the claims of the [Asserted Patent] to determine what aspect of the system infringes is not enough" to state a claim for direct infringement. *Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns LP*, No. 6:20-cv-01175-ADA, 2022 WL 299732, at *3 (W.D. Tex. 2022) (quoting *Fenner Invs., Ltd. v. Cellco P'ship*, No. 6:11-cv-0348, 2012 WL 12785031, at *2 (E.D. Tex. Mar. 27, 2012)); *see also Innomemory, LLC v. Cullen/Frost Bankers, Inc.*, No. 6:22-cv-00672-ADA, at *4 (W.D. Tex. Sept. 30, 2022). In sum, to "survive a Rule 12(b)(6) motion on a direct infringement claim, the plaintiff must plead facts that plausibly, not merely possibly, suggest that the accused product meets each limitation of the asserted claim(s)." *Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*, No. 6:21-CV-01178-ADA, 2023 WL 2904583, at *7 (W.D. Tex. Apr. 11, 2023).

To establish induced infringement, a patentee "must show: (1) [alleged infringer] had knowledge of the patent and directly infringed; (2) [alleged infringer] actively aided and abetted a

third party's direct infringement; and (3) [alleged infringer] specifically intended to induce the third party's direct infringement." *Iron Oak Techs., LLC v. Acer America Corp.*, 2017 WL 9477677, at *4 (W.D. Tex. Nov. 28, 2017). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *7, 21 (W.D. Tex. May 12, 2014). Specific intent requires more than knowledge of the induced acts; rather, the accused infringer must have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). To knowingly induce infringement, a patentee must "show that the alleged inducer knew of the patent in question and knew that the induced acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 637 (2015).

Lastly, a patentee alleging willful infringement must plausibly show that the accused infringer knew of the allegedly infringed patent and, after acquiring that knowledge, deliberately infringed the patent. *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement."); *see Datanet LLC v. Dropbox Inc.*, 2023 WL 7118041, at *6 (W.D. Tex. Oct. 27, 2023) (dismissing pre- and post-suit willful infringement claims).

## IV.    Argument – Carbyne's Amended Counterclaim I Infringement Allegations Fail to Raise a Right to Relief Above the Speculative Level

### A.    Carbyne's Amended Counterclaim I Fails to Sufficiently Plead a Claim for Direct Infringement and Should Be Dismissed

Setting aside that Carbyne's amended pleadings across all limitations insufficiently plead infringement and lack support for a plausible infringement theory, what little pleadings remain reveal an implausible infringement read on the Accused Product of at least two claim elements

pertaining to associating data to the claimed mobile device: [1C] and [1E]. Carbyne wholly fails to address these two key limitations pertaining to associating data to the claimed mobile device: (1) from [1C], "wherein the URL link is associated with the phone number of the mobile device;" and (2) from [1E], "wherein the real-time video stream is associated with a unique identifier for the mobile device." Carbyne's infringement theories contradict its express prosecution history disclaimers and attempt to improperly recapture disclaimed claim scope. That cannot be permitted and is a *defacto* implausible pleading. *See Shamoon v. City of San Antonio*, 2025 WL 1356399, *4-*7 (W.D. Tex. 2025) (broad claim scope not permitted given prosecution history estoppel).

For the first element, [1C], Carbyne offers an implausible infringement theory that contradicts Carbyne's prosecution history arguments traversing prior art—specifically contradicting Carbyne's prosecution history argument that sending a text message that includes a URL for WebRTC does not meet the claimed limitation of ***associating*** the URL and subsequent WebRTC session with the mobile device it is sent to. For the second element, [1E], Carbyne likewise offers an implausible infringement theory that similarly contradicts its prosecution history arguments traversing prior art—specifically contradicting previous arguments that sending a text message with a real-video stream does not meet the claimed limitation of ***associating*** the video to a unique identifier of the mobile device.[2]

---

[2] Albeit not necessary at this time given the clear prosecution history disclaimer, but Carbyne's allegation that merely texting a link is sufficient to establish infringement raises serious claim construction issues and would not only render limitations discussed here, [1C] and [1E], superfluous but other claim 1 limitations as well. Claim 1 requires transmitting a URL link to the mobile device (1B), and further requires that the URL link is associated with the phone number of the device (1C), and that the subsequent video is associated with a unique identifier for the mobile device (1E). Carbyne's theory of infringement improperly lumps these limitations together stripping away necessary distinctions. *See Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over on that does not do so.").

