**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC, <br><br>     Plaintiff and Counterclaim-Defendant, <br><br>        v. <br><br> CARBYNE, INC., and <br> CARBYNE LTD. <br><br>     Defendants and Counterclaim-Plaintiffs. | Civil Action No. 1:24-cv-01497 <br><br> JURY TRIAL DEMANDED |

## CARBYNE'S OPPOSITION TO CENTRALSQUARE'S MOTION TO DISMISS

I.    **INTRODUCTION**

CentralSquare Technologies LLC's ("CST")'s Motion to Dismiss ("Mot.") the Counterclaims filed by Carbyne, Inc. and Carbyne Ltd. (collectively "Carbyne") fails on the law and the facts.

First, CST says that Carbyne's direct, indirect, and willful infringement claims are not plausible. In so arguing, CST ignores the stage of the proceedings, Carbyne's actual allegations, and the inferences that Carbyne is entitled to as the plaintiff and non-moving party. For direct infringement, CST claims that Carbyne is asserting a theory inconsistent with the prosecution history. This is plainly false. For indirect and willful infringement, CST concedes that it received a notice letter two months prior to Carbyne filing its counterclaims, but remarkably (and without support), argues that Carbyne must plead knowledge of the patent and of infringement by the date of ***CST's*** complaint.

Second, CST argues that Carbyne's declaratory judgment claims of noninfringement and invalidity lack sufficient factual basis. Not only do these arguments flat out ignore Carbyne's counterclaim pleadings (like a specific identification of prior art), but they have no legal support whatsoever.

In short, Carbyne's allegations land well above the level required at the pleadings stage, and CST's arguments to the contrary are unsupported and misleading. Rather than focus on the merits of the case, CST seems intent to waste Carbyne and the Court's time dealing with pointless motion practice. The Court should deny the motion.

## II.    <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is "a purely procedural question not pertaining to patent law," and so the law of the Fifth Circuit controls. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). When considering such motions, this Court "accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of

success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

III.    **BACKGROUND**

Carbyne develops and sells next-generation public-safety technology, including cloud-native solutions for call centers (like those that handle 911 calls) which improve operational efficiency, reduce response times, and save lives. Dkt. No. 18, Am. Countercls., ¶ 8. Carbyne's services reach over 280 million people across the world. *Id*. The company's platform allows emergency call centers to, among other things, securely communicate via voice, text, and video without the use of an app. *Id*. CST is a larger competitor of Carbyne, and the reliability, scalability, and available features offered by CST's products lag behind the industry, and behind Carbyne. Id. at ¶ 12. Following collaboration between the companies, *id*., ¶¶ 11-32, in 2021 CST—without warning—accused Carbyne of infringement. *Id*. at ¶ 33. During subsequent discussions, Carbyne notified CST that CST's Vertex NG911 Call Handling Solution ("Vertex911 system") infringes Carbyne's U.S. Pat. No. 3,689,383 ("'383 patent"). *Id*. at ¶ 47. CST brought this case, and then Carbyne filed its Counterclaim Complaint. *See* Dkt. Nos. 1, 18.

IV.    **ARGUMENT**

A.    **Carbyne's Direct Infringement Claim is Adequately Pleaded.**

CST argues that Carbyne's direct infringement theory is not just implausible, but impossible. Mot. at 8-16. As an initial matter, this type of evaluation of the claims is inappropriate for a motion to dismiss. *See Lone Star*, 594 F.3d at 387. This is especially true here because in order to reach its faulty conclusion, CST misunderstands and mischaracterizes both the file history and Carbyne's claim. CST also mischaracterizes Carbyne's cited evidence on how the accused Vertex911 system works. Without this obfuscation, and particularly when viewed in the light most favorable to the plaintiff and non-moving party, it is clear Carbyne's claim is adequately pleaded.

1.    **Carbyne Adequately Pleaded Infringement of Element 1C**

CST's first argument concerns the final clause of element 1C:

> wherein the second connection is different from the first connection, wherein the electronic message allows the user to click on the URL link to access a web browser on the mobile device, instead of a full application on the mobile device, to establish a WebRTC (Web Real-Time Communication) session to transmit a real-time video stream from the mobile device, **and wherein the URL link is associated with the phone number of the mobile device**;

'383 patent, claim 1 (emphasis added). In support of its infringement allegations, Carbyne's claim chart explains how the Vertex911 system meets the limitations of this element by quoting and referencing five statements by CST executives, the Workstation User Guide for the Vertex911 system, and CST's website, and including parentheticals explaining how the cited evidence relates to the claim limitation. Dkt. No. 18-2, at 13-18. This is more than sufficient detail to put CST on notice of Carbyne's claim. *See, e.g., Lifetime Indus., Inc., v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017) (the complaint must "place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'") (citation omitted).  In addition, recognizing that some relevant functionality may become more apparent after review of non-public information, Carbyne specifically pleaded that:

> After a reasonable opportunity for further investigation or discovery, including the inspection of non-publicly available source code, Carbyne believes it will have further evidentiary support for its contention that CentralSquare Technologies' Vertex NG911 Call Handling Solution's electronic message allows the user to click on the URL link to access a web browser on the mobile device, instead of a full application on the mobile device, to establish a WebRTC (Web Real-Time Communication) session to transmit a real-time video stream from the mobile device, and wherein the URL link is associated with the phone number of the mobile device.

Dkt. No. 18-2, at 17-18. Of course, such a pleading is specifically allowed for by the Federal Rules.

*See, e.g.*, *McZeal*, 501 F.3d at 1358 (complaint need only plead facts available from public

information putting defendant on notice of plaintiff's infringement claim, and the "specifics of how [a] purportedly infringing device works is something to be determined through discovery").

CST nevertheless has three complaints. First, CST protests that Carbyne's counterclaims contain no analysis of infringement and merely incorporate a claim chart. Mot. at 11. If CST thinks this improper, it should not have done the same with its own complaint. *See* Dkt. No. 1, ¶ 49, Ex. B. Regardless, Carbyne properly incorporated its claim chart into the counterclaims, and courts and the Federal Rules bless this practice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007) (on a Rule 12 motion, courts "must" consider "documents incorporated into the complaint by reference" in addition to "the complaint in its entirety" and "matters of which a court may take judicial notice"); *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citation omitted)). CST cites nothing to suggest otherwise.

Second, CST says that Carbyne fails to sufficiently plead "send[ing] a URL" or that the URL is "associated with the phone number." Mot. at 11. But CST makes this argument without explanation or support. The claim chart plainly alleges both.

"Sending a URL" is not a limitation of element 1C, but it is part of element 1B, which requires "transmitting a uniform resource locator (URL) link to the mobile device through an electronic message . . . ." Carbyne's chart excerpts a section of CST's Vertex911 "Workstation Users Guide" entitled "Starting video from a texting session," which explains how to send a text message to a mobile device and "request video," which "**sends a text** to the recipient **that includes a link** to open a browser to start sending the video." *See* Dkt. No. 18-2, at 11-12 (emphasis added).

Likewise, for the limitation that "the URL link is associated with the phone number of the mobile device," Carbyne cites an interview given by a CentralSquare executive: "We've got technology that when they call and hang up that it automatically will send a text message to that number and say 'You've reached so-and-so's 911 center, did you do this by mistake? If you did, press one. If you need help, press two.'" CentralSquare: Kevin Wattenbarger explains how company's 911 solutions help address challenges, at 2:10-2:26 (Aug. 15, 2024), https://urgentcomm.com/911/centralsquare-kevin-wattenbarger-explains-how-company-s-911-solutions-help-address-challenges. Dkt. No. 18-2, at 13. As Carbyne explained in a parenthetical accompanying this citation, this evidences that (1) a text message is sent to a caller's phone number; (2) with links (i.e., URLs); (3) associated with that number; and (4) featuring options for responding to the text message. *Id.* Carbyne also cited the Workstation User Guide, which unequivocally states that the accused system sends a text to the phone number of a wireless call that includes a "link to open a browser." *Id.* at 15. And, again, Carbyne explains its belief that it will have further evidentiary support after a reasonable opportunity to conduct discovery. *Id.* at 17. Particularly at the pleading stage, this is more than sufficient to state a plausible theory. *See, e.g.*, *Lifetime*, 869 F.3d at 1379.

Third, CST argues that the prosecution history forecloses[1] Carbyne's infringement theory against the Vertex911 system. Mot. at 10-12. Here is CST's argument, in brief: **(1)** during prosecution the examiner rejected the '383 patent over Ni, which the examiner said taught "associating the URL link with the phone number of the mobile device." *Id*. at 11. **(2)** To overcome the reference, Carbyne explained that Ni's URL link was associated with a user account, and a

---

[1] CST says Carbyne is estopped but does not discuss the standard for prosecution history estoppel, which is what CST seems to be saying. Mot. at 11. In any event, CST's argument falls so far short of meritorious that the legal standard for estoppel need not even be considered.

"user account is not a phone number." *Id*. at 11-12. **(3)** According to CST, this "acknowledge[s]" that texting a link to a mobile device to establish a WebRTC call is insufficient to show the link is "associated with the phone number" as the claim requires. *Id*. at 12. But step 3 is a non-sequitur— it does not follow. As an initial matter, CST does not cite or quote the examiner or Ni—at all. All CST cites is Carbyne's statement that a "user account is not a phone number." *Id*. at 11. This should doom CST's motion. CST cannot possibly succeed on a motion to dismiss by making vague, ill-defined arguments that fail to quote, provide context for, and grapple with the underlying facts. It is unclear whether CST is trying to increase litigation costs or achieve a tactical advantage by forcing a discussion on the merits prior to discovery. But CST must know that these sorts of arguments are inappropriate and unavailing at this stage.

In any event, what Ni ***actually*** discloses is a server sending an alert with a link that can open a WebRTC to show video from a security camera. *See, e.g*., Dkt. No. 21-3, at 11-12 (Request for Continued Examination and Response to Office Action). The examiner asserted that this limitation was met by Ni's disclosure of "identifying a user account." Dkt. No. 21-2, at Page 5 (Office Action). Carbyne explained, and the examiner apparently agreed, a "user account is not a phone number." Dkt. No. 21-3, at 11-12. Nothing about distinguishing a user account from a phone number in this context suggests that "merely texting a link to a mobile device to establish a WebRTC call is insufficient to show the link is 'associated with the phone number of the mobile device.'" Mot. at 12. CST's argument, which ultimately consists of no more than the single irrelevant quote noted above and its bare, unsupported conclusion, remotely suggests that Carbyne's pleadings are inadequate, let alone that Carbyne should be precluded or is estopped in any way.

### 2.    Carbyne Adequately Pleaded Infringement of Element 1E

CST makes similarly deficient arguments regarding the final clause of element 1E:

> sending the real-time video stream to the recipient for display on a screen of the recipient, wherein the real-time video stream is received through the WebRTC session while audio content of the emergency call is received through the first connection, **and wherein the real-time video stream is associated with a unique identifier for the mobile device**.

'383 patent, claim 1 (emphasis added). As with element 1C, Carbyne's claim chart extensively cites publicly-available evidence in the form of various statements to the media from CST executives about how the Vertex911 system works and includes parentheticals explaining how the cited evidence relates to the claim limitation. Dkt. No. 18-2, at 23-26. And given that the "association" of a video stream with a "unique identifier" for a mobile device will be governed by CST's non-public, technical documentation and source code, Carbyne's allegations more than suffice to put CST on notice of Carbyne's claim. *See, e.g., McZeal*, 501 F.3d at 1358 ("From this information [public statements and advertisements] he has fashioned his complaint. In this case, the specifics of how Sprint Nextel's purportedly infringing device works is something to be determined through discovery."); *Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 WL 10357165, at *2 (E.D. Tex. May 1, 2020) ("[A]t the pleading stage, it is sufficient that OIT pled 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' in support of the alleged patent infringement." (citation omitted)).

CST raises the same three arguments as with element 1C. First, CST complains about the incorporation of a claim chart. Mot. at 12-13. This argument has no merit, as explained above.

Second, CST again says that Carbyne outright fails to plead a portion of the element: sending video streams that are associated with a unique ID for the mobile device. Mot. at 13. As with element 1C, no explanation or support accompanies this argument. And the claim chart clearly alleges what CST says it does not. *See, e.g.*, Dkt. No. 18-2, at 25 (alleging, based on CST

executive statements, sending real time video—"It's like FaceTime, but more secure"—as well as that the video streams are associated with a unique ID, e.g., the mobile "phone number").

Third, CST again makes a vague and unavailing prosecution history-based argument. Mot. at 12-14. Specifically, CST says: (1) the examiner cited paragraphs 76-77 of Ni, which CST says discloses "identifying a user account associated with the web call." Mot. at 13. (2) In response, Carbyne acknowledged that "Ni teaches establishing an Internet-based WebRTC audio/video call," but that the video stream uses "a user account, not a unique identifier for the mobile device." *Id*. (3) CST claims that Carbyne's response to the examiner forecloses the inference that sending a link through a text that establishes a video web call is sufficient to meet the claimed limitation requiring the stream to be associated with a unique ID. *Id*. This argument is misleading, for the same reasons explained above for element 1C. Nothing about what Carbyne represented to the Patent Office suggests that texting a link that establishes a video web call is not consistent with meeting element 1E. As CST's own motion notes, Carbyne's argument to the examiner was that the Ni video stream uses "a user account, not a unique identifier for the mobile device." *Id*.[2] Here, by contrast, Carbyne plainly alleges that the Vertex911 system video stream uses at least the mobile device phone number as the unique identifier. *See, e.g.*, Dkt. No. 18-2, at 25. CST's argument is confused and does not suggest an implausible infringement theory—let alone an impossible one that is "fatal to Carbyne's pleadings." Mot. at 12.

### 3.    CST Confuses Carbyne's Reliance on a Quote from CST's Director of 911.

Separately, CST argues that Carbyne has misquoted and left out "critical" context from a statement by CST's Director of 911. Mot. at 14-16. The statement in question is the following,

---

[2] As with limitation 1C, CST fails to cite anything beyond the quotes reproduced above regarding what Ni actually discloses or how and why Carbyne might be precluded or estopped as a result. Not a single case is cited for CST's "estoppel" argument for limitation 1E. Mot. at 14-16.

from an interview conducted with Kevin Wattenbarger, CST's Director of 911, about the accused Vertex911 system:

> "**A mother is calling 911 and says my daughter has been kidnapped, she's on my phone but she can't call 911 and I don't want to lose her and take the risk of getting her**, so we can send a text message from the center—do a center initiated text out and send it to the daughter and if she clicks the link, now we have a location real time. Also we can enable video at that point so we can see what she's seeing if she's in a safe place to be able to see what she's seeing."

*Id*. at 15. Carbyne omitted the bolded portion in the claim chart accompanying its counterclaims, and CST says that with this context, this quote actually "*establish[es]* that the Accused Products do not satisfy key limitations [1C] and [1E]." *Id*. at 14. This is very clearly wrong.

CST's point is that this quote involves a text being sent to a different number than the original caller—i.e., in the example given, the daughter and her mother are on the phone, and the mother uses a different phone to call 911, and then 911 sends a text to the daughter without the daughter calling in to 911. *Id*. at 14-15. The claims, CST notes, require that a text is sent from 911 to the mobile device that made the emergency call, and not, as in the example with the mother and daughter, to a second device or phone. *See, e.g.,* '383 patent, claim 1 ("obtaining a phone number of *a mobile device used by a user making an emergency call*", and then "transmitting a uniform resource locator (URL) link *to the mobile device* . . . through a second connection using the phone number"). As a result, CST says, it is "not plausible that the accused products meet each limitation of the asserted claims." Mot. at 16.

This is categorically false. As an initial matter, the quote is not the only evidence Carbyne cites for the proposition that the Vertex911 system can send a text message with a URL to the *caller's* phone. For example, the User Guide instructs a 911-operator to **select a wireless call** and then select **Request Video** which "sends a text to the recipient that includes a link to open a browser:"

> 1. In the **Call Display** window, select a wireless call.
> 2. In the **Video** window, select **Request Video**.
>    This sends a text to the recipient that includes a link to open a browser to start sending the video. The recipient can start and stop the video, and also switch the camera view from back to front. In the **Texting** window, "Video Invitation" appears in the message and the status in the **Video** window displays "Waiting for caller video."

Dkt. No. 18-2, at 15.

And even if the quote from Mr. Wattenburger were the only evidence cited, Carbyne's claim chart cites the quote for the proposition that the Vertex911 system can send texts to phones with links to click to establish real time location and video streams. Mot. at 15 (quoting Carbyne's allegation in element 1C of Carbyne's claim chart that the Wattenburger quote "show[s] center initiated text messages with links to click to establish real time location and video streams")). That the system can send texts to phones *other* than that of a 911 caller shows that the system is capable of sending such texts. But nothing about this evidence suggests (as CST implies without actually stating) that the Vertex911 system can *only* send texts to a second phone. Surely, given the evidence that if phone A calls into the Vertex911 system and the system can send a text to phone B, it is ***plausible*** the system can also send a text to the number that called in (phone A). In fact, it is more than plausible, as Carbyne elsewhere cites evidence showing that the Vertex911 system does ***exactly*** this. *See, e.g.*, Dkt. No. 18-2, at 7 ("[T]hat video is not coming in as the 911 call— we're basically sending an outbound request to the caller saying hey uh and that they're still talking to the telecommunicator and saying hey look we have a new tool I want to see what you're seeing. I'm going to send you a request to your phone you need to basically accept us to be able to see what you're seeing…."); Dkt. No. 18-2, at 13 ("[S]o what happens with the technology first of all is we communicate directly with the device. When they say yes, we get enhanced location now from the device instead of the triangulation that happens with the towers. So we're getting it from

the GPS on the device. Another thing that we get now is in the camera. So now we're seeing what that person's seeing."). CST's argument about this quote is another dead-end.

### B.    Carbyne's Indirect and Willful Infringement Claims are Adequately Pleaded.

#### 1.    Carbyne Pleaded CST Knew of Carbyne's Patent and of CST's Infringement Before Carbyne Brought Suit for Infringement of that Patent

Carbyne's counterclaims properly plead CST's knowledge of the asserted patent and of infringement before the date of the complaint. CST argues otherwise by—without support—alleging that notice of Carbyne's infringement allegations must have been provided before CST's complaint (as opposed to Carbyne's counterclaims).

CST's motion concedes that Carbyne sent it a letter on March 14, 2025, identifying the '383 patent, accusing CST of infringement, and including a claim chart showing how the Vertex911 system infringes the patent. Mot. at 3.[3] As CST notes, Carbyne filed its counterclaims on May 12, 2025—two months after Carbyne's letter. In the face of this, CST, without any citation to authority, argument, or justification, simply says that "Carbyne cannot point to any communications or disclosure regarding the '383 patent prior to its March 14, 2025, letter, which was months after **CentralSquare** filed its Complaint." Mot. at 19 (emphasis added).[4]

---

[3] CST complains that the claim chart was "conclusory" and "generic," yet concedes that it included "screen shots from CentralSquare's website, a subscription agreement, and a user guide, along with quotes from an interview by a CentralSquare employee discussing the Vertex NG911 system." Mot. at 3. Such detail more than suffices to provide notice of infringement. *See, e.g., Lifetime*, 869 F.3d at 1379.

[4] CST makes this argument only for willful infringement. *See* Mot. at 19. For indirect infringement, CST just says, without any explanation at all, that "Carbyne offers no allegation of actual pre-suit knowledge of the '383 patent." Mot. at 17. This is a conclusion, not an argument. In any event, to the extent that CST intended to try and claim no pre-suit notice because Carbyne's letter did not pre-date **CST's** suit, this argument fails for the same reasons as CST's willful infringement argument.

CST's inability to marshal any support for its proposition is no surprise. Some courts require plaintiffs to plead "pre-suit" knowledge because if the complaint provides notice of the patent, then as of the complaint's filing, there is no knowledge, and thus no basis for an indirect infringement claim. *See, e.g.*, *RFCyber Corp. v. Apple Inc.*, No. 6:21-CV-00916-ADA, 2022 WL 22891200, at *2 (W.D. Tex. Sept. 12, 2022) (dismissing pre-suit indirect infringement and denying motion to dismiss on post-suit indirect infringement in light of notice provided by filing of complaint). In other words, these courts hold that a plaintiff may not bootstrap an indirect or willful infringement claim to claims of infringement that are presented to the alleged infringer for the first time in the same operative pleading. While the operative pleading is ***usually*** a complaint, the same principle holds true for counterclaims. CST cannot (and is not) arguing that it learned of Carbyne's allegations for the first time when Carbyne filed is counterclaims. Carbyne unambiguously gave CST notice of the '383 patent and CST's infringement before filing its indirect and willful infringement claim. Mot. at 19. As a result, Carbyne's legal claims for indirect and willful infringement claim properly accrued before it filed them in the form of Carbyne's counterclaims.[5]

CST cites five cases in its motion on this point, but none involve counterclaims, and none support CST's position. The first, *Ortiz & Associates. Consulting, LLC v. Ricoh USA, Inc.*, does not concern indirect or willful infringement, pre-suit knowledge, or even contain the quote that CST ascribes to it.[6] No. 6:21-CV-01178-ADA, 2023 WL 2904583, at *7 (W.D. Tex. Apr. 11, 2023); *compare id.* at *1 ("Ortiz filed its Amended Complaint alleging only direct infringement")

---

[5] In any event, for the willful infringement claim, "an allegation"—like here—"that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement." *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-CV-00181-JRG, 2021 WL 6618529, at *8 (E.D. Tex. Nov. 30, 2021).
[6] Indeed, while CST cites page "7" of the *Ortiz* opinion as the source of its quote, the *Ortiz* opinion is only 4 pages in length.

*with* Mot. at 17 (claiming this case "dismiss[ed] indirect claims for not pleading sufficient facts that 'would support an allegation of pre-suit knowledge'"). In the second, *Aguirre v. Powerchute Sports, LLC*, the plaintiff did not allege pre-suit knowledge at all—rather only that the defendant had issued a press release announcing a partnership with another company to make the accused product. No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011). *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc*. similarly involved no allegations at all of pre-suit knowledge. 904 F. Supp. 2d 1260, 1268-69 (M.D. Fla. 2012). In *Xpoint Technologies, Inc. v. Microsoft Corp*., the court dismissed indirect claims where the plaintiff had alleged no more than that "[a]t all relevant times, [d]efendants have had actual and constructive notice" of infringement and the patent. 730 F. Supp. 2d 349, 356 (D. Del. 2010).[7] Each of these cases is distinguishable because here Carbyne alleged knowledge of the patent and its allegations based on its March 14, 2025 letter—two months before its counterclaims.

### 2. Carbyne Pleaded CST's Specific Intent to Induce Infringement by Specifically Alleging with Reference to Evidence *How* CST Intends, Encourages, and Instructs Customers to Infringe.

Next, CST argues that Carbyne failed to adequately plead specific intent for indirect infringement. Again, CST is simply wrong. Carbyne's allegations regarding indirect infringement are set forth in paragraphs 60 and 61 of its counterclaim complaint:

> 60. CentralSquare, on information and belief, has indirectly infringed the '383 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase CentralSquare's Vertex System and/or by instructing customers how to use the Vertex System in a way that directly infringes one or more claims of the '383 Patent. From the documentation and statements that are publicly available, it is clear that CentralSquare provides detailed instruction and documentation on how to operate the Vertex System. *See, e.g.*, documents and screen shots included in Exhibit B. However, because CentralSquare does not publish its full instructional

---

[7] The fifth case, *Parus Holdings Inc. v. Apple Inc*., No. 6:19-cv-432 (W.D. Tex. Feb. 20, 2020) is not locatable as cited. This Court issued several orders on February 20, 2020, but each was a text order entered "for the reasons described during the hearing," so it is unclear for what possible purpose CST cites this case, and it appears to provide no support for CST's arguments.

and training material for the Vertex System, Carbyne requires discovery to ascertain the full specifics of how CentralSquare instructs customers and induces infringement. Moreover, CentralSquare induces infringement by providing software (the Vertex System) that, when used by customers as directed and intended by CentralSquare, causes those customers to make, use, and practice the inventions claimed in the '383 Patent.

61. CentralSquare's customers have directly infringed the '383 Patent by using the Accused Products. Through its product manuals, website, instructional videos and/or sales and marketing activities, on-site training, new-hire training, site surveys, training and support, installations, CentralSquare solicited, instructed, encouraged, and aided and abetted its customers to purchase and use the Accused Products in an infringing way.

Dkt No. 18, Am. Countercls., ¶¶ 60-61. CST cites a number of cases that set forth the requirements for pleading specific intent, Mot. at 17-18, and then claims without any further explanation that Carbyne's allegations "amount to conclusory statements that CentralSquare allegedly 'cause[d] those customers to make, use, and practice' the '383 patent," *id*. at 17. Had CST read Carbyne's allegations and compared them with its cited caselaw, it would have found that these allegations are more than sufficient. For example, Carbyne alleges that "CentralSquare provides detailed instruction and documentation on how to operate the Vertex System," and incorporates the screenshots and discussion of CST's user manuals in Carbyne's claim chart. Dkt. No. 18, Am. Countercls., ¶ 60. In other words, Carbyne has alleged that CST customers directly infringe as explained in detail in Carbyne's claim chart, and that CST provides instructions and training materials explaining how CST customers use the accused Vertex911 system—use which infringes, and which Carbyne has alleged CST knew was infringing. CST further ignores the portions of Carbyne's claim chart that quote CST's own executives explaining how use of the accused Vertex911 system meets the claim limitations (i.e., send messages with URLs, initiate real-time video, etc.), and how this use is intended and a feature provided to end users. *See, e.g*., Dkt. No. 18-2, at 7-25. This is exactly the kind of "evidence of culpable conduct, directed to encouraging another's infringement," that is required to show indirect infringement, and more than sufficient

to establish specific intent at the pleading stage. For example, in *BillJCo, LLC v. Apple Inc*., this Court denied a motion to dismiss allegations of induced infringement where the complaint and attached claim charts included citations to user guides and employee public statements (just like here) on how to use accused instrumentalities in an infringing manner to develop apps to utilize beacon messages in accordance with Apple's iBeacon standard. 583 F. Supp. 3d 769, 780 (W.D. Tex. 2022); *see also ACQIS LLC v. Wiwynn Corp*., 614 F. Supp. 3d 499, 507 (W.D. Tex. 2022) (allegations that defendant knew and specifically intended end users will use accused server in an infringing manner sufficient to support inference of specific intent). The allegations here parallel those in *BillJCo*, and the result too should be the same.

The Court need only look to CST's own inducement allegations to see that CST's arguments against Carbyne's claims are without merit. To support *its* inducement allegations, CST included a single, formulaic and nonspecific paragraph:

> Carbyne's customers have directly infringed the '016 Patent by using the Accused Products. Through its product manuals, website, instructional videos and/or sales and marketing activities, on-site training, new-hire training, site surveys, training and support, installations, Carbyne solicited, instructed, encouraged, and aided and abetted its customers to purchase and use the Accused Products in an infringing way.

Dkt. No. 1, ¶ 52. It is difficult to understand how CST can, one on the hand, claim that *its* allegations are appropriate while at the same time complaining about Carbyne's.

Carbyne also pleaded that discovery is required to further develop the facts regarding CST's inducement, as CST's source code is confidential, its software is not publicly-available to acquire and test, and it does not publish all of its user manuals, guides, and/or customer documentation. Even with this limitation, Carbyne has set forth a more-than-plausible theory of indirect infringement. *See, e.g.*, *Twombly*, 550 U.S. at 556 (the plausibility standard is met when the complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal

evidence" in support of the alleged claims); *McZeal*, 501 F.3d at 1358 ("From this information [public statements and advertisements] he has fashioned his complaint. In this case, the specifics of how Sprint Nextel's purportedly infringing device works is something to be determined through discovery."); *InCom Corp. v. Austin AT Grp., Inc.*, No. 1-17-CV-224-LY, 2018 WL 11361914, at *2 (W.D. Tex. Feb. 27, 2018) (finding infringement claim adequately pleaded based on "publicly-available information").

Again, none of the cases CST cites support its point. Instead, they show how Carbyne's pleading is adequate (especially when compared to CST's own pleading). For example, in the one case from this court—*Parity Networks, LLC v. Cisco Systems, Inc.*—the Court *denied* a motion to dismiss, finding that indirect infringement allegations were properly plead "based on the receipt of two letters from Plaintiff sent in 2016 identifying the patents." No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019). In *Dodots Licensing Solutions LLC v. Lenovo Holding Co.*, the court dismissed indirect infringement claims where the plaintiff cited the defendant's website without identifying any statements or materials within. No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018). The *Dodots* court found that a bare, top-level website link failed to identify "any instruction, direction or encouragement that would reasonably support" an inference of specific intent. *Id*. By contrast, Carbyne cited and quoted specific portions of CST user guides, CST executive interviews, and CST's website, all of which show how CST intends that customers use its software to infringe. Likewise, while the plaintiff in *Hypermedia Navigation LLC v. Google LLC* cited YouTube instructions, it failed to detail in any way "how" an end user would infringe by following YouTube's instructions. No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019). And in CST's last two cases, the plaintiff simply had no allegations regarding specific intent or how generic "marketing" induced infringement. *See*

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015); *Affinity Labs of Texas, LLC v. Toyota Motor N. Am*., No. W:13-CV-365, 2014 WL 2892285, at \*7,[8] (W.D. Tex. May 12, 2014). Again, by contrast, Carbyne alleged that CST induces infringement by designing its software to perform functions that infringe the claims of the '383 patent, advertises these exact functionalities, encourages customers to use the software on the basis that these functionalities are present, and instructs users on how to use the Vertex911 system to infringe. Carbyne has adequately pleaded indirect infringement.

### C.    Carbyne's Declaratory Judgment Claims are Adequately Pleaded.

Finally, CST seeks dismissal of Carbyne's declaratory judgment claims as inadequately pleaded. CST's arguments ring hollow.

There is no question that CST is on notice of Carbyne's theories. Carbyne's declaratory judgment counterclaim of noninfringement specifically pleads that Carbyne alleges noninfringement of the '016 patent by two specific Carbyne products (APEX and Universe) and expressly incorporates three separate letters sent to CST that "identif[y] examples of specific claim elements found in the '016 Patent that Carbyne contends is missing from the accused products." Dkt. No. 18, Am. Countercls., ¶ 71. CST says, in a parenthetical aside, that it "challenges this incorporation," but says literally nothing more than this. No basis, no citation to authority— nothing. Nor does it dispute that it received those letters or that those letters identified specific claim limitations that were missing. Whatever CST's unstated basis for ignoring the parties' letters, incorporation of a letter between the parties into a pleading is standard, unobjectionable practice. *Tellabs*, 551 U.S. at 322 (on a Rule 12 motion, courts "must" consider "documents incorporated into the complaint by reference"); *Wolcott*, 635 F.3d at 763 ("[A] court ruling on a 12(b)(6) motion

---

[8] Like with the *Ortiz* case noted above, for the *Affinity Labs* case CST again cites a page, "\*21", that does not exist. Mot. at 18.

may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (approving the consideration of documents attached to a defendant's motion to dismiss when they are referred to in the complaint and they are central to the plaintiff's claim).[9]

CST's challenge of Carbyne's declaratory judgment counterclaim of invalidity is even more troubling. Carbyne alleges invalidity of the '016 patent under one or more of five sections of the Patent Act. Dkt. No. 18, Am. Countercls., ¶ 77. Carbyne then proceeded to provide two **specific** examples of the ways in which the '016 patent is invalid: (1) under 35 U.S.C. §§ 101 because the '016 patent is directed to an abstract idea, and lacks an otherwise inventive concept, with an explanation of a theory and citation to and quotation from the specification, *id*., ¶ 78; and (2) under 35 U.S.C. §§ 102 and 103 because the '016 patent is anticipated and/or obvious in light of the prior art, including by reference to a specific prior art system, SARLOC. *Id*., ¶ 79. CST does not explain how articulations of a § 101 theory and specific prior art is insufficient at this stage, nor does it include a single case that grants a motion to dismiss counterclaims for invalidity—much less counterclaims that include the level of detail at issue here.

In short, Carbyne's declaratory judgment counterclaims are more than adequately pleaded. *Cf*., *e.g.*, *PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*, No. 3:11–cv–273, 2012 WL 243346, at *4 (M.D. Fla. Jan. 25, 2012) ("Defendant's claim . . . seeks a generalized holding of non-infringement—relief which is not cabined by conduct, an accused product, or a relevant time

---

[9] Although CST does not really even challenge the substance of these letters, just their incorporation (and even then, without argument or basis), Carbyne has attached these three letters to this opposition should the Court be inclined to review them. *See* Declaration of Evan Brewer, filed herewith, Exs. A-C.

period. This Court will not give Defendant a judicial imprimatur that all of its products, services,

and conduct are 'ok.'").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny CST's motion to dismiss in its entirety.


Dated: July 14, 2025                    Respectfully submitted,


                                         */s/ Mark D. Siegmund*
                                         Mark Siegmund
                                         State Bar No. 24117055
                                         **CHERRY JOHNSON SIEGMUND JAMES PC**
                                         Bridgeview Center
                                         7901 Fish Pond Road, 2nd Floor
                                         Waco, Texas 76710
                                         Phone: (254) 732-2242
                                         Fax: (866) 627-3509
                                         msiegmund@cjsjlaw.com

                                         Alyssa Caridis
                                         **Orrick, Herrington & Sutcliffe LLP**
                                         355 S. Grand Ave
                                         Suite 2700
                                         Los Angeles, CA 90071
                                         Phone: (213) 612-2372
                                         Email: acaridis@orrick.com

                                         ***Attorney for Defendants***
                                         **CARBYNE, INC., AND CARBYNE, LTD.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 14, 2025, a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

*/s/ Mark D. Siegmund*
Mark Siegmund