**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC | | |
| | Plaintiff and Counterclaim-Defendant, | Civil Action No. 1:24-cv-01497-ADA |
| v. | | |
| CARBYNE, INC., AND CARBYNE, LTD. | | |
| | Defendants and Counterclaim-Plaintiffs. | |

**REPLY BRIEF IN SUPPORT OF
CENTRALSQUARE'S MOTION TO DISMISS CARBYNE'S COUNTERCLAIMS I-III**

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | Summary: Carbyne's Updated Counterclaims I, II, & III Are Still Deficient | 1 |
| II. | On Direct Infringement, Carbyne Does Not Fix its Deficient Pleadings | 3 |
| III. | On Indirect Infringement, Carbyne Does Not Save Its Infringement Pleadings | 7 |
| IV. | On Counterclaims II and III, Carbyne Still Asserts Erred Claims against CST | 9 |
| V. | Conclusion: Dismissal of Carbyne's Counterclaims I, II, & III Is Appropriate | 10 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen Engineering Corp. v. Bartell Industries, Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002)..................................................................................................4

*Amgen Inc. v. Coherus BioSciences, Inc.*,
  931 F.3d 1154 (Fed. Cir. 2019)..................................................................................................4

*BillJCo, LLC v. Apple Inc.*,
  583 F. Supp. 3d 769 (W.D. Tex. 2022)......................................................................................8

*BillJCo, LLC v. Apple Inc.*,
  No. 6:21-cv-00528-ADA, 2022 WL 299733 (W.D. Tex. Feb. 1, 2022) ...........................2, 7, 8

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ................................................................................................3, 10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  344 F.3d 1359 (Fed. Cir. 2003)..................................................................................................5

*InCom Corp. v. Austin AT Grp., Inc.*,
  No. 1-17-CV-224-LY, 2018 WL 11361914 (W.D. Tex. Feb. 27, 2018)...................................9

*LBT IP II, LLC v. Uber Techs.*,
  No. 6:21-cv-01210-ADA, 2022 WL 2329321 (W.D. Tex. June 28, 2022) ..........................2, 7

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007)..................................................................................................9

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)..................................................................................................4

*NEC Corp. v. Peloton Interactive, Inc.*,
  No. CV-22-987-CJB, 2023 WL 8529287 (D. Del. Dec. 8, 2023) .........................................3, 8

*Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*,
  No. 6:21-CV-01178-ADA, 2023 WL 2904583 (W.D. Tex. Apr. 11, 2023) .............................7

*Parus Holdings Inc. v. Apple Inc.*,
  No. 6:19-cv-432 (W.D. Tex. Feb. 19, 2020), ECF No. 107 ......................................................8

*Shamoon v. City of San Antonio*,
  2025 WL 1356399 (W.D. Tex. 2025)........................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................8, 9

Fed. R. Evid. 408 ...........................................................................................................................3, 10

Defendants and Counterclaim-Plaintiffs Carbyne, Inc. and Carbyne, Ltd. (collectively "Carbyne") have now submitted counterclaims for infringement of U.S. Pat. No. 11,689,383 ("the '383 patent") twice - and have now failed, twice, to meet the standard required to survive a motion to dismiss. Carbyne's recently amended counterclaims for infringement of the '383 patent, from its Amended Complaint, suffer the same defects as the initial counterclaims, as Carbyne simply does not assert plausible claims of direct infringement, indirect infringement, or willful infringement. Additionally, for renewed Carbyne's counterclaims for declaratory judgment of non-infringement and invalidity, to U.S. Pat. No. RE50,016 ("the '016 patent"), those remain defective, too, and should be dismissed for failure plead facts sufficient to support its conclusory allegations.

## I.      Summary: Carbyne's Updated Counterclaims I, II, & III Are Still Deficient

Carbyne's principal opposition to CST's renewed motion to dismiss ("Motion") is that it lacks clarity—but any ambiguity rests with the underlying vague and implausible pleadings by Carbyne, which should be dismissed. Dkt. 24 at 7. CST's Motion grapples with Carbyne's ill-defined and unsupported pleadings and reveals the pleadings for what they are: implausible. Further, in the amended counterclaims, Carbyne pivots from simply parroting statutory and claim language to now parroting CST's Motion arguments on vagueness, but Carbyne's arguments fail.

First, on the issue of direct infringement, Carbyne counterclaims that CST's products infringe the '383 patent by application of key limitations that are neither supported by the cited documents nor in compliance with the prosecution history. Carbyne's infringement theory fails to plausibly align with the scope of the claims. The claims require two distinct association limitations—associating a "***the phone number*** of the mobile device" (i.e., element [1C]), and separately associating "**a unique identifier** for the mobile device" (i.e., element [1E]). But rather than pointing to two distinct numbers/identifiers as required by the claims, Carbyne combines the two and improperly points to an alleged association only with a phone number for both limitations.

Dkt. 18-2 at 17-18, 25-26. Conversely, where claims require that a single device is associated with the two identifiers, Carbyne points to associating two separate devices. Dkt. 18-2 at 13-17, 23-26.

In addition, for both the [1C] and [1E] associating limitations in the '383 patent, Carbyne rests its infringement theory on claim scope that it disclaimed during prosecution and which now Carbyne cannot attempt to recapture. To wit, Carbyne alleges infringement of these limitations by alleging that the Accused Product associates the unique identifiers when it "sends a text to the recipient." Dkt. 24 at 5. But Carbyne disclaimed such an association during prosecution by amending around the prior art reference *Ni*. Dkt. 21-3 at 12. On rebuttal, Carbyne attempts to narrow its disclaimer for *Ni*, arguing that *Ni* only associates a mobile device with a user account which "is not a phone number" nor a "unique identifier," as claimed. Dkt. 24 at 6-7. That is flatly wrong as *Ni* teaches associating an emergency call with a user based *on the user's device unique identifier*. Dkt. 21-3 at 12 ("The preferences may include [ ] devices . . . that the user preselected to receive alerts."). Carbyne cannot now allege infringement in the same manner taught by *Ni*.

Second, on the indirect infringement claims, Carbyne challenges this Court's practice of dismissing pre-suit indirect infringement and willful claims, if they fail to identify *pre-suit* notice of the asserted patent. *See LBT IP II, LLC v. Uber Techs.*, No. 6:21-cv-01210-ADA, 2022 WL 2329321, *6 (W.D. Tex. June 28, 2022) (citing *BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528-ADA, 2022 WL 299733, at *9 (W.D. Tex. Feb. 1, 2022)). Carbyne offers no allegation **of pre-suit knowledge** of its asserted '383 Patent—the only notice cited is a March 14, 2025 letter, as sent months after this suit's December 2024 filing. Dkt. 11 ¶¶ 59-62. Instead, Carbyne raises a new argument, contending in rebuttal that this Court's pre-suit knowledge rule for indirect infringement is not applicable to counterclaims—but Carbyne fails to identify case law from this Court supporting its unique proposition. Dkt. 24 at 12-14. In any event, even if this Court deviates from

the norm, the March 14, 2025 letter, sent months after this suit's December 2024 filing, hardly provides notice to carry a pre-suit indirect infringement claim. *NEC Corp. v. Peloton Interactive, Inc.*, No. CV-22-987-CJB, 2023 WL 8529287, at *3 (D. Del. Dec. 8, 2023). Otherwise, the remainder of Carbyne's post-suit indirect infringement arguments fail, with mere speculation that discovery will "fill in the gaps." Carbyne's insistence on discovery to try to "fill gaps" underscores the failures of its amended pleadings—e.g., how can CST's public documents induce customers on how to infringe, when Carbyne cannot plead infringement without seeing non-public discovery?

Third, as to declaratory judgment counterclaims II and III for non-infringement and invalidity of CST's '016 patent, Carbyne's arguments likewise fail. Carbyne's counterclaims II and III rest almost entirely on three letters allegedly "incorporated" into its counterclaims. Dkt. 24 at 18-19. Yet, Carbyne failed to attach those letters to its counterclaims (Dkt. 18), instead attempting to include them as attachments in its *response* to this Motion (Dkt. 24). That is improper. Also, one of the letters was never previously disclosed, not part of the docket, and **<u>contained FRE 408 confidentiality tags</u>**—which CST has since requested that Carbyne withdraw from its response (but Carbyne has refused). These late letters should not be the basis for Carbyne's deficient countercomplaint pleadings. In fact, the Fifth Circuit has ruled that, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). None of these letters were attached to Carbyne's pleadings, so they should not be considered now. For these reasons, Carbyne's amended counterclaims I-III should be dismissed.

## II.     On Direct Infringement, Carbyne Does Not Fix its Deficient Pleadings

In the amended counterclaims, Carbyne claims a fix to its errors, by contending that parentheticals from charts in its preliminary infringement contentions "is more than sufficient detail to put CST on notice" of its infringement theories. Dkt. 24 at 4. But Carbyne is just wrong.

Carbyne still fails to disclose a plausible infringement theory for several key limitations, and even that analysis is little more than mere conclusory statements—in particular, Carbyne's infringement theory fails to distinguish the association in [1C], for "***the phone number*** of the mobile device," with the association separately claimed in [1E], of "**a unique identifier** for the mobile device."

Carbyne's cited "parentheticals" do little to crystallize its infringement theories and/or to address these key claim element distinctions. For instance, for element [1C], "wherein the URL link is associated with the phone number of the mobile device," Carbyne fails to explain how the Accused Product associates a phone number of the mobile device with a URL link—indeed, as shown below, the quote fails to reference a URL link much less any associating (Dkt. 18-2 at 13):

> "We've got technology that when they call and hang up that it automatically will send a text message to that number and say 'You've reached so-and-so's 911 center, did you do this by mistake? If you did, press one. If you need help, press two.'" *CentralSquare: Kevin Wattenbarger explains how company's 911 solutions help address challenges*, at 2:10-2:26 (Aug. 15, 2024), https://urgentcomm.com/911/centralsquare-kevin-wattenbarger-explains-how-company-s-911-solutions-help-address-challenges (showing text message sent to caller's phone number, with links (ie URLs) associated with that number and featuring options for responding to the text message).

And for element [1E], "wherein the real-time video stream is associated with a unique identifier for the mobile device," instead of mapping the accused functionality to a separate unique identifier as required by the claims, Carbyne maps to the same phone number, concluding that the citations "show[] real-time video stream from the mobile device associated with the phone number for such mobile device—**i.e., a unique identifier**." Dkt. 18-2 at 24 (emphasis added). Yet, in the claim, the ***phone number*** and **unique identifier** refer to *different* and *distinct* elements, and Carbyne improperly lumps them as one, stripping away the mandatory legal distinctions of claim elements. *See Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over on that does not do so."). Carbyne fails to address these distinctions in its response brief as well.

In addition, Carbyne specifically disclaimed such a combination of claim elements during

4

prosecution, as now mapped to the Accused Product functionality—and Carbyne cannot now allege infringement in the same manner as that disclaimer. Such an inconsistency cannot be permitted. legally, and it is an improper pleading (warranting a motion dismiss under Rule 12(b)). *See Shamoon v. City of San Antonio*, 2025 WL 1356399, *4-*7 (W.D. Tex. 2025) (broad claim scope not permitted given prosecution history estoppel).[1] The disclaimer at issue in the prosecution history is based on the prior art reference, *Ni*.[2] During the PTO proceedings, the PTO Examiner had noted that *Ni* teaches associating both URL links and WebRTC audio/video calls not only with a user, but as to user devices and online accounts, plus additional individuals (Dkt. 21-3 at 12):

> As further shown in FIG. 9, process 900 may include identifying a user account associated with the web call (block 920). For example, web server 130 may receive a user account identifier from security control device 302.
> At block 930, web server 130 may determine a user preference for alerts. For example, web server 130 may search a database that includes user preferences for sending alerts. The preferences may include persons, devices, and online accounts that the user has preselected to receive alerts.

The PTO examiner recognized that "Ni teaches … WebRTC between users [through] web link using **device identities** to stream audio and video data" and that *Ni* further taught associating alerts with "persons, devices, and online accounts." Dkt. 21-3 at 12 (referencing Dkt. 21-2 at 6) (emphasis added). The teaching of a web link and associating with a device identifier for "persons, devices, and online accounts" is key, as Carbyne argued to the PTO that its invention operated

---

[1] *See also Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154, 1160–61 (Fed. Cir. 2019) (holding that a court may grant 12(b)(6) dismissal based on prosecution history estoppel); *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002) ( "An estoppel also may be found on the basis of arguments made during prosecution of the application to secure the allowance of claims . . . Any argument-based estoppel affecting a limitation in one claim will also extend to all claims in which that limitation appears."); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) ("Questions relating to the application and scope of prosecution history estoppel fall within the exclusive province of the court," and "determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are questions of law for the court, not a jury, to decide.").
[2] U.S. Patent Application Pub. No. 2014/0293046 A1 to Ni ("Ni"). *See* Dkt. 21-2 at 3.

differently. Dkt. 21-3 at 12 ("In other words, Ni teaches using a user account, not a unique identifier for the mobile device."). In doing so, Carbyne limited its invention – by disclaimer.

Carbyne disputes the scope of the disclaimer (in addition to ignoring claim limitations, noted earlier), arguing that the disclaimer was limited. Dkt. 24 at 6-7, 9. Specifically, Carbyne admits that *Ni* "discloses [ ] a server sending an alert with a link that can open a WebRTC," but erroneously argues that *Ni* only teaches associating the alert by user account, not by phone number (i.e., [1C]) or unique identifier (i.e., [1E]). Dkt. 24 at 6, 9. Carbyne's rebuttal fails as *Ni*'s teachings are not limited to just associating with a user's account. As seen above, *Ni* specifically teaches associating a call with many things - a user account, a *device*, even associating it with additional persons. Dkt. 21-3 at 12 ("The preferences may include [ ] devices . . . that the user preselected to receive alerts."). Carbyne's above-noted general reference to "parentheticals" fail, because Carbyne had disclaimed the functionality of only texting a link and associating the link with a phone number of the mobile device, so Carbyne cannot rest its infringement theories on the same.

Lastly, Carbyne rebuts whether it can point to a single mobile device that satisfies every limitation—including the above association and sending steps—as required by the claim, arguing that it is "plausible." Dkt. 24 at 9-12. But Carbyne misses the mark, as it fails to correct the infringement contention deficiencies referencing *multiple* devices splitting the functionality for the limitations requiring the same device, **in a manner different from *Ni***. *See* Dkt. 14-16. For example, Carbyne argues that the accused system "can send texts to phones *other* than that of a 911 caller shows that the system is capable of sending such texts" (Dkt. 24 at 11)—but that is what *Ni* discloses as well, sending alerts based on user preferences that "**may include persons**, **devices**, and online accounts that the user has preselected." Dkt. 21-3 at 12. Carbyne's infringement theory must be for a single device *and* different from *Ni*. For these reasons, Carbyne fails to support its

6

insufficient pleadings and thus Carbyne's amended infringement pleadings should be dismissed.[3]

### III. On Indirect Infringement, Carbyne Does Not Save Its Infringement Pleadings

This Court should follow its "usual practice" of dismissing pre-suit indirect infringement and willful claims, while allowing leave to amend after the beginning of fact discovery. *LBT IP II, LLC v. Uber Techs.*, No. 6:21-cv-01210-ADA, 2022 WL 2329321, *6 (W.D. Tex. June 28, 2022) (citing *BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528-ADA, 2022 WL 299733, at *9 (W.D. Tex. Feb. 1, 2022)).[4] Here, Carbyne offers no allegation of actual pre-suit knowledge of the '383 patent—the only notice at issue is a March 14, 2025 letter sent months after this suit's December 2024 filing. Dkt. 11 ¶¶ 59-62. Instead, without citing any authority in support, Carbyne contends in its rebuttal brief that this Court's pre-suit knowledge rule for indirect infringement is not applicable to counterclaims, like here, where the March 14, 2025 letter falls between the December 2024 filing of the initial complaint and the June 2025 filing of the counterclaims. Dkt. 24 at 12-14. But there is no basis for this Court to change its rulings. Also, even if this Court were to deviate from its standard practice of dismissing pre-suit indirect infringement claims, the March 14, 2025 letter hardly provides sufficient notice to carry a pre-suit indirect infringement claim. Courts often find that, even where the letter is sent *pre-suit*, it may not be a "reasonable inference" that someone

---

[3] Additionally, Carbyne argues on rebuttal that it incorporated its preliminary infringement claim chart into the pled counterclaims. Dkt. 24 at 5, 8-9. But the incorporation of Carbyne's infringement chart into its pleadings was not disputed—not to be confused with the sufficiency of Carbyne's incorporation of letters addressed below for indirect infringement. What was disputed was the collective sufficiency of Carbyne's infringement contention parentheticals that simply parroted the claim language without properly explaining how the cited quotations related to the claim limitations in a *plausible* infringement theory and fails to meet the *Iqbal/Twombly* standards.

[4] Of note, CST's Motion had a repeating typo, inadvertently omitting the *LBT* citation from parentheticals—both for the *Ortiz* case quoting *LBT* (Dkt. 21 at 17), and the *LBT* reference to *BillJCo* corrected herein (Dkt. 21 at 6). *See Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*, No. 6:21-CV-01178-ADA, 2023 WL 2904583, *4 (W.D. Tex. Apr. 11, 2023) (citing *LBT IP II, LLC v. Uber Techs.*, No. 6:21-cv-01210-ADA, 2022 WL 2329321, *7 (W.D. Tex. June 28, 2022).

had sufficient time to receive the letter and deliver it to someone that knows "something about the asserted patents and Accused Products," nor had sufficient time to "develop[] a specific intent [to] continue to infringe." *NEC Corp. v. Peloton Interactive, Inc.*, No. CV-22-987-CJB, 2023 WL 8529287, at *3 (D. Del. Dec. 8, 2023). Carbyne's pre-suit knowledge claims for indirect infringement and willfulness fail and should be dismissed, with leave to amend after discovery, if necessary; but the standard practice to dismiss such unfounded claims controls.[5]

This Court should also dismiss Carbyne's post-suit indirect infringement claims for failing to include specific allegations mapping the advertisement or promotion at issue to the performance of the claimed steps of the patent. Carbyne's reliance on *BillJCo* to contend that its pleadings are sufficient is misplaced. Dkt. 24 at 15-16 (citing *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 780 (W.D. Tex. 2022)). Carbyne incorrectly argues that its pleadings are parallel to those in *BillJCo*, where this "Court denied a motion to dismiss allegations of inducted infringement where the complaint and attached claim charts included citations to user guides and employee public statements (just like here) on how to use accused instrumentalities in an infringing manner to develop apps." *Id*. But, unlike here, the underlying pleadings in *BillJCo* relied on *public* advertisements, manuals, etc. and did not require discovery. *BillJCo*, 583 F. Supp. 3d at 780 (for at least pre-suit knowledge, dismissing claim until after discovery). Thus, while the fact that Carbyne contends that it needs discovery to backfill pleadings may not unfavorably tilt the plausible *Twombly/Iqbal* infringement pleading standard, it is an issue for indirect infringement

---

[5] In its response brief, Carbyne also argued that "it is unclear for what possible purpose CST cites [the *Parus*] case," noting several orders as to "reasons described during the hearing [on January 31, 2020]." Dkt. 24 at n.7. The rest of the text order at issue, however, render it apparent that the orders pertained to a pending motion to dismiss under Rule 12(b)(6) - and the Court dismissed indirect infringement claims, when plaintiffs fail to allege pre-suit damage. *See*, *e.g.*, *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, (W.D. Tex. Feb. 19, 2020), ECF No. 107 at 24-27.

8

pleadings—in short, how can Carbyne contend that CST's public documents sufficiently teach customers how to infringe, when Carbyne cannot sufficiently plead infringement without non-public discovery? As noted above, Carbyne's infringement contention mappings are porous with respect to at least the associating limitations (associating phone numbers and unique identifiers of the mobile device), which in turn also dooms its indirect infringement specific intent allegations.

Carbyne next argues that it sufficiently pled that discovery is "required to further develop the facts regarding CST's inducement." Dkt. 24 at 16-17. Carbyne here too is incorrect, as a claimed need for discovery does not save indirect infringement claims. And Carbyne's reliance on two cases, *McZeal* and *InCom*, is misplaced, as those cases do not support indirect infringement pleadings that require discovery. *Id*. First, *McZeal* pertains to the *lower* pleading standard for a *pro se* litigant—Carbyne is neither an unsophisticated party nor without competent representation. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1358 (Fed. Cir. 2007) ("Because McZeal met the low bar for *pro se* litigants to avoid dismissal on the basis of Fed. R. Civ. P. 12(b)(6), we vacate . . . McZeal's complaint certainly does not contain enough facts for the . . . [relief] that he sought with his complaint."). Second, *InCom* like *BillJco,* pertains to pleadings based on public disclosures and neither underlying claim of specific intent revolved around the need for discovery, like here. *InCom Corp. v. Austin AT Grp., Inc.*, No. 1-17-CV-224-LY, 2018 WL 11361914, at *2 (W.D. Tex. Feb. 27, 2018) (finding claim pled based on "publicly-available information").

**IV.     On Counterclaims II and III, Carbyne Still Asserts Erred Claims against CST**

Carbyne's declaratory judgment counterclaims II and III for non-infringement and invalidity of CST's '016 patent rest primarily on three letters allegedly "incorporated" into its counterclaims. Dkt. 24 at 18-19. Yet, Carbyne failed to attach those letters to its counterclaims (Dkt. 18), instead attempting to include them as attachments in its *response* to the Motion (Dkt. 24). That is procedurally improper. Also, one of the letters was never disclosed at all, was not part

9

of this docket, and **_contained FRE 408 confidentiality tags_**.[6] Such letters should not be the basis to prop up Carbyne's deficient pleadings. In fact, the Fifth Circuit has ruled that "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). None of these letters at issue were attached to Carbyne's pleadings.

Oddly, Carbyne relied on *Collins* in its response for the proposition that courts may consider "documents attached to a [movant]'s motion to dismiss." Dkt. 24 at 19. But there is a critical distinction of facts here, as CST, i.e., the motion to dismiss movant, *did not* attach at least the third letter containing FRE 408 confidentiality tags, and Carbyne failed to attach it as well to its counterclaims. *See* Dkts. 18, 21. The caselaw does not support Carbyne's position that it gets another bite at the apple and use its response to the motion to dismiss to backfill its own pleadings.

## V.     Conclusion: Dismissal of Carbyne's Counterclaims I, II, & III Is Appropriate

Carbyne's amended counterclaims do not present a sufficient pleading on how CST supposedly directly, indirectly, or willfully infringed the '383 patent. Thus, these allegations are deficient. Additionally, for the amended declaratory judgment counterclaims, Carbyne cites no new facts to support its conclusory allegations that Carbyne (1) does not infringe the CentralSquare '016 patent and/or (2) that the '016 patent is invalid. As such, CST's Renewed Motion should be granted, and Carbyne's amended counterclaims should be dismissed for the reasons noted herein.

Dated: July 21, 2025                    Respectfully submitted,
                                        */s/ Lionel M. Lavenue*
                                        Lionel M. Lavenue

---

[6] CST sent a letter to Carbyne, asking it to withdraw at least the document that **_contained FRE 408 confidentiality tags_** (Exhibit C) from its Motion to Dismiss Response. Dkt. 24. But, Carbyne refused to withdraw the document, claiming that it is entitled to cite and attach FRE 408 communications. The parties will likely soon reach an impasse on this disputed issue.

Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

*Attorney for Plaintiff and Counterclaim-Defendant
CentralSquare Technologies, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 21, 2025, a true and correct copy of the above document was served on all counsel of record via the Court's CM/ECF System.

                                              */s/ Lionel M. Lavenue*
                                              Lionel M. Lavenue