# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CARBYNE, INC., and CARBYNE, LTD. <br><br> Defendants. | Civil Action No. 1:24-cv-01497 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

CentralSquare Technologies LLC ("CentralSquare"), by way of Complaint against Defendants Carbyne, Inc. and Carbyne Ltd. (collectively as "Carbyne"), allege as follows:

## BACKGROUND AND NATURE OF THE SUIT

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This case asserts infringement of United States Reissue Patent No. RE50,016 (the "'016 Patent").

2. The '016 Patent is owned by Tritech Software Systems, a wholly-owned subsidiary of CentralSquare Technologies, LLC.

3. CentralSquare has an exclusive license to the '016 patent.

4. With over 30 years of experience in the industry, CentralSquare is a pioneer and leading innovator in public safety software, serving over 8,000 government agencies, public safety organizations, and utilities nationwide. For example, CentralSquare provides an end-to-end public safety platform that assists public safety agencies from the time of incident, through the response and beyond – featuring Computer Aided Dispatch (CAD), Next-generation 911, Mobile, Records

Management, Analytics and more. Notably, three-quarters of the United States is impacted by CentralSquare software and 375,000 officers use CentralSquare products every day. With cutting-edge products, CentralSquare enhances the efficiency of first responders, 911 centers, and local government operations, thereby driving smarter, faster, and more effective service to communities.

5.      CentralSquare's unique technology revolutionizes emergency response by integrating voice calls and text messaging to enhance efficiency and accuracy. CentralSquare's Vertex™ NG911 Call Handling system takes 911 beyond the call with a leading-edge communication platform, featuring text-to-911, streaming video, call-center-initiated texts, automated translation, audio transcription, etc. For example, when an emergency call center receives a call, CentralSquare's system sends a text message with a link to the caller's device. The link allows the system to gather location data of the caller, which is shared with the operator. Using CentralSquare's Vertex NG911 Call Handling System, the cellphone caller's location can be determined with the system's built-in Caller Location Query (CLQ), where no separate app is needed. CentralSquare's technology ensures faster, more effective responses, ultimately saving lives in critical situations.

6.      CentralSquare's innovative and significant contributions in the field of public safety software have been widely recognized in the industry. In fact, CentralSquare was recently named a 2024 Amazon Web Services (AWS) GovTech Champion for its dedication to leveraging cloud technology to improve communities and make meaningful change in the public sector. *See* Jan Day, *Celebrating the 2024 AWS Champion*, AWS Public Sector Blog (July 23, 2024), https://aws.amazon.com/blogs/publicsector/celebrating-the-2024-aws-champions-trailblazers-transforming-communities-through-the-cloud/ (last visited Nov. 26, 2024); *see also* CentralSquare, *CentralSquare Technologies Named a 2024 AWS GovTech Champion*, (Aug. 23, 2024), https://www.centralsquare.com/resources/articles/centralsquare-technologies-named-a-

2024-aws-govtech-champion (last visited Nov. 26, 2024)

7. One of CentralSquare's earliest patents was issued in 2012, covering the Caller Location Query (CLQ) technology that enhances the ability of emergency responders to provide rapid assistance to people in need. CLQ improves the accuracy and efficiency of obtaining location information from emergency callers because it allows 911 dispatchers to send a CLQ hyperlink to a wireless phone to click and then returns the caller's coordinates.

8. CentralSquare was the first to the market with CLQ technology.

9. In 2022, Carbyne and CentralSquare signed a one-year reseller agreement after a prolonged negotiation, but the parties did not renew the agreement when it expired. The agreement focused on CentralSquare reselling Carbyne's products, including Apex and Universe products. During the term of this agreement, Carbyne did not have any right, either express or implied, to CentralSquare's intellectual property, including the '016 patent.

10. Carbyne has run marketing material that describes CentralSquare's proprietary technology as its own. For example, in a 2022 interview, CEO and Founder of Carbyne, Mr. Amir Elichai, described technology covered by at least CentralSquare's '016 patent as part of Carbyne products: "the police pinged her device with Carbyne's capabilities…sent her a link, she clicked the link… they got the location." *See* Hana May, *Could based emergency communications platforms helps dispatchers find someone quicker*, News Channel 9 (Oct. 21, 2022), https://newschannel9.com/news/local/could-based-emergency-communications-platforms-helps-dispatchers-find-someone-quicker (last visited Nov. 26, 2024).

11. On November 4, 2021, CentralSquare sent Carbyne a licensing proposal (Exhibit A) informing Carbyne that its products were practicing the limitations of, at least, U.S. Patent No. 9,301,117 (the "'117 Patent"). The licensing proposal mapped the limitations of the '117 patent onto Carbyne's products.

3

12. On January 3, 2022, Carbyne responded (Exhibit B) that a license was not needed because the '117 patent was not infringed by its Apex product. Carbyne's letter asserted that Apex did not include "at least claimed functionality directed towards the receipt and distribution of location information recited by the web-hosting module of independent claim 1, as well as the corresponding method steps set forth by independent claim 9."

13. On January 28, 2022, CentralSquare responded (Exhibit C), further demonstrating how each of the '117 patent's limitations are present in at least Carbyne's Apex product.

14. On February 22, 2022, Carbyne responded (Exhibit D), arguing that additional limitations were not present in its Apex product. Specifically, Carbyne argued that (1) CentralSquare omitted limitations from the claim chart, and (2) that the "second communications network" limitation of the '117 Patent was not infringed by its product's "secondary secure path."

15. On April 9, 2022, CentralSquare responded (Exhibit E), explaining further how, based on publicly available information, each of '117 patent's limitations were met by Carbyne's products.

16. On July 21, 2022, Carbyne responded (Exhibit F), alleging that the '117 Patent was invalid under 35 U.S.C. § 103 over U.S. Patent Publication Nos. 2010/0261492 to Salafia et al., and 2012/0190384 to Marr et al.

17. On June 26, 2024, CentralSquare informed Carbyne in a letter (Exhibit G) that the '117 Patent was reissued as U.S. Patent No. RE50,016 on June 18, 2024, and noted that CentralSquare was prepared to offer Carbyne a license to the '016 Patent for past and future infringement.

**THE PARTIES**

18. Plaintiff CentralSquare, LLC is a limited liability company organized and existing

4

under the laws of Delaware with its corporate headquarters at 1000 Business Center Drive, Lake Mary, FL 32746.

19. Upon information and belief, Carbyne, Inc. is a corporation organized under the laws of Delaware and its principal place of business located at 45 W 27th Street, 2nd Floor, New York, NY 10001.

20. Upon information and belief, Carbyne Ltd. is a corporation organized under the laws of Israel and its principal place of business located at Alon Towers 2(B), 94 Yigal Alon Street, 16th Floor, Tel-Aviv Yafo 6789139.

21. Based on information provided by Defendants, Carbyne, Inc. and Carbyne, Ltd. operate their businesses under the name of Carbyne, which was allegedly founded by Amir Elichai (Founder & CEO) in 2015, where Carbyne, Inc. is regarded as the head quarter and Carbyne, Ltd. is regarded as the R&D center. *See* About Us, Carbyne, https://carbyne.com/company/about-us/ (last visited Nov. 26, 2024).

## JURISDICTION AND VENUE

22. This action arises under the patent laws of the United States, 35 U.S.C. §§ 271, 281, and 284-85, among others. This Court has subject matter jurisdiction of the action under the above statutes, including 35 U.S.C. § 271, et seq, 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over patent actions).

23. Carbyne is subject to personal jurisdiction in this Court. In particular, Carbyne is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Carbyne's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

24. This Court has personal jurisdiction over Carbyne because Carbyne, directly and through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the state of Texas and/or pursuant to Fed. R. Civ. P. 4(k)(2). Specifically, Carbyne intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this district directly, through intermediaries, by contributing to and through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including this district. For example, Carbyne has an active contract with the Texas Department of Information Resources to sell directly to "state and local government, public education, [and] other public entities in Texas." *See* Overview and Details of DIR Contracts, Tex. Dep't. of Info. Res., https://dir.texas.gov/contracts/dir-cpo-4717 (last visited Nov. 26, 2024). In particular, the active contract "offers [Carbyne] Software-as-a-Service (SaaS) emergency preparedness and public safety solutions for Next Generation 911 (NG911) call handling." *Id.* Upon information and belief, in order to provide 911 call handling to a specific forum, Carbyne not only offers products and services within this forum but also maintains a regular business within this forum.

25. Furthermore, on information and belief, Carbyne has engaged in continuous, systematic, and substantial activities within this state, including substantial marketing and sales of products within this state and this district. Furthermore, on information and belief, this Court has personal jurisdiction over Carbyne because Carbyne has committed acts giving rise to CentralSquare's claims for patent infringement within and directed to this district.

26. Furthermore, on information and belief, Carbyne has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used within this judicial district, including by directly and indirectly

6

working with distributors, and other entities located in the state of Texas, to ensure the accused products reach the state of Texas and this judicial district.

27. Carbyne also maintains commercial websites accessible to residents of the state of Texas and this judicial district, through which Carbyne promotes and facilitates sales of the accused products. Furthermore, Carbyne enjoys substantial income from sales of its products and services in this state and district.

28. Carbyne offers products and services and conducts business in the Western District of Texas. For example, Carbyne's website has a video showing Carbyne directors and employees in the Western District of Texas, installing, training, educating, and using Carbyne's infringing APEX product. *Carbyne APEX Launch in RioCOG*, https://carbyne.com/resources/videos/carbyne-apex-launch-in-riocog/ (last visited Nov. 26, 2024). Specifically, Carbyne offered its products and services, including the accused Apex product, to customers within this forum such as the Rio Grande Council of Governments (i.e., located in this forum). *See id.* ("[Apex] improves the lives of the constituents within our COG region. I want to thank the Carbyne team, from start to finish, because without their support and their team, plus their assets and resources that they applied, we wouldn't be here.").

29. Venue is proper against Carbyne in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because it has established and maintained regular places of business in this district and has committed acts of patent infringement in the district. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

30. Furthermore, Carbyne employs a number of individuals within this district for, at least: installations, giving demonstrations, on-site training, biweekly check-up meetings, new hire training, quarterly on-site coaching for call-takers, quarterly preventative maintenance and troubleshooting, etc., as listed on Carbyne's website under its support offerings. *See* Customer

7

Success, Carbyne, https://carbyne.com/company/customer-success/ (last visited Nov. 26, 2024). Carbyne viewed maintaining a business presence in this district as important and accordingly solicited employees in this district to support customers in this district. Specifically, Carbyne offers a "Meet Your Texas Team" support group for this forum. *See* Carbyne, https://texas.carbyne.com/landing-page (last visited Nov. 26, 2024) (identifying employees who are forum residents).

31. On information and belief, Carbyne provided these employees with equipment, products, and/or materials to be used in or distributed from their homes and/or workplaces as part of their job responsibilities. On information and belief, these individuals' employment with Carbyne is conditioned upon and based on their residence and continued residence within the district to further the specific infringing products and services within this district.

32. Carbyne also depends on its agents and affiliates, etc., being physically present at places in the district, and Carbyne affirmatively acted to make permanent operations within this district to service its customers. For example, Carbyne "has entered into a strategic relationship" with AT&T, which it now relies on to basically "do everything—handling sales, site surveys, deployments, training and support." *See* Donny Jackson, *Carbyne announces resell relationship with AT&T for cloud-based 911 offerings*, Urgent Communications (June 15, 2023), https://urgentcomm.com/2023/06/15/carbyne-announces-resale-relationship-with-att-for-cloud-based-911-offerings/ (last visited Nov. 26, 2024). As an agent of Carbyne, on information and belief, AT&T is required to store and maintain Carbyne's products and servicing equipment in this district at a place of business. And, on information and belief, Carbyne has the sufficient right to direct or control the actions of AT&T related to this strategic relationship. Indeed, Carbyne has promoted AT&T's broad business locations, including those in this district, as a place of business for Carbyne: "AT&T and Carbyne have joined forces to bring AT&T ESINet cloud-based

8

solutions to PSAPs across the U.S." *Id.*

33. Carbyne commits acts of infringement from this district, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

34. Carbyne, Ltd. is subject to personal jurisdiction to this Court for an addition reason because, as the R&D center, Carbyne, Ltd. should have known its products would be imported to the United States from Israel and adopted by Carbyne, Inc. Venue is also proper against Carbyne Ltd. in this Court pursuant to 28 U.S.C. § 1391(c)(3) because Carbyne Ltd. does not reside in the United States and thus may be sued in any judicial district in the United States.

## THE ACCUSED PRODUCTS

35. Plaintiff repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

36. Based upon public information, Carbyne owns, operates, advertises, and/or controls the website https://carbyne.com/ through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.

37. Carbyne uses, causes to be used, sells, offers for sale, provides, supplies, distributes, or imports into the United States, its infringing products and services, which includes, but is not limited to Carbyne's APEX product (https://carbyne.com/solutions/apex/) and Universe product (https://carbyne.com/solutions/universe/) (the "Accused Products").

38. Carbyne also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products.

39. For these reasons, and additional reasons detailed below, the Accused Products practice at least one claim of the reissued '016 Patent.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. RE50,016

40. Plaintiff realleges, and incorporates fully herein, each preceding paragraph.

9

41. The United States Patent and Trademark Office (the "PTO") reissued the '016 Patent on June 18, 2024, titled "SMS Communication During Emergencies." A true and correct copy of the '016 Patent is attached as Exhibit H.

42. TriTech Software Systems owns the '016 patent through assignment as recorded by the PTO at Reel 046455, Frame 0060.

43. TriTech Software Systems is a wholly owned subsidiary of Plaintiff CentralSquare.

44. CentralSquare has an exclusive license to the '016 patent.

45. The '016 patent currently expires on April 11, 2034.

46. The claims of the '016 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.

47. Carbyne has not obtained a license to the '016 Patent, or obtained CentralSquare's permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of the '016 Patent.

48. Carbyne has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '016 Patent, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

49. Exemplary claim charts demonstrating Carbyne's infringement of the '016 Patent are attached as Exhibits I and J, and incorporated herein by reference.

50. Carbyne has infringed, either literally or under the doctrine of equivalents, directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of the '016 by making, using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States products and services through its website, including but not limited to the Accused Products.

10

51. Carbyne, on information and belief, has indirectly infringed the '016 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Products and/or by instructing customers how to use the Accused Products in a way that directly infringed one or more claims of the '016 Patent.

52. Carbyne's customers have directly infringed the '016 Patent by using the Accused Products. Through its product manuals, website, instructional videos and/or sales and marketing activities, on-site training, new-hire training, site surveys, training and support, installations, Carbyne solicited, instructed, encouraged, and aided and abetted its customers to purchase and use the Accused Products in an infringing way.

53. Carbyne has had knowledge of the '016 Patent and of its infringement of the '016 Patent through at least CentralSquare's November 4, 2021, notice letter and licensing proposal.

54. On information and belief, despite Carbyne's knowledge of the '016 Patent and of its infringement of the '016 Patent, Carbyne has not sought to remedy its infringement.

55. As a result of Carbyne's infringement of the '016 Patent, CentralSquare has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

56. In addition, Carbyne's infringing activities detailed in this Complaint and Exhibits I and J have been willful, egregious, wanton, and deliberate in disregard to CentralSquare's rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CentralSquare demands a trial by jury on all issues triable of right by a jury.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A judgment that Carbyne has directly and/or indirectly infringed one or more claims of the '016 Patent;

B. A permanent injunction prohibiting Carbyne, and all persons or entities acting in concert with Carbyne, from infringing the '016 Patent;

C. A judgment and order requiring Carbyne to pay CentralSquare damages under 35 U.S.C. § 284;

D. A judgment and order that Carbyne has willfully infringed the '016 Patent and requiring Carbyne to pay CentralSquare enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285;

E. A judgment and order requiring Carbyne to pay CentralSquare pre-judgment and post-judgment interest on the damages award;

F. A judgment and order requiring Carbyne to pay CentralSquare's costs; and

G. Such other and further relief as the Court may deem just and proper.

Dated: December 4, 2024 Respectfully submitted,

/s/ Lionel M. Lavenue
Lionel M. Lavenue, Esq. (VA Bar No. 49,005)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Phone: (571) 203-2700
Email: Lionel.Lavenue@finnegan.com

Drew D. Christie, Esq. (*pro hac vice* to be filed)
Clinton P. Greub, Esq. (*pro hac vice* to be filed)
Min Yang, Esq. (*pro hac vice* to be filed)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, D.C. 20001-4413
Phone: (202) 408-4000
Email: Drew.Christie@finnegan.com
        Clinton.Greub@finnegan.com
        Min.Yang@finnegan.com

Guanshi Li, Esq. (*pro hac vice* to be filed)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
2 Seaport Lane, 6th Floor
Boston, MA 02210-2001
Phone: (617) 646-1600
Email: Guanshi.Li@finnegan.com

*Attorneys for Plaintiff*
*CENTRALSQUARE TECHNOLOGIES, LLC*