# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> CARBYNE, INC., and CARBYNE, LTD. <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 1:24-cv-01497-ADA <br><br> JURY TRIAL DEMANDED |

**COUNTERCLAIM DEFENDANT CENTRALSQUARE'S
REPLY CLAIM CONSTRUCTION BRIEF
RELATING TO U.S. PATENT NO. 11,689,383**

**TABLE OF CONTENTS**

I. INTRODUCTION: THE CLAIMS SHOULD BE CONSTRUED IN LINE WITH THE PARENT APPLICATION, AND IF NOT, THEN CONSTRUING THEM BASED ON ADDED MATTER WOULD RENDER THEM INDEFINITE ..................... 1

II. ARGUMENT: CARBYNE'S RELIANCE ON IMPROPERLY ADDED MATERIAL CANNOT SAVE THE FIRST TWO DISPUTED TERMS, AND CARBYNE APPEARS TO CONCEDE THE LAST TERM ............................................ 2

    A. The "wherein the URL link is associated with the phone number of the mobile device" term is indefinite. ............................................................. 2

        1. The plain and ordinary meaning of "associated with" lacks support by the specification. .................................................................... 2

        2. The plain and ordinary meaning of the "associated with" terms renders the terms inconsistent and indefinite. .............................................. 4

        3. Carbyne's cited cases support CST's indefiniteness argument. ................. 6

        4. Carbyne is estopped from arguing for its broader interpretation. ............... 6

        5. Carbyne's objection to CST's construction fails to find support. ............... 7

        6. CST's Expert Declaration Is Consistent with Intrinsic Records ................. 8

    B. The "wherein the real-time video stream is associated with a unique identifier for the mobile device" term is likewise indefinite. ................................ 9

    C. "Unique identifier" term: Carbyne Appears to Adopt CST's Construction. ........ 10

III. CONCLUSION: THE COURT SHOULD ADOPT CST'S CONSTRUCTIONS ........... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) ................................................................................................3

*Cummins-Allison Corp. v. Glory Ltd.*,
    457 F.Supp.2d 843 (N.D. Ill. 2006) ........................................................................................1, 4

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
    921 F.3d 1060 (Fed. Cir. 2019) ................................................................................................8

*Gillespie v. Dywidag Systems Intern., USA*,
    501 F.3d 1285 (Fed. Cir. 2007) ................................................................................................7

*In re Lew*,
    257 Fed.Appx 281 (Fed. Cir. 2007) ......................................................................................3, 8

*Oyster Optics, LLC v. Coriant Am. Inc.*,
    2018 WL 7019353 (E.D. Tex. Mar. 2, 2018) ...........................................................................3

I.  **INTRODUCTION: THE CLAIMS SHOULD BE CONSTRUED IN LINE WITH THE PARENT APPLICATION, AND IF NOT, THEN CONSTRUING THEM BASED ON ADDED MATTER WOULD RENDER THEM INDEFINITE**

Carbyne's arguments for all three terms fail. Dkt. 32, Carbyne's Response Brief ("RB").

For the first two disputed terms, "wherein the URL link is associated with the phone number of the mobile device" and "wherein the real-time video stream is associated with a unique identifier for the mobile device," Carbyne's arguments against CentralSquare's ("CST") constructions are based exclusively on newly added matter added to the '383 patent specification which *is not* supported by the original parent specification. Dkt. 30 at 1. Carbyne indirectly concedes that the newly added language in the '383 patent specification was deliberate. RB at 12. This new material, however, was improperly added as a *continuation* application—continuation applications cannot add new material. It is axiomatic that disclosures in a later related application describing the invention claimed in the parent can be used to narrowly construe the claims, but not conversely: a continuation cannot expand the scope of the initial disclosed invention. *See Cummins-Allison Corp. v. Glory Ltd.*, 457 F.Supp.2d 843, 850 (N.D. Ill. 2006). Thus, the Court should adopt CST's proposed constructions and should construe these claim terms to be consistent with the disclosure of the parent patent, thereby disregarding the newly added material. Alternatively, if the Court were to adopt Carbyne's proposed constructions, the first two "associated with" claim terms would be rendered indefinite.

Additionally, even if the Court considers this improperly added matter, the first two terms remain indefinite in view of the full context of this specification, the patent family, and the respective prosecution histories. The "associated with" terms depart from the original disclosure limiting the claims to connecting video links and real-time video streams with a unique identifier. The inconsistency created by Carbyne's proposed constructions of the "associate with" terms when considered in view of the rest of the patent family, creates ambiguity and would leave a POSITA

unable to understand the scope of the invention with reasonably certainty. Thus, under plain and ordinary meaning, the first two disputed "associated with" claim terms would be indefinite.

For the third term, Carbyne appears to adopt CST's proposed alternative construction, "unique identifier used to match the real-time data with the dispatch terminal used in the first connection," which is the exact verbiage used in all embodiments in the specification.

II.  **ARGUMENT: CARBYNE'S RELIANCE ON IMPROPERLY ADDED MATERIAL CANNOT SAVE THE FIRST TWO DISPUTED TERMS, AND CARBYNE APPEARS TO CONCEDE THE LAST TERM**
   A. **The "wherein the URL link is associated with the phone number of the mobile device" term is indefinite.**
      1. **The plain and ordinary meaning of "associated with" lacks support by the specification.**

The only support in the specification for the first two disputed "associated with" terms comes from material newly added in the '383 patent, which was filed as a *continuation* not a continuation-in-part. This new matter that differs substantially from the scope of the invention claimed in the original specification cannot serve as the basis for constructions. Dkt. 30 at 1. Carbyne disingenuously argues that the new matter does not impact this claim construction. RB at 5. The new matter, however, is directly connected to the disputed terms as those terms lack support *but for* the improperly added matter. The claims must be construed consistent with the original specification, otherwise, they are indefinite.

Carbyne contends that it did not improperly add new matter to the specification of the '383 patent, and attempts to confuse the Court by suggesting that the added matter does not affect claim construction. RB at 5. But Carbyne filed the '383 patent as a continuation rather than a continuation-in-part, yet Carbyne still introduced broader embodiments without informing the Examiner that new matter was being added. Specifically, Carbyne removed requirements that the (1) URL link includes a unique identifier associated with the user device, and (2) real-time data is associated with the user's device using the unique identifier. Dkt. 30 at 7. By introducing these

2

new, broader embodiments into the specification without previous support from the original application, and then claiming these same new, broader embodiments using the exact language, the scope of the claims was improperly expanded. *Id.* The Examiner would have refused to allow the expanded scope had Carbyne attempted to add this matter via an amendment. *See Oyster Optics, LLC v. Coriant Am. Inc.*, 2018 WL 7019353 (E.D. Tex. Mar. 2, 2018) ("continuation applications are … based on the same disclosure as an earlier application").

For instance, in *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, the Federal Circuit affirmed a construction of "sealed sleeve" as limited to "heat-sealed sleeve," noting that it was proper to refuse attempts to alter "the specification to remove references to 'heat' as the way of sealing the sleeve." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008) ("[T]he claims would have been invalid for lack of support in the initial disclosure . . . if construed to encompass more than heat-sealed sleeves."). Here, allowing Carbyne to *quietly* broaden the scope of the invention by removing necessary limitations would have the same effect as removing "heat" from the sealed sleeves at issue in *Baldwin*. Here, construing the claims to encompass URL links without unique identifiers (the result of Carbyne's broadened new material) similarly renders the claims invalid "for lack of support in the initial disclosure." *Id*.

Similarly, in *In re Lew*, the Federal Circuit affirmed a refusal of an amendment replacing "ball bearings" with broader "curved members." The Federal Circuit noted that "each time 'the invention' is described, *including in the summary of the invention and the abstract*, it is stated to include 'ball bearings.'" *In re Lew*, 257 Fed.Appx 281, 285 (Fed. Cir. 2007). (Emphasis added). Likewise, here, the original specification *only* discloses embodiments where *the URL link includes a unique identifier for the user's device*. Thus, the disputed terms should be construed according to the original specification and without the benefit of improperly added new matter.

3

### 2. The plain and ordinary meaning of the "associated with" terms renders the terms inconsistent and indefinite.

Under plain and ordinary meaning, the first two disputed "associated with" terms are indefinite because of inconsistencies across the patent family specifications the above noted improper expansion of scope. A continuation cannot expand the scope of the initial disclosed invention. *See Cummins-Allison*, 457 F. Supp.2d at 850.

Carbyne argues that "associated with" by itself has a definite broad plain and ordinary meaning. CST is not arguing that the mere recitation of "associated with" in a claim is indefinite. Instead, it is the recitation of "associated with" in the '383 patent claims and Carbyne's contention that the "URL link" is only associated with the "phone number of the mobile device" (and not the unique identifier) that is indefinite.

Carbyne insists that a POSITA would understand "when a URL link is and is not associated with the phone number of the mobile device."[1] RB at 7. Carbyne reads out "unique identifier" and argues that the term "URL link is associated with the phone number" is supported. *Id.* It is not. Merely "associating" the link with the phone number, not an identifier, is impermissibly broad when compared to what is disclosed in the original, parent specification.

Carbyne fails to offer any example of a plausible understanding of the phrase, other than CST's proposed construction. For instance, Carbyne argues that the term is supported "where a first user provides a second user's number so the server can transmit a link to that second device." *Id.* at 7-8. However, this cited language supports CST's alternative construction, as the cited section of the specification *actually* states that a "first [user device] may *provide an identifier for the second [user device],* such as a phone number. The *identifier of the second [user device]* may be received by the server . . . to send a link to the second [user device]." '383 patent, 8:10-20.

---

[1] Carbyne fails to provide examples of the URL link *not* associated with the phone number.

(Emphases added). Thus, it is clear from Carbyne's examples that the initial disclosure requires a "unique identifier" that is <u>associated with the first device</u> must be part of that URL link so that that the video-stream, regardless of the device of origin, may be associated with the first device. Carbyne's lack of contrary examples *from any specification* illustrates the lack of guidance a POSITA would have to determine the scope of the drafter's claims.

Carbyne attempts to bridge the gap with its expert, but that too fails. Carbyne's expert contends that a POSITA would understand associating the phone number and the URL by: (1) "mapping a phone number to a message endpoint and directing a URL to that endpoint is one way to associate the phone number and the URL," and (2) "maintaining a mapping between (i) a phone number and (ii) URL link data in system memory . . . is also an association." *Id.* at 8. Yet, these examples only further illustrate that the claims lack defined scope. What Carbyne's expert does not provide is an example where a POSITA would find a link *not* associated with a phone number (i.e., like the only association supported by the original specification), nor could he.

Carbyne analogizes the claims of the parent U.S. Patent 11,716,217 (the '217 patent), which only require a "link associated with *said* identifier," to the claims of the '383 patent, which requires that "the URL link is associated with the phone number." *Id.* But the '217 claims *expressly* require "obtain[ing] a unique identifier of a user mobile device"—a limitation intentionally removed from the claims of the '383 patent. *See* '217 patent, claim 1. Thus, the claimed "link associated with *said identifier*" is clearly referring to the unique identifier of the user's mobile device." The claims of the '217 patent further require that the "real-time video data is associated *by <u>said</u> unique identifier* with <u>said</u> [first] call." *Id.* Taken together, the real-time video is associated with the first caller's mobile device using a unique identifier for the mobile device included in the link, because without the associated unique identifier, the video could not be associated with the

5

first caller's device using *said* unique identifier. The disputed terms here require only that the link be associated with the phone number of the device, leaving a POSITA unable to understand the scope of the invention with reasonably certainty, thereby rendering the claims indefinite.

### 3. Carbyne's cited cases support CST's indefiniteness argument.

Contrary to Carbyne's argument, this Court did not blindly find "associated with" always has a plain and ordinary meaning. *See* RB at 10. Carbyne's argument that the term "associated with" is definite *per se* is misplaced as it is not construed in a vacuum. For example, In *Fypsi, Inc. v. Dialpad, Inc.*, the Court gave the term "switch…associated with" its plain and ordinary meaning because "[a POSITA], knowing what a switch is, would not lose understanding of the structure being referenced simply because that switch became 'associated with' another device." 6:21-cv-00642, Dkt. No. 73 at 11. Notably, the Court ruled that "the word 'associated with' does not render the patent indefinite *when attached to the word 'switch.'*" *Id.* (Emphasis added.) The Court did not blindly find that "associated with" must always be construed according to its plain and ordinary meaning. It is the elements attached to this association that matter.

Similarly, in *3rd Eye Surveillance, LLC v. The City of Fort Worth*, the Court, after considering the specific elements being claimed, determined that "associated with" is not invalid because "[r]eading the patent, a POSITA would be able to determine with reasonable certainty the relationship between the different 'associated' elements." 6:14-cv-00725, Dkt No. 120 at 6 (E.D. Tex. Jun. 8, 2016). But it is not the case here—neither the '383 specification nor any of its earlier related specifications explains how the phone number and the URL link are associated directly with each other. Carbyne's explanation is not supported by the specification.

### 4. Carbyne is estopped from arguing for its broader interpretation.

Carbyne fails to rebut CST's estoppel argument. RB at 9. The estoppel is straightforward—the examiner filed a rejection during prosecution citing Ni as disclosing this "associated with"

6

limitation, as it clearly teaches "texting a link to the user's mobile device to open a WebRTC call on a mobile device." Dkt. 30-8 at 66. In response, Carbyne argued that the texting functionality was insufficient to "'associate'" the link with the phone number of the mobile device. *Id.* at 54. Yet, Carbyne now backtracks for purposes of this litigation and to support its infringement theories, asserting that the disputed terms are broad enough such that texting sufficiently associates the link with the phone number, without requiring a unique identifier. RB at 9. Carbyne cannot now seek an interpretation of the claim term that would have rendered it invalid during prosecution. *See also Gillespie v. Dywidag Systems Intern., USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) ("The patentee is held to what he declares during the prosecution of his patent" – using prosecution history to construe the term "outer surface" based on patentee's arguments to overcome prior art).

### 5. Carbyne's objection to CST's construction fails to find support.

In its Response, Carbyne argues that CST's constructions of the "associate with" terms should not be adopted because the claim language was intentionally chosen by the drafter, admitting an intentional broadening of claim scope. RB at 12. However, Carbyne fails to identify disclosures in any patents of the family to support its broader interpretation of the claims. Indeed, every embodiment in the original specification and the earlier patent's claims support CST's proposed construction. For example, Carbyne, during prosecution of the grandparent U.S. Patent 11,139,996 (the '996 patent), stressed the significance of the unique identifier association to the disclosed invention. For instance, while amending the claims so the link includes "a unique identifier associated with said user mobile device," Carbyne argued:

> [T]he amended Claim 1 ***now clarifies a unique feature*** of associating the streamed real-time video with the identity of the sending user mobile device ***by incorporating into the link a unique identifier associated with the identified user mobile device***. This <u>unique identifier is a base for associating the user mobile device with the streamed real-time video</u> at the dispatch unit terminal <u>such that the dispatch unit can associate the mobile device that made the call over the first communication connection with the received real-time video</u>.

7

Dkt. 30-6 at 39. (Emphases added.)

Carbyne now argues that these applicant arguments are for "a *different* patent, with *different* claim language." RB at 13. But this argument by Carbyne also fails. The Federal Circuit previously held that, even when the claims recite elements differently, "[w]hen a parent application includes statements involving 'common subject matter' with the terms at issue, those statements are relevant to construction of the terms in the child patent." *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1070-71 (Fed. Cir. 2019) (internal citations omitted). Additionally, in *In re Lew*, the Federal Circuit noted that an applicant's arguments during prosecution carried considerable weight where an applicant argues whether a limitation was a "key improvement." 257 Fed.Appx. at 286. Carbyne's attempts to rebut CST's proposed alternative construction by arguing that it does not contemplate the only way to associate the video link, also fails. Carbyne provides no examples from the specification where video is associated with the mobile device without the use of a "unique identifier associated with the mobile device." Indeed, even Carbyne's citation to the '383 patent at 8:21-31 likewise relies on "*the identifier*, i.e., the phone number, *associated with the first [user device]*," to reestablish connection and send a link for video. RB at 13-14; *see also* '383 patent at 8:24-31. Thus, Carbyne provides no basis for rebutting CST's constructions of the "associated with" terms.

      **6.**     **CST's Expert Declaration Is Consistent with Intrinsic Records**

Carbyne next argues that CST's expert, Mr. Lipoff's declaration, contradicts the intrinsic record. *See* RB at 8. Mr. Lipoff, however, explains that "associated with" is indefinite, not in vacuum, but in the context of the claims in view of the original specification. *See* e.g., Dkt. 30-12, ¶¶ 50-51. For instance, Mr. Lipoff explains that the original specification does not disclose any association between (1) a URL link and the phone number other than the phone number as a unique identifier, or (2) between the real-time video stream and a unique identifier—thus, there is no

8

original specification support for association *without* the unique identifier. *Id.*¶¶ 49, 63. And Carbyne cannot identify, nor has it identified, evidence to the contrary.

The expert declaration provides technical context and explains why a skilled artisan would be unable to determine the scope of the claims with confidence, given the vague and undefined language introduced by Carbyne's amendments in this specification. *Id.* e.g. ¶¶ 57-60. For example, Mr. Lipoff explains that associating a link with a phone number is indefinite because it does not provide a reasonably certain scope. *Id.* ¶¶ 50-51. Whereas, as originally outlined in the parent specification, associating a unique identifier with a mobile device is definite. *Id.* ¶ 53. Likewise, associating a real-time video with any unique identifier such as "a randomly generated string," as Carbyne now attempts in its infringement theories, is indefinite; whereas, associating a real-time video with a device *using* a unique identifier is not.

### B. The "wherein the real-time video stream is associated with a unique identifier for the mobile device" term is likewise indefinite.

Similarly, for the second "associated with" term, Carbyne likewise fails to rebut that it is indefinite under any construction other than CST's proposed construction and further fails to justify a broader construction. Like the "link" disputed term above, every embodiment (other than the improperly added new material) *associates* the real-time data with the first communication/device *using* the unique identifier. In the '383 patent, however, Carbyne attempts to improperly broaden the invention's scope beyond that of the original disclosure and removes this limitation. And like the above term, this "associated with" term is likewise indefinite.

As for CST's proposed alternative construction, Carbyne argues that it "ultimately just re-arranges the words of the claim with no obvious purpose." RB at 16. But this is incorrect. Carbyne incorrectly argues that the scope of this real-time video stream association may be an assortment of examples that extend beyond the proposed alternative construction—including "a randomly

9

generated string" or "a code snippet." *Id.* at 15. Carbyne's recitation of the specification, however, illustrates "the obvious purpose" of CST's proposed construction. For instance, Carbyne fails to provide any explanation of how *associating* the video stream with a "randomly generated string" would "link[], or connect[], with the user device," nor has it shown that a POSITA would understand the claimed scope, as proposed by Carbyne, to have any boundaries. The disclosure of the '383 patent, however, informs that the *video-stream may be connected to the user device* using "a randomly generated string" as a unique identifier, according to CST's proposed construction.

### C. "Unique identifier" term: Carbyne Appears to Adopt CST's Construction.

Carbyne no longer appears to dispute that the plain and ordinary meaning of "unique identifier" aligns with CST's proposed construction. CST's proposed construction, "unique identifier used to match the real-time data with the dispatch terminal used in the first connection," is the exact verbiage used in all embodiments in the specification when "unique identifier" is discussed and defined. Dkt. 30 at 21; *see also* '383 patent 2:29-31, 2:41-43, 2:54-56. As Carbyne points out, "[e]ach identifier is uniquely generated for each [user device] and therefore distinguishes any data sent from different [user devices]." RB at 18. Carbyne further states that "when the real-time data is sent to the first [dispatch unit terminal], the identifier that was included within the link is utilized for associated the real-time data with the at least audio content at the first [dispatch unit terminal]." *Id.* at 19. Carbyne does not disagree with this plain and ordinary meaning of the term "unique identifier."

### III. CONCLUSION: THE COURT SHOULD ADOPT CST'S CONSTRUCTIONS

CST asks that the Court reject Carbyne's arguments and adopt CST's constructions.

Dated: November 17, 2025

Respectfully submitted,

/s/ Lionel M. Lavenue
Lionel M. Lavenue (VA 49,005)
lionel.lavenue@finnegan.com
Bradford C. Schulz (VA 91,057)
bradford.schulz@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Phone: (571) 203-2700

Clinton P. Greub (*pro hac vice* to be filed)
clinton.greub@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, D.C. 20001-4413
Phone: (202) 408-4000

Guanshi Li (*pro hac vice* to be filed)
guanshi.li@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
2 Seaport Lane, 6th Floor
Boston, MA 02210-2001
Phone: (617) 646-1600

***Attorneys for Plaintiff and Counterclaim-Defendant CENTRALSQUARE TECHNOLOGIES, LLC***

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on November 17, 2025.

                                                        */s/ Lionel M. Lavenue*
                                                        Lionel M. Lavenue