**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

CENTRALSQUARE TECHNOLOGIES, LLC,

        Plaintiff and Counterclaim-Defendant,

v.

CARBYNE, INC. and CARBYNE LTD.,

        Defendants and Counterclaim-Plaintiffs.

Civil Action No. 1:24-cv-01497-ADA

JURY TRIAL DEMANDED

## PLAINTIFF'S ANSWER TO DEFENDANTS' AMENDED COUNTERCLAIMS

Plaintiff and Counterclaim-Defendant CentralSquare Technologies, LLC ("CentralSquare" or "Plaintiff") states the following as its Answer to the Amended Counterclaims of Defendants and Counterclaim-Plaintiffs Carbyne, Inc. and Carbyne Ltd. (collectively, "Carbyne" or "Defendants"), filed June 16, 2025. Dkt. 18. The paragraphs of this Answer correspond to the numbered and lettered paragraphs of the Amended Counterclaims. Any allegation not expressly admitted is denied.

## GENERAL DENIAL

Pursuant to Federal Rule of Civil Procedure 8(b)(3), CentralSquare denies all allegations in Carbyne's Amended Counterclaims, whether express or implied, except those specifically admitted below. CentralSquare repeats the headings recited in the Amended Counterclaims for convenience. To the extent such headings, or any footnotes or images in Carbyne's Amended Counterclaims, contain factual allegations to which a response is required, CentralSquare denies all allegations contained within any headings, footnotes, and images in the Amended

Counterclaims except those specifically admitted below. CentralSquare denies that Carbyne is entitled to the relief requested or any other relief. Moreover, CentralSquare reserves the right to amend or supplement its Answer and to raise additional defenses based on additional facts or developments that become available or arise during discovery.

## THE PARTIES

1. Based on Carbyne, Inc.'s Answer and Amended Counterclaims (Dkt. 18 at 4, 14), CentralSquare admits that Carbyne, Inc. is a corporation organized under the laws of Delaware and has a principal place of business located at 45 W. 27th Street, 2nd Floor, New York, NY 10001.

2. Based on Carbyne, Ltd.'s Answer and Amended Counterclaims (Dkt. 18 at 4, 14), CentralSquare admits that Carbyne, Ltd. is a corporation organized under the laws of Israel and has a principal place of business located at Alon Towers 2(B), 94 Yigal Alon Street, 16th Floor, Tel-Aviv Yafo 6789139.

3. CentralSquare admits that it is a limited liability company organized and existing under the laws of Delaware with its corporate headquarters at 1000 Business Center Drive, Lake Mary, FL 32746.

## JURISDICTION AND VENUE

4. CentralSquare admits for the purposes of this action only that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). CentralSquare also admits for the purposes of this action only that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, may confer jurisdiction over properly presented declaratory judgment claims.

5.    CentralSquare admits that it filed its Complaint in this Court.  CentralSquare denies the remainder of the allegations and characterizations in Paragraph 5 to the extent they purport to establish additional bases for personal jurisdiction beyond CentralSquare's filing of its Complaint.

6.    CentralSquare admits that it conducts business in the State of Texas, including the Western District of Texas.  CentralSquare denies that it has infringed or continues to infringe any patent owned by Carbyne.  CentralSquare denies the remainder of the allegations in Paragraph 6.

7.    CentralSquare admits for the purposes of this action only that venue is proper in the Western District of Texas by virtue of CentralSquare's filing of its Complaint in this forum.

**STATEMENT OF FACTS**

8.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies such allegations.

9.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 9 and therefore denies such allegations.

10.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 10 and therefore denies such allegations.

11.    CentralSquare admits that representatives of CentralSquare and Carbyne communicated regarding a potential business relationship beginning in or around 2020. CentralSquare denies the remainder of the allegations in Paragraph 11.

12.    CentralSquare admits that it is a larger company than Carbyne on the basis of CentralSquare having more employees than Carbyne.  CentralSquare denies the remainder of the allegations in Paragraph 12.

13.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 13 and therefore denies such allegations.

14.    CentralSquare admits that CentralSquare and Carbyne Inc. executed a document titled "CentralSquare Master Teaming Agreement" on January 25, 2021.  CentralSquare denies the characterization of the Teaming Agreement in Paragraph 14.  CentralSquare denies the remainder of the allegations in Paragraph 14.

15.    CentralSquare admits that the Parties executed a "Software License and Subcontractor Agreement" in May of 2021.  CentralSquare admits that the Software License and Subcontractor Agreement states that "Provider hereby grants to CentralSquare, and CentralSquare hereby accepts, a non-exclusive right and license, in the Territory, during the Term, to access and use the Provider Software" and that "Provider Software" is defined to include "general release versions of the software program(s) of Provider identified in Exhibit A."  CentralSquare further admits that the Agreement lists, in Exhibit A, the "C-Live Universe annual workstation subscription."  CentralSquare finally admits that the Agreement lists "Dynamic device location (For All calls) - Pinpoint location (SMS / WhatsApp)" and "Live Streaming - Caller Video & Images (one-way from the caller to the call taker).  Unique Patented Technology" under "C-Live Universe, Description and Inclusions."  CentralSquare denies the characterization of the Software License and Subcontractor Agreement in Paragraph 15.

16.    CentralSquare denies the allegations contained in Paragraph 16.

17.    CentralSquare admits that it submitted a Proposal for the Department of Public Safety Communications to the government of Fairfax County, Virginia.  CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the remainder of the allegations of Paragraph 17 and therefore denies such allegations.

18.    CentralSquare denies the allegations contained in Paragraph 18.

19.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 19 and therefore denies such allegations.

20.    CentralSquare denies the allegations contained in Paragraph 20.

21.    CentralSquare admits that the Parties discussed the possibility of jointly pursuing a BIRD grant in or around 2021.  CentralSquare denies the remainder of the allegations in Paragraph 21.

22.    CentralSquare admits that a BIRD grant refers to funding provided by the Israel-U.S. Binational Industrial Research and Development (BIRD) Foundation, funded in part by the U.S. Department of Homeland Security.  CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the remainder of the allegations in Paragraph 22 and therefore denies such allegations.

23.    CentralSquare admits that the Parties worked together to prepare a grant proposal in 2021.  CentralSquare admits that Carbyne hosted some CentralSquare employees in its New York offices.  CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the remainder of the allegations of Paragraph 23 and therefore denies such allegations.

24.    CentralSquare admits that it jointly submitted its BIRD grant proposal with Carbyne on June 17, 2021.  CentralSquare admits that the title of the project was "Real-Time Multi-Media Emergency Call (911) Communications for Public Safety-First Responders."  CentralSquare admits that the proposal states: "Carbyne and Central Square are announcing their partnership, which now enables emergency call centers to dispatch first responders with the most accurate caller location while also sharing live video and chat with the caller.  This dramatically increases the situational awareness of first responders."

25.    CentralSquare admits that the Proposal states: "Through Carbyne's technology, the call taker now has the ability to receive the caller's location and phone number, even before the call is answered at the center.  In addition, without the requirement of an app, the caller can share live video and communicate via instant chat through a web activation link sent to the caller's device in the form of text message by the call taker. . . . As first responders are deployed to the site of the emergency, they will now have the ability to receive a live video feed, chat, or location view generated by Carbyne's technology."

26.    CentralSquare admits that the proposal states: "Carbyne Universe – Universe instantly provides 911 call takers the most advanced caller location capabilities – video to 9-1-1 (patented), verified instant chat, incident conferencing, custom insight tools and more – all without the requirement of an app."  CentralSquare admits that the proposal states that "Carbyne has been awarded nine patents."  CentralSquare admits that the proposal contains references to "Carbyne's technology."  CentralSquare denies the characterization of the BIRD grant proposal in Paragraph 26.  CentralSquare denies the remainder of the allegations in Paragraph 26.

27.    CentralSquare denies the allegations contained in Paragraph 27.

28.    CentralSquare admits that the BIRD Foundation notified Carbyne and CentralSquare that the foundation approved funding for the proposed project in August of 2021.  CentralSquare denies the remainder of the allegations of Paragraph 28.

29.    CentralSquare admits that an advisory board member for Carbyne was also a part of the CentralSquare executive team.  CentralSquare denies the remainder of the allegations contained in Paragraph 29.

30.    CentralSquare denies the allegations contained in Paragraph 30.

31.    CentralSquare admits that representatives of CentralSquare and Carbyne met on or around October of 2021.  CentralSquare denies the remainder of the allegations in Paragraph 31.

32.    CentralSquare admits that representatives of CentralSquare and Carbyne met on or around November of 2021.  CentralSquare denies the remainder of the allegations in Paragraph 32.

33.    CentralSquare admits that it sent Carbyne a letter dated November 4, 2021, that purports to "bring to your attention one of CentralSquare's patents, U.S. Patent No. 9,301,117." CentralSquare denies the characterization of the letter in Paragraph 33.  CentralSquare denies the remainder of the allegations in Paragraph 33.

34.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 34 and therefore denies such allegations.

35.    CentralSquare denies the allegations contained in Paragraph 35.

36.    CentralSquare admits that the Parties exchanged letters through counsel between January 2022 and July 2022, and beyond.  CentralSquare admits that Carbyne's January 3, 2022 letter states that "Carbyne has conducted a thorough investigation and determined that no license is needed to the '117 Patent because there is no infringement" and that enclosed within the letter are "Carbyne's relevant issued U.S. patents that might be of interest to CentralSquare." CentralSquare admits that Carbyne's February 22, 2022 letter states that Carbyne "remain[s] unconvinced that Apex infringes the '117 Patent."  CentralSquare further admits that Carbyne's July 21, 2022 letter states that Carbyne "remain[s] unconvinced that Carbyne's Apex product ('Apex') infringes CentralSquare's U.S. Patent No. 9,301,117" and that Carbyne believed "the '117 Patent is invalid in view of the prior art."  CentralSquare denies the characterization of the letters in Paragraph 36.  CentralSquare denies the remainder of the allegations in Paragraph 36.

37.     CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 37 and therefore denies such allegations.

38.     CentralSquare admits that a letter sent by Carbyne on July 21, 2022, states that Carbyne believed "it would have been obvious to a person of ordinary skill in the art who would have been highly motivated to combine the teachings of Salafia and Marr and, with a reasonable expectation of success, would have arrived at the system of claim 1 of the '117 Patent prior to the effective filing date of the '117 Patent, making the '117 Patent invalid under 35 U.S.C. § 103." CentralSquare denies any characterizations of the letter in Paragraph 38.  CentralSquare further denies any characterizations of the Salafia and Marr references in Paragraph 38 and denies the remainder of the allegations in Paragraph 38.

39.     CentralSquare denies the allegations of Paragraph 39.

40.     CentralSquare admits that the Parties entered into a "Master Reseller Agreement" with a stated effective date of December 31, 2021, that was signed by both parties by February 2, 2022.  CentralSquare admits that the Master Reseller Agreement states that "CentralSquare desires to market, resell and support Carbyne products and services identified below to its customers and Carbyne desires to enable CentralSquare to do so as a preferred reseller of such products and services in association with CentralSquare 911 and CAD products."  CentralSquare admits that the agreement lists "Dynamic device location (For All calls) - Pinpoint location (SMS / WhatsApp)" and "Live Streaming - Caller Video & Images (one-way from the caller to the call taker). Unique Patented Technology" under the "C-Live Universe, Description and Inclusions."  CentralSquare denies any characterizations of the Master Reseller Agreement and denies the remainder of the allegations of Paragraph 40.

41. CentralSquare admits that the parties bid for and won business in Murietta, California, and St. Louis, Missouri. CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the remainder of the allegations of Paragraph 41 and therefore denies such allegations.

42. CentralSquare denies the allegations contained in Paragraph 42.

43. CentralSquare admits that it sent a letter to Carbyne in August 2022 that states "CentralSquare does not intend to renew the Reseller Agreement upon its expiration on December 30, 2022." CentralSquare admits that the letter further states CentralSquare "would welcome exploring future opportunities with existing or new customers should those opportunities arise." CentralSquare denies the remainder of the allegations of Paragraph 43.

44. CentralSquare lacks sufficient knowledge and information to form a belief about the truth of the allegations contained in Paragraph 44 and therefore denies such allegations.

45. CentralSquare admits that in June 2024, it sent a letter to Carbyne that stated: "Since your last communication on July 21, 2022, the '117 patent reissued as Patent No RE50,016 on June 18, 2024. As with the parent '117 patent, Patent No. RE50,016 is relevant to at least Carbyne's Apex and Universe products. To aid your consideration of Patent No. RE50,016, enclosed herein as Appendices A and B are a summary comparing independent claim 1 of Patent No. RE50,016 to Carbyne's Apex product and Carbyne's Universe product, respectively." CentralSquare denies the remainder of the allegations in Paragraph 45.

46. CentralSquare admits that the Parties exchanged letters after CentralSquare's June 2024 letter. CentralSquare admits that Carbyne sent a December 13, 2024 letter that states Carbyne's belief that "Carbyne does not infringe RE50,016" and that the patent "is invalid in view of the prior art." CentralSquare denies the remainder of the allegations in Paragraph 46.

47.    CentralSquare admits that it received a letter from Carbyne dated March 14, 2025. CentralSquare admits that the letter states that "Carbyne believes at least Central Square's Vertex NG911 Call Handling Solution infringes its video-streaming patents, including U.S. Patent No. 11,689,383." CentralSquare denies that CentralSquare's Vertex System infringes any claim of the U.S. Patent No. 11,689,383 (the "'383 Patent"). CentralSquare denies the remainder of the allegations in Paragraph 47.

48.    CentralSquare admits that it uses, sells, and offers for sale its Vertex System in the United States. CentralSquare denies that CentralSquare's Vertex System infringes any claim of the '383 Patent. CentralSquare denies the remainder of the allegations in Paragraph 48.

49.    CentralSquare admits that it owns, operates, advertises, and/or controls the website www.centralsquare.com. CentralSquare admits that it provides information about its products and services on www.centralsquare.com, including CentralSquare's Vertex System. CentralSquare denies the remainder of the allegations in Paragraph 49.

50.    CentralSquare admits the allegations in Paragraph 50.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,689,383**

51.    CentralSquare incorporates by reference each of its responses set forth in Paragraphs 1–50 above as if fully set forth herein.

52.    CentralSquare admits that the '383 Patent is titled "System, method, and computer-readable medium for streaming real-time data from a user device" and that the face of the '383 Patent reflects an issuance date of June 27, 2023. CentralSquare admits that the '383 Patent was attached to the Amended Counterclaims as Exhibit A.

53.    CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 53 and therefore denies such allegations.

54.     CentralSquare admits that the '383 Patent states "Provisional application No. 62/544,835, filed on Aug. 13, 2017." CentralSquare lacks sufficient knowledge and information to form a belief as to the truth of the allegations in Paragraph 54 and therefore denies such allegations.

55.     CentralSquare denies the allegations contained in Paragraph 55.

56.     CentralSquare denies the allegations contained in Paragraph 56.

57.     CentralSquare denies the allegations contained in Paragraph 57.

58.     CentralSquare denies the allegations contained in Paragraph 58.

59.     CentralSquare denies the allegations contained in Paragraph 59.

60.     CentralSquare denies the allegations contained in Paragraph 60.

61.     CentralSquare denies the allegations contained in Paragraph 61.

62.     CentralSquare admits that it was notified of the alleged infringement of the '383 Patent on the filing of Carbyne's counterclaims on May 12, 2025. CentralSquare denies the remainder of the allegations in Paragraph 62.

63.     CentralSquare denies the allegations contained in Paragraph 63.

64.     CentralSquare denies the allegations contained in Paragraph 64.

65.     CentralSquare denies the allegations contained in Paragraph 65.

66.     CentralSquare denies the allegations contained in Paragraph 66.

## COUNT II: DECLARATORY JUDGMENT OF NONINFRINGEMENT

67.     CentralSquare incorporates by reference each of its responses set forth in Paragraphs 1–66 above as if fully set forth herein.

68.     CentralSquare admits that this action purports to be for alleged infringement of a United States patent arising under 35 U.S.C. §§ 1 et seq. CentralSquare also admits that this action

purports to seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. CentralSquare denies the remainder of the allegations contained in Paragraph 68.

69.    CentralSquare admits for the purposes of this action that a case or controversy exists regarding whether Carbyne infringes any valid and enforceable claim of the '016 Patent. CentralSquare denies the remainder of the allegations contained in Paragraph 69.

70.    CentralSquare admits that its Complaint asserts the '016 Patent against at least Carbyne's APEX and Universe products (the "Accused Carbyne Products").  *See* Dkt. 1 at 9. CentralSquare admits that it provided charts showing how the Accused Carbyne Products infringe at least claim 1 of the '016 Patent.  *See* Dkt. 1-9; Dkt. 1-10.

71.    CentralSquare admits that it received letters from Carbyne's counsel dated January 3, 2022, February 22, 2022, and December 13, 2024, each purporting to identify claim limitations of the '016 Patent (previously, the '117 Patent) that Carbyne believes are not found in the Accused Carbyne Products.  CentralSquare denies the truth of the statements in the letters and maintains that the Accused Carbyne Products meet each and every limitation of the '016 Patent. CentralSquare denies the remainder of the allegations in Paragraph 71.

72.    CentralSquare denies the allegations contained in Paragraph 72.

73.    CentralSquare denies the allegations contained in Paragraph 73.

## COUNT III: DECLARATORY JUDGMENT OF INVALIDITY

74.    CentralSquare incorporates by reference each of its responses set forth in Paragraphs 1–73 as if fully set forth herein.

75.    CentralSquare admits for the purposes of this action that, by nature of Carbyne's Amended Counterclaim for a declaratory judgment of invalidity of the '016 Patent, a case or

controversy exists regarding the validity of the '016 Patent. CentralSquare denies that the '016 Patent is invalid.

76. CentralSquare admits that this action purports to be for alleged infringement of a United States patent arising under 35 U.S.C. §§ 1 et seq. CentralSquare also admits that this action purports to seek a declaration of invalidity under the Declaratory Judgment Act, arising under 28 U.S.C. §§ 2201 and 2202. CentralSquare denies that the '016 Patent is invalid or unenforceable.

77. CentralSquare denies the allegations contained in Paragraph 77.

78. CentralSquare admits that the specification of the '016 Patent states: "Conventionally, emergency phone calls are answered by an emergency call center, such as, e.g., a public safety answering point (PSAP). Operators at emergency call centers, also referred to as dispatchers or emergency dispatchers, may gather and/or attempt to gather information during emergency calls, including, but not limited to, the name of the caller, the nature of the emergency, the location of the emergency and/or the caller, and/or other emergency information." '016 Patent at 1:27–36. CentralSquare denies any characterizations of the '016 Patent in Paragraph 78 and denies the remainder of the allegations of Paragraph 78.

79. CentralSquare denies the allegations of Paragraph 79.

80. CentralSquare denies the allegations contained in Paragraph 80.

## PRAYER FOR RELIEF

CentralSquare denies that Defendants are entitled to any relief, including that requested in its "Prayer for Relief," and denies all allegations contained in Carbyne's Prayer for Relief.

## DEMAND FOR JURY TRIAL

This paragraph makes a jury demand and thus requires no response.

## AFFIRMATIVE AND OTHER DEFENSES

13

Subject to the responses above, CentralSquare alleges and asserts the following defenses in response to Carbyne's Amended Counterclaims, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the Affirmative Defenses described below, and subject to the responses above, CentralSquare specifically reserves all rights to allege additional defenses that become known through the course of discovery or otherwise.

Without any admission that CentralSquare bears the burden of proof, burden of persuasion, or the truth of any allegation in the Amended Counterclaims, CentralSquare relies on the following defenses, whether pled as an affirmative defense or otherwise, in response to the allegations, which are based on an investigation that is not complete.

## FIRST DEFENSE

### (FAILURE TO STATE A CLAIM)

Carbyne's Amended Counterclaims fail to state a claim upon which relief can be granted as Carbyne has failed to plead its Counterclaims with sufficient specificity or support to place CentralSquare on notice of Carbyne's theories of alleged infringement with respect to the '383 Patent.

## SECOND DEFENSE

### (NON-INFRINGEMENT)

CentralSquare does not infringe and has not infringed, at any time, either literally or under the doctrine of equivalents, either directly, contributorily, or by inducement, any valid and enforceable claim of the '383 Patent.

14

## THIRD DEFENSE

## (INVALIDITY)

The asserted claims of the '383 Patent are invalid because they do not meet the conditions of patentability and/or comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112 or judicially created doctrines of invalidity.

## FOURTH DEFENSE

## (NO EQUITABLE RELIEF)

Carbyne's Amended Counterclaims, including with regard to injunctive relief, are barred, in whole or in part, under the principles of equity.  Further, the requirements for injunctive relief, including irreparable harm, are not and cannot be satisfied here.

## FIFTH DEFENSE

## (NO ENTITLEMENT TO ENHANCED DAMAGES OR ATTORNEYS' FEES)

Carbyne is not entitled to enhanced or increased damages or attorneys' fees. CentralSquare, as noted in its Complaint, moves for attorneys' fees under 35 U.S.C. § 285.

## SIXTH DEFENSE

## (NO WILLFUL INFRINGEMENT)

Carbyne's Amended Counterclaims fail to state a claim for relief against CentralSquare for willful infringement, and the requirements for willful infringement cannot be satisfied.

## SEVENTH DEFENSE

## (NO STANDING)

Carbyne's Amended Counterclaims for relief are barred to the extent Carbyne does not hold all rights or substantially all rights in the '383 Patent or to the extent Carbyne lacks standing to assert infringement claims.

**EIGHTH DEFENSE**

**(EXPRESS OR IMPLIED LICENSE AND/OR PATENT EXHAUSTION)**

Carbyne's Amended Counterclaims for relief are barred, in whole or in part, to the extent any of the claims of the '383 Patent are subject to a license and/or a covenant not to sue, express and/or implied, and/or subject to patent exhaustion. To the extent that Carbyne, its predecessors-in-interest, or any entity in the chain of title of the '383 Patent authorized, licensed, or otherwise permitted—through affirmative grant, conduct, course of dealing, acquiescence, or failure to object—the use, sale, offer for sale, or importation of articles, components, or services that embody or practice the inventions claimed in the '383 Patent, CentralSquare's use of such articles, components, or services is licensed and Carbyne's Counterclaims are barred accordingly.

**NINTH DEFENSE**

**(PROSECUTION BAR)**

Carbyne is estopped from construing any valid and enforceable claim of the '383 Patent to cover or include, either literally or by application of the doctrine of equivalents, devices manufactured, used, imported, sold, offered for sale, or imported by CentralSquare, or methods used by CentralSquare, because of admissions and statements to the United States Patent and Trademark Office during prosecution of the applications leading to the issuance of the '383 Patent or applications related thereto, because of disclosures or language in the specifications of the '383 Patent, and/or limitations in the claims of the '383 Patent.

**TENTH DEFENSE**

**(STATUTORY DAMAGES LIMITATIONS)**

Carbyne's claims for damages for alleged patent infringement, if any, are limited by 35 U.S.C. §§ 286, 287, and 288.

## ELEVENTH DEFENSE

### (EQUITABLE DEFENSES)

Carbyne's claims are barred, in whole or in part, by the doctrines of acquiescence, waiver, laches, estoppel, and/or unclean hands.

## ADDITIONAL DEFENSES

CentralSquare reserves the right to assert and rely on any additional defenses that may become known or available to CentralSquare during the course of litigation, including through discovery.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CentralSquare demands a trial by jury on all issues triable of right by a jury.  *See* Dkt. 1 at 11.

## REQUEST FOR RELIEF

CentralSquare respectfully requests that the Court enter judgment in its favor and against Carbyne as follows:

A.  Dismissing, with prejudice, Carbyne's claims against CentralSquare;

B.  Denying all relief that Carbyne seeks in the Amended Counterclaims;

C.  Finding this case to be exceptional under 35 U.S.C. § 285 and awarding CentralSquare its costs and attorneys' fees; and

D.  Awarding any other relief the Court deems just and equitable.

Dated: April 28, 2026

Respectfully submitted,

/s/ Kat Li
Kat Li
Texas State Bar No. 24070142
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100

Adam R. Alper (*pro hac vice*)
adam.alper@kirkland.com
Nate Ngerebara (*pro hac vice*)
nate.ngerebara@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Michael W. De Vries (*pro hac vice*)
michael.devries@kirkland.com
Leslie Diaz (*pro hac vice*)
leslie.diaz@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone: (714) 982-8822

Gianni Cutri (*pro hac vice*)
gcutri@kirkland.com
Dan Sinclair (*pro hac vice*)
dan.sinclair@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000

Lionel M. Lavenue (VA 49,005)
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Phone: (571) 203-2700

18

*Attorneys for Plaintiff and Counterclaim-*
*Defendant CentralSquare Technologies,*
*LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically in compliance with

Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to

have consented to electronic service on April 28, 2026.

*/s/ Kat Li*
Kat Li

19