**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **CENTRALSQUARE TECHNOLOGIES, LLC,** | Civil Action No. 1:24-cv-01497 |
| *Plaintiff and Counterclaim-Defendant,* | **JURY TRIAL DEMANDED** |
| v. | |
| **CARBYNE, INC., and CARBYNE LTD.** | |
| *Defendants and Counterclaim-Plaintiffs.* | |

**CARBYNE'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS FOR INVALIDITY UNDER 35 U.S.C. § 101**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 1

III.    LEGAL STANDARD ......................................................................................... 2

IV.     ARGUMENT ...................................................................................................... 4

        A.      *Alice* Step One: Claim 1 Is Directed to Communicating with Emergency
                Callers. .................................................................................................... 4

        B.      *Alice* Step Two: Claim 1 Lacks an Inventive Concept. ....................... 12

                1.      The claimed components and their ordered combination are
                        conventional. .............................................................................. 12

                2.      CST has disclaimed any inventive structure. ............................. 14

                3.      Neither speed and efficiency nor novelty over the prior art supplies
                        an inventive concept. ................................................................. 17

        C.      The Remaining Claims Do Not Alter this Analysis. ............................. 18

V.      CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
890 F.3d 1354 (Fed. Cir. 2018)......................................................................................12

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016).......................................................................................10

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016).........................................................................................3

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) .......................................................................................17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)................................................................................................ *passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)..........................................................................................3

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)........................................................................................15

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)........................................................................................13

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)...................................................................................12, 20

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
955 F.3d 971 (Fed. Cir. 2020)...................................................................................7, 8, 9

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)..............................................................................3, 13, 18

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)........................................................................................11

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)........................................................................................17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)..........................................................................4, 7, 19, 20

ii

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017)....................................................................................7, 9, 20

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020).........................................................................................10, 17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).......................................................................................11

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ........................................................................................3, 4

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................................ *passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)................................................................................ *passim*

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ......................................................................................4

*Impact Engine, Inc. v. Google LLC*,
    No. 22-2291, 2024 WL 3287126 (Fed. Cir. July 3, 2024).................................................11, 16

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)................................................................................3, 16, 17, 20

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016).......................................................................................3, 17

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed. Cir. 2017).......................................................................................9, 12

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018).......................................................................................10

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ......................................................................................13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).......................................................................................3

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015).......................................................................................17

*Recentive Analytics, Inc. v. Fox Corp.*,
    134 F.4th 1205 (Fed. Cir. 2025), cert. denied, 146 S.Ct. 891 (2025) ..............................11, 17

*SAP America, Inc. v. InvestPic, LLC,*
 898 F.3d 1161 (Fed. Cir. 2018)....................................................................................4, 12, 18

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.,*
 873 F.3d 1364 (Fed. Cir. 2017).............................................................................................12

*Solutran, Inc. v. Elavon, Inc.,*
 931 F.3d 1161 (Fed. Cir. 2019)......................................................................................14, 20

*In re TLI Commc'ns LLC Patent Litig.,*
 823 F.3d 607 (Fed. Cir. 2016)..............................................................................10, 11, 12, 16

*Trading Techs. Int'l, Inc. v. IBG LLC,*
 921 F.3d 1084 (Fed. Cir. 2019)........................................................................................9, 20

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
 874 F.3d 1329 (Fed. Cir. 2017).......................................................................................12, 18

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants and Counterclaim-Plaintiffs Carbyne, Inc. and Carbyne Ltd. ("Carbyne"), respectfully move this Court for an order and judgment finding that the claims of United States Reissue Patent No. RE50,016 (the "'016 Patent") are invalid under 35 U.S.C. § 101.

## I.    INTRODUCTION

Patent law protects only concrete and tangible inventions. It does not protect abstract ideas, even when they are claimed in a particular context or in connection with conventional technology. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014). The '016 Patent violates this principle, as it is directed to the abstract idea of communicating with emergency callers—a routine practice that human emergency dispatchers have performed for decades. To this abstract idea the claims add only generic, conventional, and conventionally arranged components. Likewise, the patent's specification discloses nothing more than conventional servers, client devices, networks, text messages, URL addresses, and the standard use of GPS information. Indeed, in claim construction, CentralSquare's ("CST") expert testified that the claimed modules perform "well known and routine functions that are employed every day in telecommunications systems and documented by published industry standards." Dkt. 31-2, ¶ 52. In sum, the claims run afoul of both steps of the *Alice* analysis and are invalid under 35 U.S.C. § 101.

## II.    FACTUAL BACKGROUND

On December 4, 2024, Plaintiff CentralSquare Technologies, LLC ("CST") filed a Complaint for infringement of the '016 Patent. Dkt. 1. The '016 Patent, "SMS Communication During Emergencies," is directed to a system that allows operators at emergency call centers to send text messages to the mobile devices from which they receive calls. The patent explains that "[c]onventionally, emergency phone calls are answered by an emergency call center." '016 Patent at 1:28-30. A call center operator "may… attempt to gather information" from the caller verbally,

1

such as "the name of the caller," "nature of the emergency," and "the location of the emergency." *Id.*, 1:30-36. In contrast, the '016 Patent "provid[es], to emergency operators, communication through textual messages with callers using wireless mobile devices." *Id.*, 1:23-25. Such communication may occur via "emergency communication networks, wired telephone networks, wireless telephone networks, cellular networks, the internet, and/or one or more other … networks." *Id.*, 1:62-67; *see also id.*, 2:1-36. Client devices send and receive "textual messages" like SMS or MMS messages, "access[] Internet addresses" or "URL addresses," and "obtain[] … global positioning system (GPS) information." *Id.*, 2:17-24, 3:18-37. The claims of the '016 Patent recite computer program modules configured to perform the claimed functions of the system.

In its April 22, 2026 claim construction order, the Court adopted CST's proposed construction of the "module" terms: their plain and ordinary meaning. Dkt. 73. With claim construction complete and no construction dispute bearing on eligibility unresolved, the § 101 question is ripe for decision on the pleadings.

## III.    LEGAL STANDARD

Under § 101 of the Patent Act, patent protection extends to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has long held that § 101 contains an "important implicit exception" for "[l]aws of nature, natural phenomena, and abstract ideas," which are ineligible for patent protection. *Alice*, 573 U.S. at 216. The Supreme Court has set forth a two-part test for determining whether a patent recites ineligible subject matter.

The first step of the *Alice* inquiry asks whether the claims are "directed to" an abstract idea. *Id.* at 218. Courts "look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (cleaned up). Claims are directed to abstract

ideas when their focus is on a longstanding commercial practice or method of organizing human activity. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016). While claims may not be abstract when they "focus on a specific means or method that improves the relevant technology," *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016), the alleged improvements must be to the *technology itself*, and cannot simply invoke "benefits that flow from performing an abstract idea in conjunction with a well-known" technology. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018). If a claim is directed to an abstract idea, step two asks whether the claim elements, considered "both individually and as an ordered combination," recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18 (cleaned up). For the purposes of the step two analysis, "[i]nstructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible." *Intell. Ventures I LLC v. Cap. One Bank (USA),* 792 F.3d 1363, 1368 (Fed. Cir. 2015).

The *Alice* framework prevents overly broad patent claims from "preempting" (and thus inhibiting) future innovation. *Alice*, 573 U.S. at 216-17. While claims that completely preempt an abstract idea are invalid, "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be

3

rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The question of whether a claim recites patent-eligible subject matter under § 101 is a question of law, and a district court may resolve patent eligibility on a motion for judgment on the pleadings. *See SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018).[1]

## IV.    ARGUMENT

### A.  *Alice* Step One: Claim 1 Is Directed to Communicating with Emergency Callers.

The '016 Patent describes systems and methods for enabling text-message based communication between emergency operators and callers using mobile devices. CST identified independent Claim 1 in its Complaint. Dkt. 1-9, 1-10. Claim 1 is a system claim and Claim 9, the other independent claim, claims the corresponding method. *See* '016 Patent at 16:19-24. Claim 1 is representative. *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) (the eligibility of related claims with similar meaningful limitations will generally rise and fall together, even if one recites a method and the other recites a system); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that a trial court need not expressly address each asserted claim where all claims are "substantially similar and linked to the same abstract idea.").

---

[1] Claim construction is no obstacle to resolving patent eligibility here, as the Court has construed the disputed claims. The Court adopted CST's proposed plain-and-ordinary-meaning construction for the disputed "module" terms. *See* Dkt. 73. CST secured that construction by explaining—through its expert, Mr. Lipoff—that a person of ordinary skill in the art ("POSITA") "would not require further elaboration on the meaning, function, structure, or operation" of any claimed module because the terms "are well-understood in the field of telecommunications, and routinely used to perform the claimed functions at every telecommunications company." Dkt. 31-2, ¶ 46. Mr. Lipoff's declaration is: (1) part of the Court's own record in this case; (2) CST's own party admission; and (3) support for the construction that is now law of the case following the Court's adoption of CST's position, *see* Dkt. No. 73. Mr. Lipoff's testimony is subject to judicial notice. *See* Fed. R. Evid. 201(b).

The '016 Patent system disclosed in the specification comprises one or more servers executing five software modules: a call reception module, an outgoing message module, a transmission module, a presentation module, and a web-hosting module. '016 Patent at 2:40-46. Each module is described in functional, results-oriented terms. The server communicates with conventional emergency calling devices (cellphones, smartphones, and other portable devices) over standard networks, including emergency communications networks, cellular networks, and the Internet. *Id*. at 1:62-67, 2:17-24. Claim 1 recites:

1.  A system configured to provide, to emergency operators, communication through textual messages, the system comprising:

    one or more processors configured to execute computer program modules, the computer program modules comprising:

    a call reception module configured to receive incoming emergency voice calls being placed to an emergency call center through an emergency communications network from wireless mobile devices, the incoming emergency voice calls including a first voice call placed from a first wireless mobile device;

    an outgoing message module configured to generate outgoing textual messages for transmission to wireless mobile devices from which incoming emergency voice calls are received such that a first outgoing textual message is generated for transmission to the first wireless mobile device based on the first voice call;

    a transmission module configured to transmit the outgoing textual messages to the [appropriate][2] wireless mobile devices through a second communications network that is different than the emergency communications network such that the first outgoing textual message is transmitted to the first wireless mobile device through the second communications network;

    a presentation module configured to present incoming emergency voice calls to emergency operators through a user interface, wherein the user interface includes a set of user-selectable options, and wherein the presentation module is further configured to receive user input from emergency operators to select one or more of the set of user-selectable options; and a web-hosting module configured to host web resources configured to:

    (i) query wireless mobile devices for location information; and

    (ii) share, responsive to receipt of location information, received location information with the presentation module;

---

[2] The bracketed term "appropriate" was removed during reissue.

wherein the first outgoing textual message includes a uniform resource locator (URL) link to the web resources; and

wherein the presentation module is further configured to present shared queried location information to emergency operators through the user interface.

*Id*. at 15:10-57.

Claim 1 is directed to five functional steps: (1) receiving an incoming emergency voice call from a mobile phone; (2) generating a text message for transmission to the caller's device; (3) transmitting that message through a standard communications network; (4) querying mobile devices for location via those web resources; and (5) presenting incoming data and communications to emergency operators using a user interface. *Id*. The claim recites goals—receive, generate, transmit, query, present—without disclosing any new algorithm for processing emergency calls, novel protocol for coordinating between networks, particular synchronization mechanism for linking a call to a subsequent text message, or any network-layer technique that would improve computer or telecommunications functionality. The modules are implemented on generic hardware: "one or more processors"—*i.e.*, general-purpose computers. *Id*. at 15:13-14. Likewise, the specification discloses no new or improved technology, instead detailing conventional servers, client devices, networks, standard SMS and MMS protocols, and routine GPS and geolocation application programming interface ("API") functions that "may be natively supported within the wireless mobile device." *Id*. at 2:17-28, 2:40-45, 5:34-45, 9:64-10:3. In this way, it describes the simple automation of standard human dispatcher practices: a dispatcher making "a request to the caller to provide information… that the emergency operator expects to be helpful… [such as] the current geolocation of the caller and/or the emergency," using conventional computer technology. *Id*. at 6:39-45.

6

This claim is "directed to" an abstract idea under the first step of *Alice*. It represents an attempt to automate the routine practice, regularly performed by humans without computer technology, of communicating with emergency callers. Indeed, the specification acknowledges that "[c]onventionally, emergency phone calls are answered by an emergency call center" and an operator "may … attempt to gather information" from the caller verbally, such as "the name of the caller," "nature of the emergency," and "the location of the emergency." *Id.*, 1:28-36. The claim simply automates this *admitted* convention. Such claims are abstract. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (the "automation of manual processes using generic computers does not constitute a patentable improvement in computer technology" and is abstract); *Content Extraction*, 776 F.3d at 1347 (finding an abstract idea where "humans have always performed" the claimed functions); *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 979 (Fed. Cir. 2020) (finding abstract idea where "humans have always performed" the steps of claims directed to "a long-standing commercial practice").

Indeed, the '016 Patent claims are like those found ineligible in *Alice* itself. There, the Supreme Court considered a patent related to "a computerized scheme for mitigating settlement risk" that involved the use of "a computer system as a third-party intermediary." *Alice*, 573 U.S. at 213 (cleaned up). The claims involved the computer intermediary's creation of "shadow" credit and debit records (i.e., account ledgers) that mirrored the balances in parties' real-world accounts at "exchange institutions" (i.e., banks) and "update[d]" the accounts when transactions were entered. *Id.* Such claims were directed to the abstract concept of using a third party to mitigate settlement risk—a "practice long prevalent"—and amounted to nothing more than "recordkeeping" performed by a "generic computer." *Id.* at 225, 219. Just as the claims in *Alice* used generic computers to automate financial recordkeeping, the '016 Patent claims rely on generic

computer technology to automate a longstanding practice of emergency operators by substituting a "call reception module" for a human answering a phone, an "outgoing message module" for a dispatcher verbally relaying instructions, and a "web-hosting module" for a dispatcher asking for somebody's location. In both cases, the idea amounts to an unpatentable process that could be, and long has been, performed by humans. *See* '016 Patent at 1:28-36; 2:40-46.

The Federal Circuit consistently finds claims directed to systems for gathering and presenting information to be abstract. For example, in *Electric Power Group, LLC v. Alstom S.A.*, claims directed to "systems and methods for performing real-time performance monitoring of an electric power grid" called for receiving data or data streams from various sources, detecting and analyzing events from the data, displaying the results of that analysis, updating the results in real time, and deriving a reliability indicator based on various metrics. 830 F.3d 1350, 1351-52 (Fed. Cir. 2016). The court found the claims were directed to a "familiar class" of patent-ineligible concepts: "the combination of th[e] abstract-idea processes … of gathering and analyzing information of a specified content, then displaying the results." *Id*. at 1353-54. The court held that claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis" were abstract. *Id*. at 1353. The claims here follow the same pattern: the system collects information by receiving an incoming voice call, processes that information by generating a text message and querying for location data, and displays the results by presenting the queried location information to operators through a user interface. '016 Patent, Claim 1 (15:9-57). As in *Electric Power Group*, the claims here are directed to an abstract process "of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." 830 F.3d at 1354.

Similarly, in *Bozeman*, the Federal Circuit invalidated analogous claims directed to

"receiving data from two financial records, storing that data, comparing that data, and displaying the results." 955 F.3d at 978. Explaining that the claims merely involved "obtain[ing] information from financial databases and present[ing] results," the court held that "[v]erifying financial documents to reduce transactional fraud [was] a fundamental business practice" not "eligible for patent protection." *Id*. at 978-79. As in *Bozeman*, the claims here involve "obtaining information" from wireless mobile devices and "presenting" that information to emergency operators. *Id.; see* '016 Patent, Claim 1 (15:45-57) (describing the "web-hosting module" configured to "query wireless mobile devices for location information" and "share… received location information with the presentation module."). Similarly, in *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the Federal Circuit considered claims directed to "creating an index and using that index to search for and retrieve data." 850 F.3d 1315, 1327 (Fed. Cir. 2017). Noting that "[t]his type of activity, i.e., organizing and accessing records through the creation of an index-searchable database, includes longstanding conduct that existed well before the advent of computers and the Internet," the court found the claim ineligible. *Id*. Here, the claim's web-hosting and presentation modules are like the retrieve-and-access function *Erie* held abstract: the web-hosting module queries mobile devices for location and retrieves the result, and the presentation module then makes that result accessible to emergency operators through a user interface. That is the "organizing and accessing records" the Federal Circuit found ineligible in *Erie* as "longstanding conduct that existed well before the advent of computers and the Internet." *Id.* at 1327. '016 Patent, Claim 1 (15:45-57); *see also Westlake Servs.*, 859 F.3d at 1054; *FairWarning*, 839 F.3d at 1093. In short, claims to systems that gather and present information, like those here, are "directed to" an abstract idea.

Additionally, the asserted claims "do not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Trading Techs. Int'l, Inc. v. IBG*

9

*LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (noting that "a relevant inquiry at step one is to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea") (cleaned up); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[I]t is not enough … to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool."). The specification says nothing about "how to engineer or program" the claimed modules and recites only results-based functional aspirations.[3] *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018); *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269-70 (Fed. Cir. 2016) ("The purely functional nature of the claim confirms that it is directed to an abstract idea …"). Claims that recite methods in "purely functional terms" without "any technical details for the tangible components" are abstract. *In re TLI*, 823 F.3d at 612; *see also Elec. Power Grp.*, 830 F.3d at 1356 ("essentially result-focused, functional character of claim language has been a frequent feature of" ineligible claims).

Nor do Claim 1's two technological-sounding limitations—its "URL link" and "second communications network"— supply the technical specificity the rest of the claim lacks. These are simply how the claim carries out the abstract idea of gathering a caller's location; neither reflects a specific technological arrangement tailored to solve a particular technical problem. *See In re TLI*, 823 F.3d at 613. A URL, or "Uniform Resource Locator," is simply an address for an item, no different from a mailing address or a library call number. The second communications network merely invokes existing technology without any unconventional sequencing, logic, or protocol

---

[3] Indeed, CST's expert has opined that engineering the claimed modules would be trivial and require no "further elaboration on the meaning, function, structure, or operation of such modules," as the functions practiced by the modules "are practiced by every telecommunication company— and every mobile phone." Dkt. No. 31-2, ¶ 47.

improvements. For example, the patent does not disclose any new mechanism for coordinating between two networks, any novel protocol for switching between voice and data channels, or any new technique for querying location. It simply uses fundamental telecommunications and Internet technology—a cellular data network for SMS and a standard URL accessing a device's native GPS API—exactly as those technologies were designed to operate. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (sending information over a network is "not even arguably inventive."). And using a separate data channel to send a text while a voice call is ongoing or sending a URL in an SMS that opens a browser and accesses a geolocation API merely describes the way cellular networks and the mobile web function generally. These technical terms, "each associated with high-level, broadly articulated, result-defined" functionality, merely constitute "an unordered list of generically named elements" that do not render Claim 1 of the '016 Patent non-abstract at Step One. *Impact Engine, Inc. v. Google LLC*, No. 22-2291, 2024 WL 3287126, at *6 (Fed. Cir. July 3, 2024); *In re TLI*, 823 F.3d at 613.

Similarly, *DDR Holdings, LLC v. Hotels.com, L.P.* cannot save the '016 Patent. 773 F.3d 1245 (Fed. Cir. 2014). There, the eligible claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks": retaining visitors who clicked a third-party-ad link. *Id*. at 1257. Here, by contrast, gathering a caller's location is the dispatcher's age-old task, just done faster. *See* '016 Patent at 1:28-36.

Finally, if CST points to the claims' allegedly specialized setting of emergency dispatch, this does not help them. "[A]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213-14 (Fed. Cir. 2025), *cert. denied*, 146 S.Ct. 891 (2025); *see also In re TLI*, 823 F.3d at 613. Likewise, "[a]s many cases make clear, even if a process of collecting and

analyzing information is limited to particular content or a particular source, that limitation does not make the collection and analysis other than abstract." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (cleaned up); *see also Elec. Power Grp.,* 830 F.3d at 1353.

In sum, the '016 Patent invokes basic computer equipment that is "merely a conduit for the abstract idea." *In re TLI*, 823 F.3d at 612-13; *see also Elec. Power Grp.,* 830 F.3d at 1353. "Claims with such character do not escape the abstract idea exception under *Alice* step one." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1373 (Fed. Cir. 2017).

### B. *Alice* Step Two: Claim 1 Lacks an Inventive Concept.

#### 1. The claimed components and their ordered combination are conventional.

Because the '016 Patent is directed to an abstract idea, the next step under *Alice* asks whether the claims contain an "inventive concept" sufficient to "transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. There is no such inventive concept here, because apart from the abstract idea to which they are directed, the claims contain nothing "more than well-understood, routine, conventional activity." *Erie*, 850 F.3d at 1328 (cleaned up); *see also Alice*, 573 U.S. at 223. Whether a claim element is inventive is a question of fact, but "[i]n a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it [is] difficult, if not impossible, for a patentee to show a genuine dispute." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

There is no inventive concept where, as here, "[t]he claim uses a conventional ordering of steps… with conventional technology to achieve its desired result." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). First, the technology at issue in the claims is conventional: the "system" is implemented on "one or more" generic "processors configured to execute computer program modules." '016 Patent at 15:13-14. The

modules are described functionally, and the specification discloses no algorithm or technical protocol. Likewise, the system is hosted on conventional "server(s)" that communicate with conventional "client devices"—defined broadly to include "cellphones, smartphones, portable and/or handheld computing and/or communication devices, and/or other devices"—over standard, pre-existing (and, in the specification, invoked but unexplained) "networks," including "emergency communications networks, wired telephone networks, wireless telephone networks, cellular networks, the internet, and/or one or more other (communications) networks." *Id*. at 1:64-2:39. The specification further says that geolocation "may be natively supported within the wireless mobile device," and that text messages may be standard "short message service (SMS)" or "multimedia messaging service (MMS)" messages—protocols that were ubiquitous well before the patent's August 2013 priority date. *Id*. at 9:61-10:3; 2:25-28. And there is nothing arguably unconventional about the claimed order here: a program is executed on a computer to receive a call, generate a text message, transmit the message, query for location information, and present that information. This yields the expected result, with no disclosed unconventional arrangement.

The Federal Circuit has repeatedly found that similar claims lack an inventive concept. *See, e.g., In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022) (claim steps that "do no more than instruct the practitioner to perform the abstract steps of gathering information," analyzing that information, "and displaying the results of that analysis" are directed to an abstract idea); *BSG Tech*, 899 F.3d at 1290-91 (where the only alleged inventive concept is the abstract idea itself implemented with conventional components, there is no inventive combination). The claims are thus unlike those at issue in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, which found inventiveness in the unconventional placement of a filtering tool. *See* 827 F.3d 1341, 1350 (Fed. Cir. 2016). By contrast, the order here is exactly the sequence a human dispatcher already follows.

13

### 2. CST has disclaimed any inventive structure.

Moreover, CST's *own expert* repeatedly and unequivocally confirmed to this Court that every software module recited in the claims performs a conventional, well-known function. In fact, Mr. Lipoff explains that the modules are so conventional as to "not require further elaboration" as to "meaning, function, structure, or operation": the call reception module "performs the well-known and standard function of receiving a phone call"; the outgoing message module "perform[s] the well-known and standard function of generating a text message"; the transmission module "perform[s] the well-known function of sending an outgoing message"; the presentation module "perform[s] the well-known function of presenting information to the user on an interface", and the web-hosting module "perform[s] the function of hosting a web-site." Dkt. No. 31-2, ¶¶ 47, 49. Mr. Lipoff even states that each claimed module performs a function practiced by "*every telecommunications company*" "*every day.*" *Id.*, ¶¶ 46, 52 (emphasis added). In this way, CST itself has acknowledged the undisputed fact that there is nothing inventive about the claimed computer program modules.[4] And as the Federal Circuit has consistently held, "[m]erely using a general-purpose computer… to perform conventional activities in the way [it] always ha[s], as the claims do here, does not amount to an inventive concept." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019).

CST cannot avoid this conclusion by recasting the claimed "modules" as specific inventive structure. Twice now—once before the Patent Office and again in this Court—CST affirmatively disclaimed that the module terms are means-plus-function limitations. First, during reissue prosecution, the Examiner rejected the claims, interpreting each "module" term under 35 U.S.C.

---

[4] Further, CST relied on these factual representations by Mr. Lipoff to secure its proposed claim construction: that the "module" term be given its plain and ordinary meaning.

14

§ 112(f). Declaration of Evan Brewer ("Brewer Decl."), Ex. A (Non-Final Rejection, 1/24/24). CST resisted that interpretation and prevailed, arguing that the absence of "means" created a presumption against § 112(f), and that the module terms "convey definite structure to the ordinary skilled artisan"—identifying as that "structure" no more than "computer program modules that are executed by processors." Brewer Decl., Ex. B (Patentee Remarks, 3/19/24, at 26-27). The Examiner then allowed the claims. Brewer Decl., Ex. C (Notice of Allowance, 4/22/24), at 3. Second, CST repeated this argument in claim construction—contending that the module terms are not means-plus-function terms but instead carry their plain and ordinary meaning. Again, it prevailed. Dkt. 73. As noted, CST specifically relied on its expert's testimony that a POSITA "would not require further elaboration on the meaning, function, structure, or operation" of any module because the terms are "well-understood" and "routinely used to perform the claimed functions at every telecommunications company." Dkt. 31-2, ¶ 46. CST's rationale was the same both times: the modules are ordinary, definite terms whose only "structure" is generic software running on generic processors. Carbyne does not relitigate the Examiner's conclusion or the Court's claim construction ruling here; rather, we show that under the construction the Court adopted (*CST's*), the claims are abstract and lack any inventive concept.[5]

Having twice disclaimed means-plus-function treatment, CST cannot now say that the modules are limited to, or embody, any particular algorithm or structure to manufacture an inventive concept. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) (prosecution statements made to secure allowance bind the patentee). Under the Court's

---

[5] Carbyne's claim construction position that the terms are means-plus-function and indefinite is not inconsistent with this motion. Either way the claims are invalid: under the Court's plain-meaning construction they are abstract; under Carbyne's construction they would be indefinite. Carbyne preserves the latter and, for this motion, applies the former.

construction of these claims (a construction that CST itself proposed, and won), the modules recite functions performed however a practitioner sees fit, and the only "structure" CST has ever identified is generic software running on a general-purpose processor. Brewer Decl., Ex. B (Patentee remarks, 3/19/24, at 16-26); Dkt. 31-2, ¶¶ 47-48. In fact, CST's expert opined that a POSITA would understand the claimed modules "even without referring to the specification for further guidance." Dkt. 31-2, ¶ 48. That is abstraction, not an inventive concept. *See In re TLI*, 823 F.3d at 612 (generic computer that serves as "merely a conduit for the abstract idea" supplies no inventive concept); *FairWarning IP*, 839 F.3d at 1097 (the "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible."). Unlike the means-plus-function claims held eligible in *Impact Engine*, 2024 WL 3287126, at *7, which survived only because they were construed under § 112(f) and thus limited to specific disclosed structure, the '016 Patent's modules carry no such structural limitation—by CST's own design and in its own words. CST's prosecution position and its expert's testimony are the *same admission*, made twice: there is nothing structurally or technologically inventive about the claimed modules.[6]

In sum, the '016 Patent's invocation of "generic computer elements" does not change the fact that the claims are directed to nothing more than the routine practice of communicating with and gathering information (*e.g.*, location) from emergency callers. *Cap. One Bank,* 792 F.3d at 1368.

---

[6] These arguments all apply equally to the claims of the '016 Patent that do not have the "module" plus function structure, such as the method Claim 9. Claim 9 recites the identical functions (receiving emergency voice calls, generating and transmitting textual messages, querying for location, and presenting information) as method steps performed by "one or more processors," rather than as modules. Those steps are the same conventional functions CST's expert described as routine, and they are no less abstract or generic for being framed as a method. Method and system claims reciting the same underlying functions rise and fall together under § 101. *See FairWarning*, 839 F.3d at 1096. Claim 9 therefore fails for the same reasons as Claim 1, independent of the "module" terminology.

### 3. Neither speed and efficiency nor novelty over the prior art supplies an inventive concept.

CST's characterization of the claimed invention as "enhance[ing] efficiency and accuracy" and "ensur[ing] faster, more effective responses" does not provide an inventive concept that can confer patent eligibility. Dkt. 1 ¶ 5.[7] As the Federal Circuit recently reiterated:

> Claims "are not rendered patent eligible by the fact that (using existing… technology) they perform a task previously undertaken by humans with greater speed and efficiency than could previously be achieved. We have consistently held, in the context of computer-assisted methods, that such claims are not made patent eligible under § 101 simply because they speed up human activity. Whether the issue is raised at step one or step two, the increased speed and efficiency resulting from use of computers (with no improved computer techniques) do not themselves create eligibility."

*Recentive*, 134 F.4th at 1214 (citations omitted); *see also Symantec Corp.*, 838 F.3d at 1315 ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept") (cleaned up); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible"); *Cap. One Bank,* 792 F.3d at 1370; *Customedia Techs.,* 951 F.3d at 1365.

Nor does the patent's allowance over the prior art supply an inventive concept. The Examiner allowed these claims because the cited references did not disclose, in combination, that "the first outgoing textual message includes a uniform resource locator (URL) link to the web resources" and the "querying … wireless mobile devices for location information [and] sharing … received location information with the presentation module." Brewer Decl., Ex. C (Notice of

---

[7] Because CST's complaint alleges the inventiveness of the '016 Patent only in providing "efficiency" and "faster, more effective responses," Dkt. 1, ¶ 5, and, as explained below, CST's own expert affirmatively testified that the claimed "modules" are conventional, Dkt. 31-2, ¶¶ 47-52, *Cellspin Soft, Inc. v. Fitbit, Inc.* is not analogous here and CST may not rely on pleading-stage allegations to defer the ineligibility determination on this patent. 927 F.3d 1306, 1320 (Fed. Cir. 2019); *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024).

Allowance, 4/22/24), at 4. But that is a statement about *novelty* under §§ 102 and 103, not about *eligibility* under § 101, and "eligibility and novelty are separate inquiries." *Two-Way*, 874 F.3d at 1340. "[A] claim for a new abstract idea is still an abstract idea," and an advance in an abstract idea is ineligible "no matter how groundbreaking the advance." *SAP*, 898 F.3d at 1163, 1170. Where, as here, the only purportedly novel feature is itself part of the abstract idea, it cannot also serve as the inventive concept that renders the idea patent-eligible. *BSG Tech*, 899 F.3d at 1290.

This is exactly the case here. CST secured allowance on the idea of texting a caller a link and asking the caller's device for its location. This is the abstract idea itself: gathering a caller's location is and always has been the very point of a dispatcher, to "dispatch" help to the caller. *See* '016 Patent at 6:39-45. And the components used to perform it—a URL, web resources, an SMS message, and a query to the device's native GPS—are admittedly conventional. Dkt. 31-2, ¶¶ 50-52; '016 Patent at 2:17-28, 9:61-10:3. Notably, the Examiner identified ***no*** improvement to computer or network functionality. Rather, the Examiner merely concluded that the particular combination was absent from the cited art. Brewer Decl, Ex. C (Notice of Allowance, 4/22/24, at 4) ("The prior art of record fail [sic] to anticipate or render obvious the limitation as cited in combination with other features in claims 1 and 9"). This confirms that the only thing distinguishing the asserted claims is the claimed abstract communication practice, not any technical advance. *See Elec. Power Grp.*, 830 F.3d at 1354 (claims abstract where directed to gathering and displaying information "and not any particular assertedly inventive technology for performing those functions").

### C. The Remaining Claims Do Not Alter this Analysis.

None of the remaining claims alter the eligibility analysis and are thus similarly ineligible. The '016 Patent recites 27 claims, two of which are independent—Claims 1 and 9. Claim 9 mirrors Claim 1, reciting a "computer-implemented method for providing, to emergency operators,

18

communication through textual messages, the method being performed by one or more processors [configured to execute computer program modules], the method comprising" the same generic computer modules claimed in Claim 1: "receiving incoming emergency voice calls," "generating outgoing textual messages," "transmitting the outgoing textual messages," "presenting incoming emergency voice calls," "receiving user input," "sharing… received location information," and "presenting shared queried location information to emergency operators." '016 Patent at 16:19-53. In this way, the two independent claims are "substantially similar in that they recite little more than the same abstract idea" of collecting information from emergency callers and sending them instructions. *Content Extraction*, 776 F.3d at 1348; *FairWarning IP*, 839 F.3d at 1096.

None of the dependent claims recite any particularized, technical means for performing any function; rather, they continue the pattern of functional, results-oriented language coupled with conventional components and protocols described in the specification. Claims 2-4, 10, 11, and 12 specify that the text messages include specific types of informational requests or emergency instructions. '016 Patent at 15:58-16:63. But the kind of information included in a message does not change that the claim is directed to an abstract idea. *See Elec. Power Grp.*, 830 F.3d at 1353 (collecting information is abstract "including when limited to particular content"). Claims 5 and 13 specify the message format as SMS or MMS—standard wireless communication protocols that, as discussed the Step Two discussion above, do not change the nature of the abstract idea or provide an inventive concept. Similarly, Claims 6-8 and 14-16 add only conventional two-way-messaging and location-query details: *e.g.*, receiving textual messages over the second communications network (Claims 6, 15) and accessing GPS through a standard "API" (Claims 8, 14). '016 Patent at 16:5-17:10. Accordingly, they fail to change the nature of the claims or alter the eligibility analysis.

Claims 17-20 add details about the user interface, for example, explicating that it is configured to display "user-selectable options"—a standard feature of computer software. *Id*. at 17:11-30. These claims fail to add any inventive concept as "the collection, organization, and display of … information on a generic display device is abstract." *Trading Techs. Int'l,* 921 F.3d at 1093. Claims 21-24 ('016 Patent at 18:1-17) recite the automation of an abstract idea, as they address automatic transmission of messages in response to abandoned calls. *Credit Acceptance Corp.*, 859 F.3d at 1055 (The "automation of manual processes using generic computers does not constitute a patentable improvement."). Finally, Claims 25-27 relate to presenting historical emergency information associated with previous calls. '016 Patent at 18:18-30. Retrieving and displaying prior call data is a conventional database function that adds no inventive concept. *See Cap. One Bank*, 792 F.3d at 1368 (a database is a generic computer element); *see also Solutran*, 931 F.3d at 1166 (data collection, processing, and storage are abstract ideas). In sum, all of the dependent claims are "linked to the same abstract idea" as Claim 1 and do not alter the eligibility analysis. *Content Extraction*, 776 F.3d at 1348; *see also Berkheimer*, 881 F.3d at 1365 (claims may be treated as representative absent a "meaningful argument for the distinctive significance" of other claims).

## V.   CONCLUSION

For these reasons, Carbyne respectfully asks the Court to grant its motion for judgment on the pleadings that all asserted claims of the '016 Patent are invalid under § 101, and to dismiss CST's infringement claims with prejudice.

Dated: June 26, 2026

*/s/ Mark Siegmund*_____
Mark Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Phone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

Alyssa Caridis
**Orrick, Herrington & Sutcliffe LLP**
355 S. Grand Ave
Suite 2700
Los Angeles, CA 90071
Phone: (213) 612-2372
Email: acaridis@orrick.com


*Attorney for Defendants*
CARBYNE, INC., AND CARBYNE, LTD.

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, I caused the document above and exhibits thereto to be sent to all counsel of record via electronic mail.

*/s/ Mark Siegmund*_____
Mark Siegmund