**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>CARBYNE, INC., and CARBYNE LTD.<br><br>Defendants and Counterclaim-Plaintiffs. | Civil Action No. 1:24-cv-01497<br><br>JURY TRIAL DEMANDED |

**CARBYNE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS FOR INVALIDITY UNDER 35 U.S.C. § 101**

## I. INTRODUCTION

CST's opposition defends an invention that its patent does not claim. The brief describes an invention that delivers "instantaneous and highly accurate location information," Opp. at 8, solves an alleged FCC indoor-wireless-location crisis, avoids app downloads, spares the voice channel from data traffic, and saves ten thousand lives a year (!). But that's not the '016 Patent, which. requires none of this. No claim recites accuracy, or any accuracy metric. No claim recites "real-time" or "instantaneous" location, or any latency requirement. No claim excludes location apps. No claim addresses network burden, deployment cost, or indoor positioning. Eligibility is measured by the claims, and the claims here recite result-oriented functions (receive a call, send a text with a link, query for location, display it) performed by admittedly conventional components.

Unable to defend its actual claims, CST retreats to procedure: the motion is too late, too early, and secretly one for summary judgment. Not so. Carbyne filed the motion at the right time: immediately after this Court resolved the claim-construction disputes. And CST's conversion argument collapses on its own filings: CST asks the Court to exclude its own sworn expert declaration, filed on this docket to win claim construction, while CST itself submits ten exhibits, including three marketing blog posts—two written *twelve years after* the patent was filed—offered for the truth of what 911 practice supposedly was in 2013. The Court need not resolve that irony. Even setting the Lipoff declaration aside entirely, the claims, the specification, and the prosecution history (CST's own Exhibit 8) independently compel judgment of invalidity under § 101. Nothing in Rule 56(d) discovery can amend or overturn the intrinsic record.

## II. CST DEFENDS UNCLAIMED SUBJECT MATTER

The § 101 inquiry "must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). A specification's description of a technical problem cannot confer eligibility on claims that are not limited to the

purported solution, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769-70 (Fed. Cir. 2019), and unclaimed benefits touted in a brief cannot supply eligibility either, *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363-64 (Fed. Cir. 2021); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (claim must "recite" improvement).

The problem the '016 Patent addresses is, at bottom, a communication problem, *not* a computer-technology problem. On CST's own account, operators supposedly could not learn where a wireless caller was. *See* Opp. at 4-5. But the patent itself admits that this problem had a longstanding conventional, human solution: "[c]onventionally, emergency phone calls are answered by an emergency call center," and operators "gather and/or attempt to gather information" from callers, including "the location of the emergency and/or the caller." '016 Patent at 1:28-36. Contrary to CST's narrative, the claims just instruct one to use conventional computer functions to make the same queries that a human operator would otherwise make. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("automation of [a] fundamental economic concept … through the use of generic-computer functions" is not patent eligible under § 101). Any resulting benefit is the generic speed-and-efficiency gain courts consistently hold insufficient. *Id.* ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible"); *see also Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir.), *cert. denied*, No. 25-505 (U.S. Dec. 8, 2025).

CST's effort to find a saving technological improvement flies in the face of the '016 Patent's generalized claim language that governs. CST says the invention provides "instantaneous and highly accurate location information." Opp. at 8. Whatever the challenge of providing such information, the claims say nothing about how overcome it. The word "accurate" appears in no claim. No claim specifies precision, error bounds, or reliability. No claim requires real-time

operation: claim 1 requires only sharing location "responsive to receipt of location information," whenever that occurs, and regardless of accuracy. CST says the claimed URL "avoid[s] any delay" from "download[ing] an app," Opp. at 6, but no claim excludes apps. That negative limitation was invented for CST's opposition. CST says the second network "avoid[s]" burdening the voice call and "leverage[s] the cellular infrastructure," Opp. at 6, but the specification says only that the transmission network "may be a different network" than the reception network: with no reason, no coordination mechanism, and no claimed benefit. '016 Patent at 4:1-6. Nor does the claim require that the "different network" utilize (or avoid) any specific infrastructure. And CST's centerpiece (FCC's alleged wireless-location problem) appears ***nowhere*** in the patent. The specification never mentions landline address databases, ALI lookup, indoor positioning, tower triangulation, or E911. Indeed, the specification's *only* account of the problem is the conventional operator practice quoted above. None of CST's imagined limitations are claimed and so cannot save this patent.

This mismatch is affirmative evidence of ineligibility. If CST had invented a specific technique for instantaneous, accurate wireless location, it could have claimed one. It did not. It claimed the *result*—query devices "for location information" through unspecified "web resources"—*however achieved*. That is the "essentially result-focused, functional character of claim language" that the Federal Circuit has repeatedly held ineligible. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). And it explains every "factual dispute" CST has conjured: each concerns unclaimed benefits, not the claims. Disputes about subject matter the claims do not recite cannot defeat Carbyne's motion.[1] *See Secured Mail Sols. LLC v. Universal*

[1] CST's revisionist history also refutes itself. The FCC report on which CST builds its "problem" narrative issued in March 2014, *after* the patent's 2013 filing. Cutri Decl., Ex. 4. Its remaining "evidence" of 2013 practice consists of a *March 2026* blog post (Ex. 3), an undated Carbyne marketing post (Ex. 6), and a November 2025 Axon post (Ex. 7). CST reconstructs a 2013 problem from documents written a dozen years later, while asking the Court to ignore the actual claims.

*Wilde, Inc*., 873 F.3d 905, 913 (Fed. Cir. 2017) (on a Rule 12 motion, a court may disregard "allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification") (cleaned up).

## III. *ALICE* STEP ONE: THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA

***The claims, not CST's gloss, control.*** CST accuses Carbyne of "overgeneralizing," but Carbyne's articulation (communicating with and gathering information (including location) from emergency callers) tracks the claim language element by element: receive calls, generate and transmit messages, query for location, present information. Mot. at 6-7. CST's complaint that Carbyne describes the abstract idea "inconsistently," Opp. at 13, elevates phrasing over substance: "communicating with emergency callers" and "gathering and presenting information" are the same concept at the same altitude, just as *Electric Power* itself described the abstract idea there several ways. 830 F.3d at 1353-54. Even under *CST's* preferred framing ("locating wireless callers"), the claims collect, transmit, and display information: the "familiar class" of ineligible concepts. *Id.*

***CST's authorities discuss patents that claimed their improvements.*** In *CardioNet*, *LLC v. InfoBionic, Inc.*, the claims recited specific heartbeat-detection logic that the specification described as an improvement over existing cardiac monitors, and the challenger offered no record support for its assertion that doctors had long performed the claimed technique. 955 F.3d 1358, 1368-71 (Fed. Cir. 2020). The posture here is reversed: the intrinsic record itself *admits* that the claims track a conventional human practice, '016 Patent at 1:28-36, and CST can point to nothing in the specification to refute it. And *CardioNet* in fact confirms that step one may be resolved on the intrinsic record alone, without extrinsic evidence or fact-finding. *Id*. at 1372-74. In *Contour IP Holding LLC v. GoPro, Inc.*, the claims recited a *specific technical means* (parallel generation of two differently processed data streams) that improved the camera itself. 113 F.4th 1373, 1379-80 (Fed. Cir. 2024). Likewise, in *Thales Visionix Inc. v. United States*, the claims recited an

unconventional physical arrangement of inertial sensors. 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). By contrast, claim 1 here improves no device and arranges nothing unconventionally: (1) the specification admits the phone's geolocation "may be natively supported within the wireless mobile device," '016 Patent at 9:64-10:3; (2) networks are invoked but unexplained, *id.* at 1:62-2:39; and (3) "web resources" are defined only by their *results*. Last, *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.* involved a new laboratory method of making a hepatocyte preparation, meaning it was not an information/data processing-type claim at all. 827 F.3d 1042, 1048 (Fed. Cir. 2016).

***The construction CST won forecloses the argument CST now makes.*** CST protests that Carbyne's observations about the lack of any algorithm "rehash" indefiniteness. Opp. at 13 n.8. Not so. Under the plain-and-ordinary construction *CST proposed and won*, Dkt. No. 73, the module terms are untethered to any disclosed structure or algorithm and cover the recited functions *however performed*. The absence of technical specificity under that construction is a separate § 101 defect because purely functional claims "without any technical details for the tangible components" are abstract. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018). CST sought and got a construction specifically intended not to limit its claims to any disclosure in the specification. It cannot now re-tether them to unclaimed disclosure to survive *Alice*. A claim "is not like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than … what its words express." *White v. Dunbar*, 119 U.S. 47, 51 (1886).

## IV. *ALICE* STEP TWO: THERE IS NO INVENTIVE CONCEPT

***CST's "inventive concept" is a novelty argument.*** The cornerstone of CST's step two argument is the prosecution history. Because the examiner found the URL-plus-location-query combination absent from the cited art, CST says the combination must be "novel and inventive."

Opp. at 16-18. Carbyne disputes novelty, but it's beside the point, as CST conflates two distinct inquiries. "[E]ligibility and novelty are separate inquiries," *Two-Way Media*, 874 F.3d at 1340, and "a claim for a new abstract idea is still an abstract idea," ineligible "no matter how groundbreaking the advance," *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163, 1170 (Fed. Cir. 2018). Where a supposedly novel feature *is* the abstract idea (here, obtaining the caller's location by asking the caller's device) novelty *cannot* double as the inventive concept. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept"). Tellingly, the Notice of Allowance CST invokes identifies no improvement to any computer, network, or device. Dkt. No. 78-4, at 4. For this reason, *Ancora Techs., Inc. v. HTC Am., Inc.* is inapposite. There, the prosecution history "reinforced" that the claims made an unconventional, structure-specific use of BIOS memory to improve computer security. 908 F.3d 1343, 1348-49 (Fed. Cir. 2018).

***CST's remaining authorities fare no better.*** *Cellspin Soft, Inc. v. Fitbit, Inc.* turned on specific, plausible allegations of unconventional implementation pleaded in the complaint. 927 F.3d 1306, 1317-18 (Fed. Cir. 2019). CST's complaint alleges only "efficiency" and "faster, more effective responses," Dkt. No. 1 ¶ 5, allegations that ***trigger***, rather than avoid, the rule that speed and efficiency gains from computerization "do not themselves create eligibility." *Recentive*, 134 F.4th at 1214; *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024) ("[c]onclusory allegations" or those "wholly divorced from the claims or the specification" cannot save claims from ineligibility). Likewise, *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC* found inventiveness in an unconventional network placement of a filtering tool. 827 F.3d 1341, 1350 (Fed. Cir. 2016). By contrast, the combination here (answer the call, message the caller, ask where they are, display the answer) is the normal dispatcher

sequence, as the specification readily admits. '016 Patent at 1:28-36; 6:39-45. Similarly, the claims in *DDR Holdings, LLC v. Hotels.com, L.P.* were "necessarily rooted in computer technology" to solve an Internet-specific problem. 773 F.3d 1245, 1257 (Fed. Cir. 2014). But gathering a caller's location is *not* an Internet problem, and doing it faster does not make it one. *Id*. (distinguishing ineligible claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet"). Last, *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC* hinged on the specification's identification of a *specific* authentication-timing step as the unconventional departure, specifically claimed. 15 F.4th 1091, 1098-99 (Fed. Cir. 2021). The '016 Patent identifies nothing unconventional, which CST's own expert confirms.

***Berkheimer does not help CST.*** CST cites *Berkheimer* to argue that efficiency improvements "over the prior art" are inventive, inserting its own bracketed comparison to "landline database systems." Opp. at 18. *Berkheimer v. HP, Inc.* found a factual dispute only as to specification disclosures "to the extent they are captured in the claims." 881 F.3d 1360, 1369 (Fed. Cir. 2018). But the '016 Patent claims capture ***no*** accuracy improvement, ***no*** speed requirement, and the specification never describes—much less do the claims require—any improvement over landline databases, which the patent *nowhere mentions*. The "query" limitation recites where location information comes from, not any technique for obtaining it, and an improvement invented for CST's brief is not "captured in the claims." *Id*. There is nothing for a factfinder to find.

***CST's admissions remain unanswered.*** CST nowhere disputes (it can't) that its expert told this Court that the claimed modules perform "well known and routine" functions "employed every day," at "every telecommunications company," requiring no "further elaboration" as to "meaning, function, structure, or operation." Dkt. No. 31-2 ¶¶ 46-52. Nor does CST dispute that, to escape

the § 112(f) during prosecution, it identified the modules' only "structure" as "computer program modules that are executed by processors." Dkt. No. 78-3, at 26-27. CST's sole rejoinder is that Mr. Lipoff did not opine on the *ordered combination*. Opp. at 20. This concedes the elements and misses the point: the combination is the specification-*admitted* human sequence, and CST's ordered-combination "evidence" is the novelty-based prosecution history addressed above.

## V. CARBYNE ADDRESSED EVERY ASSERTED CLAIM, AND CST'S NEW LABELS CHANGE NOTHING

CST's assertion that Carbyne offered "no claim-specific analysis," Opp. at 1, is refuted by the motion itself, which addresses every claim, individually or in groups. Mot. at 18-20. CST's rebranding of dependent limitations as an "API-based geolocation interface," a "bidirectional transmission system," and a "call-abandonment detection system" supplies adjectives, not limitations. The "API" of claims 8 and 14 invokes geolocation functions the specification admits "may be natively supported" on the device and is otherwise unexplained. '016 Patent at 9:64-10:3. Two-way messaging (claims 6-7, 15-16) *is* SMS that we all use and have for decades. Auto-texting abandoned calls (claims 21-24) automates a callback, but "automation of manual processes using generic computers" is not inventive. *Credit Acceptance Corp. v. Westlake Servs. LLC*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). Under *Berkheimer*, CST must present a "meaningful argument for the distinctive significance" of particular claims. 881 F.3d at 1365. Renaming limitations is not that.

## VI. THE MOTION IS PROPERLY DECIDED NOW, ON THE PLEADINGS

***No conversion.*** Courts in this Circuit may consider their own records in the same case on a Rule 12 motion without converting it. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). This is especially so where, as here, the motion follows claim construction: the Lipoff declaration is part of the claim construction

record in this case, submitted by CST to support the very construction the Court adopted. Dkt. No. 73. Carbyne does not ask the Court to notice the *truth* of Mr. Lipoff's opinions. Rather, we ask the Court to hold CST to positions it successfully urged upon this Court and the Patent Office. That is judicial estoppel and prosecution disclaimer, *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017), and its force does not depend on the opinions' truth. That Carbyne "disputes"[2] Mr. Lipoff's opinions misses the point. Carbyne does not rely on those opinions being *true*, it relies on the fact (established by this Court's own docket and not subject to any dispute) that CST made these representations and prevailed on them—and has never retracted them and does not dispute them now.

CST's position is also irreconcilable with its own filings. CST's opposition attaches both the prosecution history and the *Markman* transcript, Cutri Decl., Exs. 8, 9. This *concedes* that the file history and this Court's records are properly before the Court, while asking the Court to exclude a sworn declaration *CST filed on this docket*. And CST goes further, submitting marketing blog posts from 2025 and 2026 for the truth of 2013 industry practice, then requesting depositions of the authors (admitting they are disputed hearsay). CST cannot have it both ways.

***Alternatively, exclude Lipoff and grant anyway.*** Happily, the Court need not resolve any of this. Even excluding the Lipoff declaration entirely, the claims, the specification's admissions, *e.g.*, '016 Patent at 1:28-36, 2:17-28, 9:64-10:3, and the prosecution history (including CST's own Exhibit 8) *independently* establish abstraction and conventionality. CST's suggestion that exclusion would leave Carbyne's motion "conceded," Opp. at 3 n.2, is flat out false: the motion rests first, and, if needed, *exclusively*, on the intrinsic record, which no discovery can change.

[2] What Carbyne disputed at *Markman* was Mr. Lipoff's legal conclusion that the module terms escape § 112(f)—a position that Carbyne preserves. *See* Dkt. No. 78 at 15 n.5.

***Rule 56(d) is no refuge.*** A Rule 56(d) movant must show with specificity how identified, obtainable discovery would create a genuine dispute of material fact. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). The Cutri Declaration fails on every category. "Industry practice" discovery cannot amend the specification's admission that operators gather caller location, and CST's expert could have offered a declaration *now* if the facts supported one. Carbyne's documents "touting" products in 2026 say *nothing* about conventionality in 2013 and *nothing* about the claims. Deposing the authors of CST's *own* 2025-2026 blog posts cannot create a 2013 factual dispute. Eligibility is decided from the claims (as construed) and intrinsic evidence; that record is complete, fixed, and already in CST's possession. This is why the Federal Circuit has repeatedly affirmed resolution of § 101 at the pleadings, where (as here) discovery could not change the analysis. *SAP*, 898 F.3d at 1169-70; *AI Visualize*, 97 F.4th at 1379-80; *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-62 (Fed. Cir. 2023).

***Timing.*** Finally, CST protests that the motion is simultaneously too late (a year after answer) and too early (before discovery closes). It is neither. Carbyne moved immediately after the *Markman* order resolved the claim construction disputes, including construction of the very "module" terms on which CST's opposition relies. And CST's "failed IPR" rhetoric is doubly irrelevant because a discretionary institution denial adjudicates nothing, and of course § 101 cannot be raised in an IPR at all. 35 U.S.C. § 311(b).

## VII. CONCLUSION

The claims CST obtained—not the invention its opposition describes—are before the Court. These claims are directed to an abstract idea implemented with components CST has twice admitted are conventional. Carbyne respectfully requests that the Court grant judgment on the pleadings that the asserted claims of the '016 Patent are invalid under 35 U.S.C. § 101 and dismiss CST's infringement claims with prejudice.

Dated: July 17, 2026

*<u>/s/ Mark D. Siegmund</u>*

Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Phone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

Alyssa Caridis
**Orrick, Herrington & Sutcliffe LLP**
355 S. Grand Ave
Suite 2700
Los Angeles, CA 90071
Phone: (213) 612-2372
Email: acaridis@orrick.com

Evan Brewer
**Orrick, Herrington & Sutcliffe LLP**
401 Union St Ste 3300
Seattle, WA 98101
Phone: (206) 839-4300
Email: ebrewer@orrick.com

*Attorney for Defendants*
CARBYNE, INC., AND CARBYNE, LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2026, I caused the document above and exhibits thereto to be sent to all counsel of record via electronic mail.

*/s/ Mark D. Siegmund*
Mark D. Siegmund