**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **CENTRALSQUARE TECHNOLOGIES, LLC,**<br><br>*Plaintiff and Counterclaim-Defendant,*<br><br>v.<br><br>**CARBYNE, INC., and CARBYNE LTD.**<br><br>*Defendants and Counterclaim-Plaintiffs.* | Civil Action No. 1:24-cv-01497<br><br>**JURY TRIAL DEMANDED** |

**ORDER**

Before the Court is Defendants Carbyne, Inc.'s and Carbyne Ltd.'s (collectively, "Defendants" or "Carbyne") Motion for Judgment on the Pleadings for Invalidity Under 35 U.S.C. § 101. Dkt. No. 78. The Court has reviewed Carbyne's Motion (Dkt. No. 78), Plaintiff CentralSquare Technologies, LLC's ("Plaintiff" or "CST") Response (Dkt. No. 81), and Carbyne's Reply (Dkt. No. 82). After due consideration, the Court finds that Carbyne's Motion should be **DENIED**.

## I.    PROCEDURAL HISTORY

On December 4, 2024, CST filed a complaint accusing Carbyne of infringing U.S. Reissue Patent No. RE50,016 ("the '016 Patent") titled "SMS Communication During Emergencies." *See* Dkt. No. 1. CST accuses Carbyne of infringing its patent directly and indirectly through, for example, using and selling its APEX product. Dkt. No. 1 ¶¶ 36-37, 50-52.

On April 22, 2026, the Court issued a claim construction order addressing the parties' claim construction disputes. Carbyne filed this motion approximately two months later, on June 26, 2026.

## II.  LEGAL STANDARD

### A.  Patent Eligibility Under 35 U.S.C. §101

Section 101 defines subject matter eligible for patenting as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long read exceptions into § 101: laws of nature, natural phenomena, and abstract ideas are not patentable. *See, e.g.*, *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). According to the Court, these are the fundamental tools of scientific endeavor and granting monopolies over them risks dousing the flame of innovation the U.S. patent regime is meant to fan. *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012).

In 2014, the Supreme Court laid out a two-part framework to resolve patent eligibility disputes under § 101 in its landmark *Alice* decision. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 217. If so, courts must then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (omitting quotations). This second step is often described as the search for an "inventive concept," which ensures that the "patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 566 U.S. at 72–73.

### B.  Motion for Judgment on the Pleadings

A party may move to dismiss a claim if the complaint has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "After the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion to dismiss under [R]ule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. When considering a motion to dismiss, a court must assume that all well-pleaded facts are true and view them in the light most favorable to the non-moving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## III. DISCUSSION

### A. Procedural Posture

The Court treats Carbyne's motion as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). The Court takes judicial notice of Mr. Lippoff's sworn declaration (Dkt. 31-2)

submitted by CST during the claim construction process. *See* Fed. R. Evid. 201(b). The Court

disregards the attachments to CST's opposition that are outside the scope of the pleadings and

judicial record. *See* Dkt. No. 82.

**B. Independent Claim 1**

Claim 1 of the '016 Patent recites:

1.  A system configured to provide, to emergency operators, communication through textual messages, the system comprising:

one or more processors configured to execute computer program modules, the computer program modules comprising:

a call reception module configured to receive incoming emergency voice calls being placed to an emergency call center through an emergency communications network from wireless mobile devices, the incoming emergency voice calls including a first voice call placed from a first wireless mobile device;

an outgoing message module configured to generate outgoing textual messages for transmission to wireless mobile devices from which incoming emergency voice calls are received such that a first outgoing textual message is generated for transmission to the first wireless mobile device based on the first voice call;

a transmission module configured to transmit the outgoing textual messages to the appropriate wireless mobile devices through a second communications network that is different than the emergency communications network such that the first outgoing textual message is transmitted to the first wireless mobile device through the second communications network;

a presentation module configured to present incoming emergency voice calls to emergency operators through a user interface, wherein the user interface includes a set of user-selectable options, and wherein the presentation module is further configured to receive user input from emergency operators to select one or more of the set of user-selectable options; and

a web-hosting module configured to host web resources configured to:

(i) query wireless mobile devices for location information; and

(ii) share, responsive to receipt of location information, received location information with the presentation module;

wherein the first outgoing textual message includes a uniform resource locator (URL) link to the web resources; and

wherein the presentation module is further configured to present shared queried location information to emergency operators through the user interface.

**C. *Alice* Step 1**

At *Alice* step one, the Court determines whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *See Alice*, 573 U.S. at 217. The inquiry focuses on the claim as a whole, but the Court must be careful not to describe the claim at a level of abstraction untethered to the claim language. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). Overgeneralizing a claim, if carried too far, would result in every invention being abstract because every invention can be reduced to a more general principle. *See id.* (quoting *Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981)). Therefore, one relevant inquiry is "whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *See McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

Carbyne characterizes Claim 1 at different points as directed to "communicating with emergency callers," "gathering and presenting information," or obtaining information from wireless devices and presenting it to emergency operators. Dkt. 78 at 7–9. Those descriptions do not capture the claim's focus. Claim 1 instead recites a particular telecommunications arrangement for obtaining location information from a wireless device during an emergency call: the system (1) receives an emergency voice call through an emergency communications network, (2) generates and transmits a text message to the caller's wireless device through a different communications network, (3) includes in that message a URL link to hosted web resources configured to query the wireless device for location information, and (4) presents information to emergency operators through a user interface. '016 Patent at 15:10–57. The claim thus specifies two communication paths and how they work together to obtain the device's location.

This multi-step, dual-network technique is materially more specific than an emergency operator asking a caller for information. Carbyne's proposed abstract ideas omit the features that

address the problem presented by wireless calls, which may not be associated with a fixed location. Describing the claim merely as "communicating with emergency callers" or "gathering and presenting information" states the result while disregarding the claimed technique for achieving it.

Nor does the claim merely automate a longstanding manual practice. The patent acknowledges that emergency operators conventionally answered calls and attempted to gather information verbally, including the caller's location. '016 Patent at 1:28–36. The claimed technique, however, does not simply automate that verbal exchange. It transmits a text message with a URL over a separate communications network and uses the linked web resource to query the wireless device for location information.

The facts of this case are similar to *Contour IP Holding LLC v. GoPro, Inc*., 113 F.4th 1373 (Fed. Cir. 2024). The claims there concerned a point-of-view camera that generated two video streams of different video quality and wirelessly transmitted the lower-quality stream to a remote device. *Id.* at 1375–76. Although the challenger characterized the claims at a high level as directed to "wireless network communication," the Federal Circuit held that they "require specific, technological means"— parallel data-stream recording with the lower-quality stream transmitted to a remote device—that improved real-time viewing of the camera's recording. *Id*. at 1379–80. The claims were not abstract merely because their components were known or because the patent did not improve the camera's physical machinery. What mattered at step one was that the claims required a particular technological arrangement that produced a technological improvement.

Like the claims in *Contour*, Claim 1 requires a particular technological arrangement rather than generic network communication. It coordinates an emergency voice call over one network with a text message containing a URL over a second network, followed by a device-location query and presentation of the returned location to the operator.

Carbyne responds that *Contour* improved the camera itself through parallel generation of two processed data streams, whereas Claim 1 improves no device. Dkt. 82 at 4–5. But step one does not turn on whether the invention changes a device's physical structure. The relevant comparison is between an abstract result and a specific claimed means for achieving a technological improvement. *See McRO*, 837 F.3d at 1314. As in *Contour*, the claim here does not simply invoke network communication as an end; it recites a particular use of different network communications to solve a technological problem.

Carbyne's authorities do not compel a different result. In *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016), the claims were directed to collecting, analyzing, and displaying information without claiming any inventive technology for performing those functions. The claims in *Bozeman Financial LLC v. Federal Reserve Bank of Atlanta*, 955 F.3d 971, 978–79 (Fed. Cir. 2020) were directed to conventional business practices for verifying financial documents including receiving information from financial records, storing, and comparing that information, and displaying the results. Similarly, the claims in *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1327–28 (Fed. Cir. 2017) were directed to creating an index and using it to search for and retrieve data—another form of longstanding information organization.

Claim 1 is different. It is not focused on the content, analysis, or display of location information, but on a technique for obtaining the location of a wireless device. The claim identifies one network for the voice call, requires a different network for an outgoing text, specifies that the text contains a URL to hosted web resources, requires those resources to query the wireless device for location information, and routes the returned information to the operator's interface. '016 Patent at 15:10–57. Together, those limitations define a technological architecture for obtaining location data

from a mobile device whose location may not reliably be determined from a fixed-address database or the caller's verbal report.

Carbyne argues that the claim employs conventional processors, networks, text messaging, URLs, and web resources (Dkt. 78 at 6, 10), but that does not change the step-one analysis. The Court considers the claim as a whole and asks whether the focus of the claim is an abstract idea. *See Enfish*, 822 F.3d at 1335–36; *Contour,* 113 F.4th at 1379–80. Whether the claimed combination was conventional may bear on other patentability inquiries, but Carbyne has not shown that the combination's character as a whole is merely the use of generic computers as tools to perform an otherwise abstract process.

The Court therefore finds that Claim 1 is directed to a specific technological technique for obtaining a wireless emergency caller's location. Thus, the claim is directed to an improvement in emergency telecommunications technology rather than an abstract idea.

The '016 Patent contains two independent claims. Claim 9 recites a computer-implemented method that mirrors the requirements of Claim 1. '016 Patent at 16:19–52; Dkt. 78 at 18 ("Claim 9 mirrors Claim 1"). Claim 9 is therefore not directed to an abstract idea for the same reasons. The challenged dependent claims add limitations to Claims 1 and 9 and do not change the focus of the claimed invention. Accordingly, the Court finds that the challenged claims are not directed to an abstract idea and denies Carbyne's motion for judgment on the pleadings under 35 U.S.C. § 101.

### D. *Alice* Step 2

Although the Court finds under step one that the claims are not directed to an abstract idea, the Court also finds the claims contain an inventive concept. At step two, the Court considers whether the claim limitations, "both individually and 'as an ordered combination,'" contain an inventive concept sufficient to transform the nature of the claim into a patent-eligible application.

*Alice*, 573 U.S. at 217.

An inventive concept may be found in the nonconventional arrangement of claim limitations even when the limitations are implemented using existing technology. *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Thus, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* "[I]mplementing a well-known technique with particular devices in a specific combination" may be inventive when the ordered combination provides a technological solution not previously employed in that manner. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019). The proper inquiry therefore concerns the claimed arrangement as a whole, not whether its limitations can be separated and described individually.

As discussed above, Claim 1's ordered combination begins with an emergency voice call received from a wireless mobile device through an emergency communications network. Based on that call, the system sends the same device a text message through a different network. The message contains a URL to hosted web resources that query the device for location information and share the returned information with the presentation module for display to the emergency operator. '016 Patent at 15:10–57.

These limitations do not merely describe generic communications. Each stage enables the next: the voice call prompts a text to the calling device over a different network; the URL connects the device to hosted resources that query the device itself; and the returned location information is routed to the operator's interface. The inventive concept lies in that coordinated sequence.

The ordered combination provides a technical solution to the location problem created by the shift from landlines to wireless devices. By establishing a second, device-directed communication path, the system obtains location information without relying exclusively on the caller's verbal

9

response. See '016 Patent at 15:10–57.

The Federal Circuit's reasoning in *BASCOM* is instructive. There, the inventive concept was not merely filtering content, but a particular network arrangement that placed the filtering tool at a specific location and preserved individualized filtering for remote users. *BASCOM*, 827 F.3d at 1349–50. The court held that the ordered combination supplied a technical improvement over prior filtering systems. *Id*. at 1350. The same principle applies here. The asserted inventive concept is not the generalized objective of locating or communicating with an emergency caller. It is the claimed arrangement that receives a voice call over one network while using a second network to transmit a text message. That arrangement improves the operation of the emergency telecommunications system in a manner analogous to the network-based improvement in *BASCOM*.

Carbyne characterizes the claimed order as an ordinary dispatcher sequence of answering a call, messaging the caller, asking for a location, and displaying the answer. Dkt. 78 at 13; Dkt. 82 at 6-7. But the system does not merely ask the caller for a location. It uses a network separate from the emergency voice network to transmit a URL that causes hosted web resources to query the wireless device itself. Carbyne identifies no conventional practice employing that sequence. Its characterization therefore does not establish that the claimed arrangement as a whole was well-understood, routine, and conventional.

Carbyne also relies on CST's claim-construction expert, who described the claimed modules' individual functions as well known and routinely used in telecommunications systems. Dkt. 78 at 14–16; Dkt. 82 at 7-8. But that testimony did not state that the ordered combination was conventional and therefore does not resolve the relevant inquiry.

Accordingly, the Court finds that Claim 1's multi-step, dual-network technique constitutes an inventive concept. Claim 9 recites the corresponding method using the same ordered sequence and is

inventive for the same reasons. *See* '016 Patent at 16:19–52; Dkt. 78 at 18. The dependent claims incorporate that inventive, ordered combination and further limit it. The challenged claims therefore satisfy *Alice* step two and Carbyne's motion is denied for this independent reason.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings for Invalidity Under 35 U.S.C. § 101 (Dkt. No. 78) is **DENIED**.

**SIGNED** on August 3, 2026.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE