**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

CENTRALSQUARE TECHNOLOGIES, LLC

Plaintiff and Counterclaim-Defendant,

v.

CARBYNE, INC. and CARBYNE LTD.,

Defendants and Counterclaim-Plaintiffs.

Civil Action No. 1:24-cv-01497-ADA

JURY TRIAL DEMANDED

**PLAINTIFF CENTRALSQUARE TECHNOLOGIES, LLC'S OPPOSED MOTION TO COMPEL DISCOVERY PERTAINING TO DEFENDANTS' SOURCE CODE**

# TABLE OF CONTENTS


**I. Introduction ..... 1**

**II. Background ..... 2**

**III. Legal Standard ..... 5**

**IV. Argument ..... 5**

A. Carbyne Must Identify Any Differences Between the Late Code And the August 24, 2026 Code ..... 6

B. Carbyne Must Identify The Earliest And Latest Versions Of The Code ..... 9

**V. Conclusion ..... 10**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
No. C 11-1846 LHK (PSG), 2012 WL 1595784 (N.D. Cal. May 4, 2012) .......... 7, 8

*GREE, Inc. v. Supercell Oy*,
No. 2:19-CV-00311-JRG, 2021 WL 603726 (E.D. Tex. Feb. 16, 2021) .......... 7

*Pressey v. Patterson*,
898 F.2d 1018 (5th Cir. 1990) .......... 5

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
685 F.3d 486 (5th Cir. 2012) .......... 5

**Rules**

Fed. R. Civ. P. 37(b) .......... 5

Fed. R. Civ. P. 37(b)(2) .......... 5

# I. INTRODUCTION

There is no dispute Carbyne violated this Court's order "to produce the entire source code base for both its Apex and Universe products [the infringing products in this case] from 2017, 2018, and 2024 and to specifically identify what code constitutes the Earliest Version versus the Later Version for both Accused Products" by August 24, 2026. Ex. 1 ("Order") at 1; Dkt. 89. Carbyne produced code up and through August 24, 2026 (the "August 24, 2026 Code"), and CST relied on that code to prepare its Final Infringement Contentions, which were served in accordance with the Court's Scheduling Order. But on September 1, after CST had revealed its final infringement positions, Carbyne put 156,758 files onto the source code computer (the "Late Code") and claimed that because Carbyne believed there were "issues" with the code that had been produced up through August 24, 2026, it was allowed to ignore the Court's Order and force CST to incur hundreds of thousands of dollars associated with reviewing the Late Code, 76% of which appears to be entirely new. On top of Carbyne's violation, it refuses to provide a complete explanation as to why the August 24, 2026 Code (which Carbyne repeatedly insisted was the operative code for its products) does not establish infringement. Carbyne also maintains that it should be allowed to freely rely on the Late Code to argue non-infringement and that it will not provide its complete non-infringement position based on the Late Code until expert reports. Carbyne also insists that as a condition to answering ***any*** discovery about code or non-infringement, CST must agree that Carbyne's violations of the Court's order are "resolve[d] … in full," that the Late Code is allowed into the case, that CST bear all fees and expenses associated with Carbyne's violation of the Court's orders, and that Carbyne can later use the Late Code as a basis to delay this case. Ex. 2 at 3 (2026-09-17 Email from E. Brewer).

Carbyne has no basis for its extraordinary demands, and thus CST respectfully requests that the Court order that:

- Carbyne provide a complete answer to CST's Interrogatory No. 1, fully stating all reasons it contends CST's Final Infringement Contentions do not establish infringement, including, for example, whether (and if so, why) Carbyne contends (1) the code cited in CST's Final Infringement Contentions does not correctly reflect the operation of Carbyne's products, (2) that there is any code missing from CST's Final Infringement Contentions such that there is an alleged failure of proof, and (3) there is any other deficiency in CST's Final Infringement Contentions that supports one or more of Carbyne's non-infringement positions;

- Carbyne identify the Earliest and Latest Versions of the August 24, 2026 Code, without reference to the Late Code; to the extent Carbyne contends it cannot do so, it must explicitly state that it cannot and identify the specific portions of the Late Code that are needed to provide the Court-ordered identification of the Earliest and Latest Versions of code.

- Carbyne identify in detail all differences between the August 24, 2026 Code and the Late Code, specifically identifying any differences that impact CentralSquare's Final Infringement Contentions;

- Carbyne identify any Late Code that was not previously produced that it contends supports non-infringement, the complete basis for that contention, and whether that non-infringement contention can be established only by the Late Code;

Put simply, CST should not be penalized for Carbyne's failure to comply with the Court's order. To correct Carbyne's violation, CST needs Carbyne to provide the complete impact of the proposed Late Code on the parties' infringement and non-infringement contentions, rather than CST attempting to parse the Late Code without an understanding from Carbyne of why the August 24, 2026 Code is not sufficient. CST reserves all rights to seek further remedies, including exclusion of Carbyne's non-infringement arguments and/or attorneys' fees and costs.

## II. BACKGROUND

On December 4, 2024, CentralSquare Technologies LLC ("CentralSquare") sued Carbyne for patent infringement, alleging Carbyne's Apex and Universe products (the "Accused Products") infringe United States Reissue Patent RE50,016. Dkt. 1. Because the Accused Products are software-based, CentralSquare sought Carbyne's source code to understand how they operate,[1] Ex.

---

[1] Because source code determines how software operates, Carbyne's source code provides evidence of how the Accused Products work, and therefore, of infringement.

3 at pp. 7-9, which Carbyne agreed to provide by July 1, 2026. Ex. 4 at 6-7 (2026-06-29 Email from E. Brewer).

The parties also agreed to produce two versions of the source code: the "Earliest Version" (the first to feature the accused functionality) and the "Latest Version" (as of the complaint filing). *Id.* at 19-21 (2026-06-01 Email from E. Brewer). But Carbyne's initial production included only one version with no clearly identifiable date. *Id.* at 1 (2026-07-01 Email from A. Mina). After more than a month of unresolved deficiencies with Carbyne's code, CentralSquare moved to compel. *See* Ex. 5 (2026-08-19 Email from K. Li and attachment). In opposition, Carbyne told the Court that it had already "produce[d] two versions of each Accused Product . . . producing four sets of code," and that "Carbyne has identified which folders correspond to which product and version, including that: APEX/main and Universe are the later code; APEX/src is the earlier code." *Id.* at 2-3. Carbyne argued that, because it had already produced all of the code necessary for CentralSquare to understand its products and how they worked, "[n]othing remains to compel." *Id*. at 2. The Court disagreed and granted the motion to compel on August 19, 2026, ordering Carbyne to "produce the entire source code base for its Apex and Universe products from 2017, 2018, and 2024 and to specifically identify what code constitutes the Earliest Version versus the Later Version for both Accused Products" by August 24, 2026. Ex. 1 at 1.

Notwithstanding Carbyne's unambiguous representations to the Court that "nothing remain[ed] to compel" and that it had already produced all of the necessary code, Carbyne produced additional code on Monday, August 24, 2026. Ex. 2 at 41-42 (2026-08-25 Email from A. Mina). CentralSquare immediately reviewed this code and incorporated it into its Final Infringement Contentions, which were due by Friday, August 28, 2026. Then, the day before CentralSquare's Final Infringement Contentions were due, Carbyne claimed that it had

"discover[ed] a larger collection issue . . . that [it] need[ed] to validate." *Id.* at 30 (2026-08-27 Email from E. Brewer). Carbyne tried to leverage this alleged discovery into yet another extension of the final contentions deadline, despite the fact that CentralSquare had already repeatedly extended the deadline, including because of Carbyne's failure to produce code. *Id.* at 29-30 (2026-08-27 Email from A. Mina). Carbyne's suggestion also overlooked the fact that the Court had ordered Carbyne to produce the code by August 24, 2026 precisely because CentralSquare had pointed out that the final contentions deadline was imminent. Ex. 5 at 3. Worse, Carbyne did not seek leave to produce additional code beyond the Court's deadline. As such, CentralSquare served its Final Infringement Contentions on August 28, 2026, based on the August 24, 2026 Code.

After CentralSquare had revealed its infringement positions, Carbyne loaded 156,758 files onto the source code computer on September 1, 2026. Decl. of G. Cutri ("Cutri Decl.") ¶ 7. Approximately 76% of the 156,758 files are new (*i.e.*, they are not in the August 24, 2026 Code). *Id.* ¶ 8. Carbyne then suggested that it was amending its Court-ordered identification of the Earliest and Latest Versions of its code and that this identification now included not only the August 24, 2026 Code, but also the Late Code. Carbyne has refused to provide a cogent explanation of how it could have complied with the Court's order by August 24, 2026 when the code it now relies on had not even been placed on the source code computer by then. Nor has Carbyne sufficiently explained the relationship, if any, between the identification of the Earliest and Latest Versions of code it had provided on August 24, 2026 pursuant to the Court's order and the new, out-of-time identifications on September 3, 2026 that it wants to make part of this case.

Carbyne's non-compliance with the Court's order creates (at least) five problems: ***First***, it is unclear whether the Late Code is necessary to establish how the accused products function for purposes of analyzing infringement, or if the August 24, 2026 Code is sufficient. ***Second***, if the

Late Code is necessary, it is unclear how the August 24, 2026 Code CentralSquare relied on for its Final Infringement Contentions differs from the Late Code, and whether and how those differences affect CentralSquare's infringement positions. ***Third***, it is unclear whether the Late Code includes new code that would counter CentralSquare's infringement theories, which were served *before* the Late Code. ***Fourth***, if the Late Code is part of the case, CentralSquare cannot easily identify what the Earliest and Latest Versions of Carbyne's code are, and thus cannot determine how the Accused Products changed over time. ***Fifth***, if the Late Code is permitted, CentralSquare would have to incur substantial, additional costs and fees to review code that was produced in violation of a Court order as well as amend its Final Infringement Contentions, if necessary.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 37(b)(2), if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." "Fed. R. Civ. P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders," including "a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quotation omitted). The Court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Id.* (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)).

## IV. ARGUMENT

CentralSquare should not bear the burden of Carbyne's failure to timely produce source code or comply with Court orders. Rather, to avoid further prejudice to CentralSquare, Carbyne must be compelled to remedy the problems it created, *without* prejudice to CentralSquare's ability to seek further relief or imposing further costs to CentralSquare.

### A. Carbyne Must Identify Any Differences Between the Late Code And the August 24, 2026 Code

Carbyne was required to "produce the entire source code base for its Apex and Universe products from 2017, 2018, and 2024" by August 24, 2026. Ex. 1 at 1. It failed to do so. Instead, after the Court's deadline, Carbyne loaded 156,758 new files onto the source code computer. Cutri Decl. ¶ 7. Over 120,000 of those files (~76%) have hash values not found in the August 24, 2026 Code, which means they are new files.[2] *Id.* ¶ 8. As a result, CentralSquare cannot determine whether its infringement positions, which relied on the August 24, 2026 Code, remain accurate. Indeed, when asked to identify the substantive differences between the Late Code and the August 24, 2026 Code, Carbyne refused, stating "CentralSquare has a reviewer on site and its own experts, and the code speaks for itself." Ex. 2 at 23-25 (2026-09-02 Email from E. Brewer). But the cost associated with reviewing the 150,000 late-produced files, let alone establishing how they relate, if at all, to the August 24, 2026 Code, would easily cost hundreds of thousands of dollars.[3] Carbyne's suggestion that it can place a new set of files onto the source code computer after the Court's deadline and that CentralSquare must allow this material into the case and figure out what it contains, all at CentralSquare's expense, improperly shifts the burden of fixing Carbyne's error to CentralSquare.

---

[2] A "hash value" is a unique identifier that acts as a digital fingerprint for a file. Identical files have the same hash value. Files with different hash values are not identical (i.e., they have different content, metadata, sizes, etc.).

[3] To make matters even more confusing, after Carbyne loaded the Late Code, it stated that 120,000 of the Late Code files are "files that are copies of the same file at a different path." Ex. 6 at 1 (2026-09-15 Email from E. Brewer). Carbyne also asserted that in the August 24, 2026 Code there were 150,000 files, "none of which are Carbyne source code," *id.* This raises even more questions about how Carbyne assembled its Court-ordered production and how it can be reconciled with the Late Code.

To remedy these issues, Carbyne should be compelled to: (1) identify in detail all differences between the August 24, 2026 Code and the Late Code, including any differences Carbyne contends impact CentralSquare's Final Infringement Contentions; and (2) supplement its response to CentralSquare's Interrogatory No. 1 (regarding Carbyne's non-infringement positions) to state all reasons it contends CentralSquare's Final Infringement Contentions do not establish infringement, including whether (and how) the cited August 24, 2026 Code no longer reflects the Accused Products' operation, and whether code is missing from CentralSquare's Contentions such that there is an alleged failure of proof, and any other deficiencies in CentralSquare's Contentions that support Carbyne's non-infringement positions. Without this information, CentralSquare would be forced to review all 156,758 of the Late Code files to determine which, if any, impact its infringement positions. Carbyne should also identify any source code produced for the first time in the Late Code that it contends supports non-infringement (and explain why), so CentralSquare can determine whether such Late Code is properly before the Court. To be clear, Carbyne should not be permitted to rely on ***any*** late-produced source code. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012) (precluding reliance on late-produced code); *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00311-JRG, 2021 WL 603726, at *3 (E.D. Tex. Feb. 16, 2021) (striking expert opinions relying on late-produced source code).

Carbyne suggested that it would allow CentralSquare to amend its Final Infringement Contentions to account for the Late Code, but that is not enough. Without guidance from Carbyne regarding what the Late Code is, CentralSquare would need to expend substantial resources—both time and costs—to assess the impact of the 156,758 newly-added files. Worse, it would have to do so with no assistance from Carbyne who not only knows its own code, but also how it collected the August 24, 2026 Code versus the Late Code. Meanwhile, Carbyne has unrestricted access to

its code, complete access to engineers who know it and its collection and production intimately, and a clear roadmap of the infringement case against its products. Not only is it the right resolution for Carbyne to fix its own mistake, but it is also the most efficient resolution for Carbyne (who has insisted that it already knows the differences between the August 24, 2026 Code and the Late Code) to bear the burden of identifying the impact of its own discovery failures. *See, e.g.*, *Apple*, 2012 WL 1595784, at *4 (sanctioning defendant because plaintiff "[could not] be expected to perform such a massive undertaking [to review the late-produced code] and spend valuable time and resources this late because of its opponent's failure to follow the court's orders").

Carbyne's proposed solutions are inadequate. *First*, its offer to "identify any code [CentralSquare] ha[s] cited that is erroneous <u>in that it comes from a different date or version</u>," Ex. 2 at 3 (2026-09-17 email from E. Brewer), is unreasonably limited to only ***date*** discrepancies. This approach would leave Carbyne free to surprise CentralSquare in an expert report with a contention that the August 24, 2026 Code is somehow not operative or not representative, or that the Late Code is a better representation of how the Accused Products work. *Second*, Carbyne's offer to narrowly supplement its response to Interrogatory No. 1 was expressly contingent on CentralSquare waiving all right to seek further relief related to the Late Code, including costs and fees. *Id*. But this would reward Carbyne for its failures, including because it would preclude CentralSquare from later arguing that the Late Code (and Carbyne's new non-infringement positions associated therewith, if any) should be excluded from the case. It would also mean that CentralSquare would bear the cost of Carbyne's non-compliance with the Court's order, which is prejudicial and unfair. At bottom, while CentralSquare is not presently seeking its attorneys' fees and costs for Carbyne's failure to produce source code as ordered (but expressly reserves its right to do so in the future), it does not follow that CentralSquare must surrender the ability to do so as

a condition of learning that its infringement positions are still accurate. Final Contentions were served over a month ago, and the November 12, 2026 discovery deadline is fast approaching. CentralSquare should not have to litigate in the dark, and the Court should not condone Carbyne's refusal to provide any explanation of its non-infringement positions unless CentralSquare relinquishes all future rights to further relief.

Carbyne has also attempted to shift blame onto CentralSquare, arguing that "[CentralSquare] sought Court order of 'all code' approximately one week before contentions were due." *Id.* at 6 (2026-09-10 Email from E. Brewer). Carbyne is wrong. CentralSquare sought Carbyne's code months ago, repeatedly asked for it to be provided well in advance of the contentions deadline and, when Carbyne refused to comply, moved for a Court order requiring Carbyne to produce any outstanding code ***before the contentions deadline***. Indeed, Carbyne promised that it would produce its source code by July 1, 2026—well before CentralSquare filed its motion to compel, Ex. 4 at 6-7 (2026-06-29 Email from E. Brewer)—but failed to do so. Carbyne then told the Court there was "nothing" to compel because it had already produced "all code," a representation that was unquestionably wrong. And then, Carbyne missed the Court's deadline to produce the required code and provide identifications of the Earliest and Latest Versions of code. CentralSquare never argued nor agreed that Carbyne could wait until after the Court's deadline to replace nearly its entire source code production, demand a case extension, and saddle CentralSquare with the enormous expense of reviewing the Late Code. Carbyne's suggestion that the situation it alone created is CentralSquare's fault for seeking agreed code that should have been provided months ago does not withstand scrutiny.

### B. Carbyne Must Identify The Earliest And Latest Versions Of The Code

Despite the Court's order to "identify what code constitutes the Earliest Version versus the Later Version for both Accused Products," Ex. 1 at 1, Carbyne has not done so. Instead, Carbyne

lists files from the Late Code and then adds a "*see also*" with references to folders from the August 24, 2026 Code. Ex. 2 at 20-21 (2026-09-03 Email from E. Brewer). But Carbyne refuses to provide a complete description of the relationship between these two sets of code, stating instead that "names and locations have changed over the years, including the groupings and dependencies around [the accused products] APEX and Universe" and that "Universe and APEX were merged and unmerged at various points." *Id*. Even worse, the files in the folders have different hash values, confirming they are not identical. As such, CentralSquare has no reasonable way of establishing what Carbyne might later contend are the operative Earliest and Latest Versions of the code. Indeed, it is not even clear whether Carbyne itself believes the Late Code must be included as part of its identification because it has stated that "for all of the code produced, Carbyne does not admit, concede, or contend that the code is relevant." Ex. 2 at 21 (2026-09-03 Email from E. Brewer). And Carbyne has stated that the Late Code "necessarily includes Carbyne code that is not part of [the accused] Apex or Universe [products]" and that "Carbyne reserves all positions as to what is and is not within the accused products." *Id.* at 16 (2026-09-04 Email from E. Brewer). In short, Carbyne ignores the Court's directive to "identify the Earliest and Latest Versions of the code," insisting that it can produce irrelevant code that is not within the Accused Products and force CentralSquare to wade through hundreds of thousands of lines of code to try to discern what is actually at issue in this case. This is untenable.

Carbyne should be compelled to (1) identify the Earliest and Latest Versions of the August 24, 2026 Code, without reference to the Late Code, and (2) to the extent Carbyne cannot do so, explicitly state so and identify the specific portions of the Late Code that are needed to provide the Court-ordered identification of the Earliest and Latest Versions of code.

## V. CONCLUSION

The Court should grant this motion and the requested relief in the proposed order.

Dated: October 1, 2026

Respectfully submitted,

*/s/ Kat Li*
Kat Li
Texas State Bar No. 24070142
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100

Adam R. Alper (*pro hac vice*)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Michael W. De Vries (*pro hac vice*)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Dr.
Costa Mesa, CA 92626
Telephone: (714) 982-8822

Gianni Cutri (*pro hac vice*)
gcutri@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000

Lionel M. Lavenue (VA 49,005)
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Phone: (571) 203-2700

*Attorneys for Plaintiff CentralSquare Technologies, LLC*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for the parties have complied with the conference requirement of Local Rule CV-7(g). On Monday, September 14, 2026, counsel for Plaintiff and Defendants met and conferred via teleconference regarding the relief requested herein. Counsel for Defendants stated they are opposed to the relief sought.

*/s/ Kat Li*
Kat Li

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on October 1, 2026.

*/s/ Kat Li*
Kat Li