Carbyne's theories not only remain conclusory and deficient as improper claim scope grabs, but Carbyne pled itself out of court by pointing to a case example of the accused Vertex NG911 system that fails to establish that the accused system establishes real-time video on the *same* device, i.e., the caller's phone. Carbyne's amended pleadings still misquote CentralSquare's Director of 911 speaking to a journalist describing Vertex NG911's capabilities and egregiously omit critical context establishing that the exemplary case does not meet the claimed limitations. Specifically, the claims require a phone number is obtained from an emergency caller and then the URL is transmitted to the same caller's device to establish a video session. Yet, the excerpt quoted by Carbyne to show that a video session is established through a texted link egregiously omits that the sent text message is to *a different* mobile device (i.e., not the claimed mobile device), *and* that the Vertex NG911 system does not associate data to any particular device (also required by the claims). *See infra* IV(A)(3). For these reasons, Carbyne's amended infringement pleadings should be dismissed with prejudice.

### 1.    Carbyne's Amended Pleadings for Element [1C] Not Only Are Woefully Insufficient But Further Reveal an Incurable Implausible Infringement Theory

Carbyne's amended infringement pleadings fail with respect to element [1C]—associating the URL link with the phone number of the mobile device. The support Carbyne cites is insufficient even at this pleading stage, and nevertheless reveals an underlying implausible infringement theory fatal to Carbyne's pleadings. As such, no additional evidence or pleadings may cure these deficiencies and Carbyne's Amended Counterclaim should be dismissed as implausible.

First, Carbyne's Amended Counterclaim and claim chart do not provide sufficient factual allegations that would support a plausible inference that the Accused Product meets this claim [1C] limitation. Claim 1 recites "obtaining a phone number of a mobile device used by a user making an emergency call," and then "transmitting a uniform resource locator (URL) link to the mobile

device," "wherein ***the URL link is associated with the phone number of the mobile device***." *See e.g.,* Claim 1 (emphasis added). Carbyne's amended pleadings are effectively void of analysis or context with respect to obtaining the phone number, transmitting the URL link, or associating the URL link to a phone number of the mobile device. Dkt. 18 at ¶¶ 57-58. Instead, Carbyne relies on its attached claim chart, purportedly identifying texting functionality and referencing video capabilities of CentralSquare's systems, but that too is insufficient and fails to bridge the cited support to the claimed limitation of associating the URL link to the mobile device. Carbyne fails to sufficiently plead that the Accused Products *send* a URL link, that is further *associated* with the phone number of the mobile device as required by the claims of the '383 Patent.

Second, even as Carbyne contends that discovery of CentralSquare's systems is necessary for this claim element,[3] Carbyne is nevertheless estopped now by its prosecution history from arguing infringement by pointing to Accused Device functionality that sends a link through a text message and alleging that transmission establishes that the link further "associate[s] with" the phone number of the mobile device as claimed. *See Gillespie v. Dywidag Systems Intern., USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) ("The patentee is held to what he declares during the prosecution of his patent" – using prosecution history to construe the term "outer surface" based on patentee's arguments to overcome prior art).

The Office cited prior art reference Ni as teaching the claimed associating the URL link with the phone number of the mobile device. In a response, Carbyne argued that the link sent through text to the user in Ni did not meet the limitation of "the URL link is ***associated with the phone number*** of the mobile device," because "a user account is not a phone number." Exhibit C

---

[3] Discovery cannot save an implausible infringement theory. *See Askan v. FARO Techs., Inc.*, No. 2024-2258, 2025 WL 1363303, at *3 (Fed. Cir. May 12, 2025) (discovery not warranted to obtain "facts upon which to plausibly plead an infringement claim.").

at p. 11, dated April 17, 2023. Carbyne, therefore acknowledged that merely texting a link to a mobile device to establish a WebRTC call is insufficient to show the link is "associated with the phone number of the mobile device" as claimed.

Carbyne is estopped from pleading infringement for this limitation by merely contending that CentralSquare sends a text message with a link to a real-time video—that is precisely what Carbyne attempts with its implausible pleadings. Dkt. 18 at ¶¶ 57-58. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.").

### 2. Carbyne's Amended Pleadings for Element [1E] Likewise Are Woefully Insufficient And Further Reveal an Incurable Implausible Infringement Theory

Carbyne's amended infringement pleadings fail with respect to element [1E] as well—associating the real-time video stream with a unique identifier for the mobile device. Like [1C], the support Carbyne cites is insufficient even at this pleading stage and also reveals another underlying implausible infringement theory fatal to Carbyne's pleadings. No additional evidence or pleadings may cure these deficiencies with respect to this second claim element, and Carbyne's Amended Counterclaim should be dismissed as implausible for these additional reasons.

First, Carbyne's amended Counterclaim and claim chart do not provide sufficient factual allegations that would support a plausible inference that the Accused Product meets this claim [1E] limitation. Claim 1 recites sending real-time video through a WebRTC session, wherein "the ***real-time video stream is associated with a unique identifier for the mobile device***." *See e.g.,* Claim 1 (emphasis added). Yet, for the same reasons above, the pleadings for this additional limitation are effectively void of analysis or context with respect to sending real-time video, or associating the real-time video with a unique identifier for the mobile device. Dkt. 18 at ¶¶ 57-58. Instead, Carbyne once again relies on its attached claim chart, purportedly identifying texting functionality and

referencing video capabilities of CentralSquare's systems, but that too is insufficient and fails to bridge the cited support to the claimed associating the real-time video stream to the mobile device. Carbyne fails to sufficiently plead that the Accused Products *send* video streams that are further *associated* with a unique identifier for a mobile device as required by the claims of the '383 patent.

Second, like above for [1C], even as Carbyne contends that discovery of CentralSquare's systems is necessary for this claim element, Carbyne is nevertheless estopped now from arguing infringement by pointing to Accused Device functionality that sends a link of a video stream through a text message and alleging that transmission further establishes that the video stream is also "associated with" a unique identifier for the mobile device as claimed. *See Gillespie*, 501 F.3d at 1291.

For this additional [1E] limitation, the Office also cited prior art reference Ni as teaching the limitation: "wherein the real-time video stream is associated with a unique identifier for the mobile device." *See e.g,* Exhibit B at p. 6. Specifically, the Office cited paragraphs [0076-0077] in Ni as teaching this limitation where it discloses "identifying a user account associated with the web call." *Id.* In its response, Carbyne acknowledged that "Ni teaches establishing an Internet-based WebRTC audio/video call," but argued that the video stream uses "a user account, not a unique identifier for the mobile device." Exhibit C at p. 12. As mentioned above, Ni discloses that the web call can be initiated through a link sent by text message. Thus, Carbyne's arguments clearly reject any inference that sending a link through text messaging that establishes a video web call is sufficient to meet the claimed limitation requiring that the "real-time video stream ***is associated with a unique identifier for the mobile device***."

As such, Carbyne's amended infringement pleadings for [1E] are likewise implausible and rooted in arguments Carbyne expressly disclaimed during prosecution and is estopped from pleading. *See Bot M8 LLC*, 4 F.4th at 1354; *Gillespie*, 501 F.3d at 1291.

### 3. Carbyne's Alleged Exemplarily Infringement Scenario Actually Underscores the Implausible Infringement Allegation for Both Limitations [1C] and [1E]

As part of Carbyne's amended pleadings and claim chart, Carbyne erroneously relies on a quote from CentralSquare's Director of 911 speaking to a journalist and providing an example of the capabilities of the accused Vertex NG911 system—but Carbyne omits critical context and quotes *establishing* that the Accused Products do not satisfy key limitations [1C] and [1E].

The claims require obtaining, transmitting, and associating data with the *same* device, i.e. the caller's phone. Carbyne maps these features to a single device as claimed, but Carbyne cites to evidence that establish *two different* devices for these features. For instance, the claims require "obtaining a phone number of ***a mobile device*** used by a user making an emergency call" [1A], and then "transmitting a uniform resource locator (URL) link ***to the mobile device*** . . . through a second connection using the phone number," [1B], to "establish a WebRTC (Web Real-Time Communication) session to transmit a real-time video stream from *the mobile device*," [1C]. *See* 18-2, [1A]-[1C]. Thus, the asserted claims require that the URL is sent to the mobile device of the emergency caller. Yet, Carbyne's amended counterclaims, and the infringement contention charting therein, identify an exemplary emergency situation where a mother calls the 911 service on behalf of her endangered daughter, and the URL and video session is sent to the *daughter*. Carbyne points to a first mobile device (i.e., the mother's phone) for the claimed "obtaining a phone number of a mobile device," but then points to a second mobile device (i.e., the daughter's phone) for the claimed sending the URL and establishing a video session:

> "so we can send a text message from the center—do a center initiated text out and send it to the daughter and if she clicks the link, now we have a location real time. Also we can enable video at that point so we can see what she's seeing if she's in a safe place to be able to see what she's seeing."

*See* Dkt. 18-2, [1C] (Carbyne alleges that citation "show[s] center initiated text messages with links to click to establish real time location and video streams"). This excerpt from the interview with CentralSquare's Director of 911 is misleading, as the full discussion clearly identifies that the daughter is on a separate mobile device from the original emergency caller, the mother:

> "**A mother is calling 911** and says my daughter has been kidnapped, she's on my phone but she can't call 911 and I don't want to lose her and take the risk of getting her, so we can send a text message from the center, and do a center initiated text out **and send it to the daughter and if she clicks the link**, now we have a location real time. Also we can enable video at that point so we can see what she's seeing if she's in a safe place to be able to see what she's seeing"

From this full description, it is clear that the link being sent out in CentralSquare's system is not sent to the caller's phone (i.e., the claimed "mobile device"), but is instead sent to the daughter that is on *a different* mobile phone (i.e., *not* the claimed "mobile device"). Thus, the associated link as claimed in [1C], and the associated real-time video as claimed in [1E] are not transmitted to the claimed mobile device as required by the claims, instead the transmission and association are for a different non-claimed mobile device. Apart from showing that the cited quote does not disclose the claimed limitations, this further shows that the URL link claimed in [1C] and the real-time video claimed in [1E] *are not associated* with the claimed phone number of the mobile device, and, instead, are associated with the emergency session independent of the device used. Like the "user account" which *may* be accessed across mobile devices in traversed prior art reference Ni, the accused Vertex NG911 system associates the data with an emergency session independent of the device used—which is required by the claim (as narrowed during prosecution).

15

Thus, the amended counterclaims cannot survive a motion to dismiss because it is not plausible that the accused products meet each limitation of the asserted claims. *Ortiz*, 2023 WL 2904583, at *7.

### B.    Carbyne's Amended Counterclaim I Fails to State a Claim for Indirect Infringement

Carbyne's amended claims of indirect infringement are also deficient and should be dismissed. As an initial matter, Carbyne's failure to plausibly allege direct infringement precludes claims of induced infringement. Carbyne also failed to sufficiently plead pre-suit knowledge of the patent, pre-suit knowledge of infringement, or a specific intent to induce infringement. Each of these failures independently warrants dismissal of Carbyne's indirect infringement allegations

First, it is axiomatic that "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement . . ." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (citations omitted); *see also Intell. Ventures v. Motorola*, 870 F.3d 1320, 1329 ("A finding of direct infringement is a predicate to any finding of indirect infringement."); *Ortiz*, 2023 WL 2904583, at *7. To support a claim for indirect infringement, "a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'" *De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *7 (W.D. Tex. Feb. 11, 2020); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921(2014) ("[O]ur case law leaves no doubt that inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'"); *see also Aids Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 992 (Fed. Cir. 2018), *cert denied*, 139 S. Ct. 415, 202 L. Ed. 2d 314 (2018) ("Liability for induced infringement requires that some other entity is directly infringing the patent."). For the reasons discussed above, Carbyne fails to plead facts that would support such a showing of direct infringement here, and Carbyne's indirect infringement claim should be dismissed.

16

Second, Carbyne's indirect infringement claims also fail because they do not plead the required knowledge of the Asserted Patent and knowledge of the alleged patent infringement. Courts have held, including this Court, that the knowledge requirements for indirect infringement require *pre-suit* knowledge. *See Ortiz*, 2023 WL 2904583, at *7 (dismissing indirect claims for not pleading sufficient facts that "would support an allegation of pre-suit knowledge"); *see also Aguirre v. Powerchute Sports*, *LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (holding that reliance "on knowledge of [plaintiff's] patent after the lawsuit was filed . . . is insufficient to plead the requisite knowledge for indirect infringement").

Despite this clear requirement maintained by this Court, Carbyne offers no allegation of actual *pre-suit* knowledge of the '383 patent. Dkt. 11 ¶¶ 59-62. This Court routinely rejects such allegations. *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432 (W.D. Tex. Feb. 20, 2020). Thus, because Carbyne fails to allege pre-suit knowledge, it also fails to state a claim for indirect infringement. *See id.*; *see also Ortiz*, 2023 WL 2904583, at *7; *Aguirre*, 2011 WL 2471299, at *3; *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268-69 (M.D. Fla. 2012); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010).

Third, Carbyne also fails to plead specific intent in support of its inducement claim. Allegations of specific intent require factual "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

Carbyne's allegations of specific intent amount to conclusory statements that CentralSquare allegedly "cause[d] those customers to make, use, and practice" the '383 patent claims. Dkt. 18 at 60. Such conclusory allegations fail to present facts that demonstrate: (1) CentralSquare knew that the alleged acts infringed, and (2) CentralSquare knew that the

promotion of their products would induce or encourage others to infringe the Asserted Patents. *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs of Texas, LLC*, 2014 WL 2892285, at *7, *21 (finding generalized allegations of inducement through marketing and sales tactics are insufficient).

These conclusory allegations fall significantly short of the standard maintained by this Court. To support specific intent, Carbyne must include specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—i.e., "evidence of culpable conduct, directed to encouraging another's infringement," which it did not do. *Parity Networks, LLC v. Cisco Sys., Inc.*, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (citing *DSU Med.*, 471 F.3d at 1306); *see also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail how an end user would infringe Hypermedia's patents by following instructions in the links provided in the complaint."); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (holding citations to websites were insufficient to plead specific intent).

Thus, Carbyne's inducement claims should be further dismissed because the Counterclaim wholly lacks key requirements of induced infringement.

### C.    Carbyne's Amended Counterclaim I Fails to State a Claim for Willful Infringement

Carbyne's willful infringement claim is similarly deficient due to Carbyne's failure to plausibly allege that CentralSquare had pre-suit knowledge of the '383 Patent. *See Atlas Global Tech., LLC v. Sercomm Corp.*, 638 F.Supp.3d 721, 728 (W.D. Tex. Oct. 31, 2022) (dismissing pre-

suit indirect and willful infringement allegations because general knowledge of patent portfolio, without more, "cannot plausibly support an allegation of pre-suit knowledge"). Carbyne cannot point to any communications or disclosure regarding the '383 patent prior to its March 14, 2025, letter, which was months after CentralSquare filed its Complaint. *See* Dkt. 11 at ¶ 47. Thus, Carbyne's willful infringement claim should be dismissed.

## V.    Argument – Carbyne's Amended Counterclaims II and III for Declaratory Judgment Fail to Raise a Right to Relief Above the Speculative Level

Carbyne's amended declaratory judgment counterclaims seek (1) a finding of non-infringement of CentralSquare's '016 patent, and (2) a finding that the '016 patent is invalid. Dkt. 18 at ¶¶ 67-80. Yet Carbyne fails to offer any explanation about how or why any of its products do not infringe the '016 patent, nor does it offer any factual support for its conclusory argument that this patent is invalid under one or as many as five sections of Chapter 35. No factual bases are provided as to why its claims might plausibly be true. Here, Carbyne's bare-bones declaratory judgment counter claims fail to provide fair notice regarding its claims for relief. Accordingly, its amended counterclaims should be dismissed.

### A.    Carbyne's Amended Counterclaim II Fails to Sufficiently Plead a Claim for Declaratory Judgment of Noninfringement

Carbyne acknowledges that CentralSquare sufficiently pled that Carbyne's APEX and Universe products infringe the '016 patent. Dkt. 18 at ¶ 70. Carbyne even acknowledges CentralSquare's chart mapping of the Carbyne two products to the '016 patent. *Id.* In its counterclaim response, however, Carbyne merely contends that it "does not and has not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '016 patent." Dkt. 18 at ¶ 71. Carbyne then further attempts to incorporate letters dated January 3, 2022, February 22, 2022, and December 13, 2024. *Id.* Even if Carbyne properly incorporated those three letters—CentralSquare challenges that incorporation—this counterclaim

pleading remains woefully insufficient at this stage. *McZeal*, 501 F.3d at 1357 (the level of detail in the counterclaim must be "sufficient to place the [party] on notice" of the legal theories). Accordingly, amended counterclaim II should be dismissed.

> **B.    Carbyne's Amended Counterclaim III Fails to Sufficiently Plead a Claim for Declaratory Judgment of Invalidity**

Despite knowledge of the '016 patent and/or its predecessor patent, that is, U.S. Patent No. 9,301,117 ("'117 patent") since at least January 3, 2022 (*see* Dkt. 18 at ¶ 71 referencing letter), Carbyne made no effort to challenge the '016 patent or the '117 patent at the Patent Office. Now, however, Carbyne contends that the '016 patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and 251. Dkt. 18 at ¶¶ 74-79. Other than quoting those five statutes or the '016 patent claim language, Carbyne offers no facts or analysis beyond conclusory statements. Dkt. 18 at ¶¶ 74-80. As such, this declaratory judgment counterclaim pleading remains woefully insufficient at this stage. *McZeal*, 501 F.3d at 1357 (the level of detail in the counterclaim must be "sufficient to place the [party] on notice" of the legal theories). Accordingly, amended counterclaim III should be dismissed.

## VI.    CONCLUSION

Carbyne's amended infringement allegations do not show how CentralSquare supposedly directly, indirectly, or willfully infringed the '383 Patent. Thus, these allegations are insufficient for these reasons. Additionally, for the amended declaratory judgment counterclaims, Carbyne merely recites statutory and claim language with no actual pled facts sufficient to support its conclusory allegations that Carbyne (1) does not infringe the CentralSquare '016 patent, and (2) that the '016 patent is invalid. As such, CentralSquare's Renewed Motion to Dismiss should be granted, and CentralSquare's Amended Counterclaims I-III should be dismissed.

Dated: June 30, 2025                    Respectfully submitted,

                                        */s/ Lionel M. Lavenue*
                                        Lionel M. Lavenue
                                        Virginia Bar No. 49,005
                                        lionel.lavenue@finnegan.com
                                        FINNEGAN, HENDERSON, FARABOW,
                                        GARRETT & DUNNER, LLP
                                        1875 Explorer Street, Suite 800
                                        Reston, VA 20190
                                        Phone: (571) 203-2700
                                        Fax: (202) 408-4400

                                        *Attorney for Plaintiff and Counterclaim-Defendant*
                                        *CentralSquare Technologies, LLC*

## **CERTIFICATE OF CONFERENCE**

The parties complied with Local Rule CV-7(i). On June 27, 2025 counsel conferred via telephone, and Carbyne opposes the relief sought in this motion.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 30, 2025, a true and correct copy of the above document was served on all counsel of record via the Court's CM/ECF System.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue