**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CENTRALSQUARE TECHNOLOGIES, LLC,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>CARBYNE, INC., and<br>CARBYNE LTD.,<br><br>Defendants and Counterclaim-Plaintiffs. | Civil Action No. 1:24-cv-01497<br><br>JURY TRIAL DEMANDED |

**CARBYNE'S OPPOSED MOTION TO LIMIT THE NUMBER OF ASSERTED CLAIMS AND PRIOR ART REFERENCES**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

- A. The Asserted Patents ..... 2
- B. PTO Proceedings and Carbyne's Pending Motion to Stay ..... 3
- C. Current Status of the Case ..... 3
- D. The Parties' Narrowing Impasse ..... 4

III. LEGAL STANDARD ..... 5

IV. THE COURT SHOULD ORDER THE PARTIES TO NARROW TO 10 ASSERTED CLAIMS AND 12 PRIOR ART REFERENCES. ..... 6

- A. CST's Offer to Drop Only Two of Its 19 Asserted Claims Is Not A "Significant" Narrowing. ..... 6
- B. Narrowing to 10 Asserted Claims and 12 Prior Art References Is a Significant and Reasonable Narrowing at This Stage of the Case. ..... 8
- C. Carbyne Will Narrow Reciprocally. ..... 9

V. CONCLUSION ..... 10

# I. INTRODUCTION

Each side in this case asserts a single patent. Plaintiff and Counterclaim-Defendant CentralSquare Technologies, LLC ("CST") asserts 19 claims of U.S. Patent No. RE50,016 (the "'016 patent"). Defendants and Counterclaim-Plaintiffs Carbyne, Inc. and Carbyne Ltd. (together, "Carbyne") assert all 20 claims of U.S. Patent No. 11,689,383 (the "'383 patent").

The Scheduling Order required the parties to meet and confer by October 15, 2026, to discuss "*significantly* narrowing the number of claims asserted and prior art references at issue." Dkt. 68 at 1 (emphasis added). CST offers to drop only two asserted claims—from 19 to 17—a mere 10.5% reduction. That offer is not a "significant[]" narrowing under any interpretation. Dkt. 68 at 1. The Federal Circuit Advisory Council's model order, versions of which the Eastern District of Texas and the Dallas Division of the Northern District of Texas have adopted, confirms as much. Ex. A (FCAC Model Order) ¶¶ 2, 4; Ex. B (E.D. Tex. Model Order) ¶¶ 2, 4; Ex. C (N.D. Tex. Model Order) ¶¶ 2, 4.[1] Under these model orders, a plaintiff asserting a single patent (as CST does here) must narrow to 15 claims *before* claim construction and to eight claims after. Ex. A ¶¶ 2–4; Ex. B ¶¶ 2–4; Ex. C ¶¶ 2–4. CST's offer of 17 claims fails to meet even the pre-claim-construction limit.

Carbyne proposes that both parties narrow to 10 asserted claims and 12 prior art references. This reduction is reasonable—and in fact generous—at this stage of the case. Claim construction is complete. Dkts. 73, 103-2.[2] The parties have served final contentions and will serve opening expert reports on December 21, 2026. Dkts. 87 at 2, 102 at 1.

[1] Courts routinely apply the model order. *See, e.g.*, Ex. D at 1–2; Ex. E at 1–2; Ex. F at 1–2.

[2] In the Court's minute entry regarding the *Markman* hearing (Dkt. 73), the Court stated that it maintains its preliminary construction as to the argued terms (Dkt. 103-2 at 3–4) and that a written order would follow. A written order never followed, but there is no dispute that claim construction is complete. *See* Dkt. 103 at 2–3, 9–10.

Limiting each side to 10 claims and 12 prior art references serves two purposes. First, it *significantly* narrows the case—a ~50% reduction of both sides' asserted claims—as the Scheduling Order requires. Dkt. 68 at 1. Second, the Scheduling Order requires the parties to perform a second narrowing to "triable limits." Dkts. 68 at 2, 102 at 1. Because each side can only reasonably try approximately five claims at trial, Carbyne's proposal positions each party to perform a second narrowing that is again a 50% reduction (from 10 claims to five)—rather than a much larger reduction (*e.g.*, as CST would have it, approximately 17 claims to five). *See* Ex. G at 2, 4 (reporting that, in the venues with the most patent cases, including this District, plaintiffs assert an average of five claims at trial). Narrowing in the first instance—rather than right before trial—will greatly conserve the parties' and Court's resources. *Id.* at 1 ("Courts devote considerable resources to managing patent cases, and … are often asked to decide issues … that become irrelevant once the plaintiff inevitably narrows its case.").

## II. BACKGROUND

### A. THE ASSERTED PATENTS

CST filed its Complaint on December 4, 2024. Dkts. 1, 1-8. CST asserts claims 1–2, 5–10, 13–19, 21–22, and 25–26 of the '016 patent, totaling 19 claims. Ex. H at 6. Only claims 1 and 9 are independent, and they are nearly identical, except that claim 1 is a system claim and claim 9 is a method claim. Dkt. 1-8. The other 17 asserted claims are dependent. *Id.* The following pairs of dependent claims are nearly identical: claims 2 and 10; claims 5 and 13; claims 6 and 15; claims 7 and 16; and claims 8 and 14. *Id.*

On May 12, 2025, Carbyne answered and counterclaimed for infringement of the '383 patent. Dkt. 11. Carbyne asserts all 20 claims of the '383 patent, of which three (claims 1, 8, and 15) are independent and 17 are dependent. Dkt. 11-1; Ex. I at 2.

### B. PTO PROCEEDINGS AND CARBYNE'S PENDING MOTION TO STAY

In May 2025, Carbyne petitioned for *inter partes* review of claims 1, 5–9, 13–17, and 25–27 of the '016 patent. Dkt. 46-2. The Patent Trial and Appeal Board (the "PTAB") instituted review on all three grounds. Dkt. 46-5 at 5, 28. The Director later vacated institution on procedural grounds without reaching the merits. Dkt. 55-1 at 2–4. Carbyne then requested *ex parte* reexamination on the same grounds, and on July 1, 2026, the Patent and Trademark Office (the "PTO") found that a substantial new question of patentability existed as to all three grounds and ordered reexamination on all challenged claims (the "EPR"). *See* Dkt. 98-2. The EPR thus covers 13 of CST's 19 asserted claims: both asserted independent claims (claims 1 and 9) and 11 of the 17 asserted dependent claims. *See id*. at 5.

Separately, on CST's petition, the PTAB instituted *inter partes* review of all 20 claims of the '383 patent on December 11, 2025 (the "IPR"). Dkt. 46-8. The PTAB's final written decision is due by December 11, 2026. 35 U.S.C. § 316(a)(11).

On October 5, 2026, Carbyne moved to stay this case pending the EPR and IPR. Dkt. 98. CST opposed, Dkt. 103, and Carbyne replied on October 26, 2026, Dkt. 104. That motion remains pending. Narrowing now does not undercut that motion because the stage of the litigation is measured as of the date the stay motion was filed. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014); *see also Twitch LLC v. Bote, LLC*, No. 6:24-cv-00233-KC, 2024 WL 3898297, at *3 (W.D. Tex. Aug. 21, 2024) (considering "the status of the litigation at the time the stay is requested").

### C. CURRENT STATUS OF THE CASE

Claim construction is complete. *See* Dkts. 73, 103-2. Both sides served final contentions on August 28, 2026. Dkt. 87 at 2. Fact discovery closes December 11, 2026; opening expert reports are due December 21, 2026; and the second meet-and-confer to narrow to "triable limits" is

February 16, 2027. Dkt. 102 at 1. After Judge Albright's departure from the bench, the Chief Judge ordered that "all deadlines, scheduling orders, and obligations" remain in effect pending reassignment, vacated "[a]ll hearings, conferences, and other proceedings including jury selection and trial settings,"[3] and provided that a district or magistrate judge may address pending motions. Dkt. 90 ¶¶ 1–3. The Court has not yet reassigned the case.

### D. THE PARTIES' NARROWING IMPASSE

On October 15, 2026, CST proposed that each party drop two asserted claims and any prior art it has asserted in the IPR or EPR. Ex. J at 3–4. Beyond failing to narrow each side's asserted claims significantly, CST's proposal treats prior art one-sidedly: CST offered to drop only prior art it will lose anyway once the PTAB issues its final written decision in the IPR. Section 315(e)(2) will then estop CST from asserting any invalidity ground it raised or reasonably could have raised during the IPR. 35 U.S.C. § 315(e)(2). Carbyne, by contrast, would have to drop four of its 13 prior art references—Brooks, the SARLOC conference paper, Salafia, and Marr—none of which is subject to any estoppel. *See* Ex. J at 2. CST's proposal thus asks Carbyne to abandon its EPR art before any examiner rules, in exchange for CST dropping IPR art that § 315(e)(2) will strip from CST regardless. *Id.*

On October 16, 2026, Carbyne responded with its own proposal: each side should narrow to 10 asserted claims and 12 prior art references. Ex. J at 3. Carbyne offered to meet and confer that same day or the following Monday. *Id.* On October 19, CST rejected Carbyne's proposal. *Id.* at 2–3. Carbyne then offered a compromise on its EPR grounds: for any asserted claim the

[3] Carbyne understands this order to vacate the deadlines for serving pretrial and rebuttal disclosures (jury instructions, exhibit lists, witness lists, and deposition designations), filing motions *in limine*, and filing the Joint Pretrial Order and Pretrial Submissions, because these filings are keyed to the now-vacated pretrial conference and trial settings. *See* Dkts. 68 at 2–3; Dkt. 90 ¶ 2.

examiner rejects on a ground presented in Carbyne's EPR request, Carbyne would not pursue that ground against that claim at trial if the claim survives the EPR unamended. *Id.* at 1–2. Carbyne also offered to meet and confer the next morning. *Id.* at 2.

CST did not respond until October 28, when it called narrowing to 10 claims "premature" and again proposed only that each side drop two asserted claims. *Id.* at 1. Beginning November 2, Carbyne repeatedly asked to confer on narrowing. The parties conferred on November 16, and CST maintained its proposal. *See* Certificate of Conference.

## III. LEGAL STANDARD

"A district court has inherent authority to reasonably limit the number of patent claims the parties may assert, to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Acantha LLC v. DePuy Orthopaedics Inc.*, No. 15-cv-01257, 2017 WL 5186376, at *4 (E.D. Wis. Nov. 8, 2017) (citation modified).

The Scheduling Order (Dkt. 68)—which follows the Court's Order Governing Proceedings for Patent Cases (the "OGP")—required the parties to meet and confer by October 15, 2026, "to discuss significantly narrowing the number of claims asserted and prior art references at issue." Dkt. 68 at 1. The Court has explained that it requires the narrowing meet-and-confers "not because the Court wants parties to merely discuss narrowing asserted claims, but to actually narrow their claims." Ex. K (*Epistar Corp. v. Lowe's Cos.*, No. 6:20-cv-00420-ADA, Dkt. 110 (W.D. Tex. July 14, 2022)) at 4; *see also, e.g.*, Ex. B at 1 n.1 ("The parties are encouraged to discuss limits lower than those set forth in this Model Order based on case-specific factors …."); Ex. C at 1 n.1 (similar). "Unless the parties agree to the narrowing, they are ordered to contact the Court" to resolve the dispute. Dkt. 68 at 1.

A second meet and confer (following expert discovery) then narrows the case "to triable limits." *Id.* at 2; Dkt. 102 at 1. These obligations remain in "full force and effect" pending reassignment. Dkt. 90 ¶ 1.[4]

**IV. THE COURT SHOULD ORDER THE PARTIES TO NARROW TO 10 ASSERTED CLAIMS AND 12 PRIOR ART REFERENCES.**

**A. CST'S OFFER TO DROP ONLY TWO OF ITS 19 ASSERTED CLAIMS IS NOT A "SIGNIFICANT" NARROWING.**

Courts routinely compel further narrowing when a patentee offers only a token reduction. In *Visto*, the patentee withdrew 23 of the 58 claims it asserted across five patents—a 40% reduction—after the parties briefed the defendants' motion to limit claims, yet the court ordered it "to further reduce the number of asserted claims ***to no more than ten***"—and to do so *before* the *Markman* hearing. Ex. L (*Visto Corp. v. Little Red Wagon Techs., Inc.*, No. 3:11-cv-02373-M, Dkt. 104 (N.D. Tex. Oct. 18, 2012)) at 1 (emphasis added). In *ParkerVision*, the plaintiff asserted nine patents and 328 claims, and this Court stated it would require the plaintiff to narrow to no more than ***four claims per patent*** after *Markman*. Ex. M (*ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, Dkt. 23 (W.D. Tex. June 26, 2020) (minute entry)) at 2–3. In *Acantha*, a single-patent case, the court cut the patentee's ***68 asserted claims to 10*** after the close of fact discovery because the patent's claims were "relatively duplicative." 2017 WL 5186376, at *3–4. In *Gentherm*, the patentee voluntarily narrowed to 18 claims and argued that this was sufficient; the court disagreed and ordered a further reduction to ***two claims per patent*** and 14 claims in total before the *Markman*

---

[4] The OGP identifies its email dispute-chart procedure as the Court's "preferred mechanism" for disputes over "narrowing claims and prior art." OGP at 4 n.5. Because the case has not been reassigned to a district judge—meaning there are no chambers for Carbyne to contact under that procedure (*id.* at 4)—Carbyne presents this dispute by motion so that a district or magistrate judge may resolve it under the Chief Judge's September 2, 2026 order. Dkt. 90 ¶ 3. Carbyne will proceed by dispute chart if the Court prefers.

hearing. *Gentherm Can., Ltd. v. IGB Auto., Ltd.*, No. 13-cv-11536, 2016 WL 1170801, at *2–3 (E.D. Mich. Mar. 25, 2016). Notably, the courts in *Visto* and *Gentherm* compelled these reductions *before* claim construction. CST, by contrast, has the benefit of the Court's constructions and Carbyne's final invalidity contentions.

Here, CST's offer to narrow from 19 to 17 asserted claims—a 10.5% reduction—does not satisfy the Scheduling Order's plain requirement to "significantly narrow[]" the asserted claims. Dkt. 68 at 1. CST demands to keep 17 claims, which exceeds not only the post-*Markman* standard (eight claims) but even the pre-*Markman* standard (15 claims). Ex. A ¶¶ 2–4; Ex. B ¶¶ 2–4; Ex. C ¶¶ 2–4. CST's proposal is unreasonable.

CST's two justifications for its proposal lack merit. First, CST claims that, because each party asserts only one patent, more than 10 claims is appropriate. Ex. J at 2. But the model orders already account for this and provide for eight claims after *Markman*. Ex. A ¶ 4; Ex. B ¶ 4; Ex. C ¶ 4.

Second, CST claims Carbyne's source code production and discovery responses are deficient. Ex. J at 1. This is incorrect. Most critically, for the agreed-upon earliest and latest versions of the accused Carbyne products, CST has had access to the relevant source code since the summer of 2026 and to Carbyne's entire source code base since September 1, 2026. Dkt. 101 (Carbyne's Opp'n to CST's Mot. to Compel) at 2–4, 7. But CST inexplicably refused to review the September 1, 2026 production *for more than 2.5 months* and only began reviewing it on November 16. Declaration of Evan Brewer ¶ 2. CST cannot reasonably claim a source code production is deficient that it has not reviewed. CST's complaints are also irrelevant: they go to infringement details, not to which of CST's own claims best represent its case. That choice belongs to the patentee, who is "in the best position to narrow the dispute." *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011).

In sum, the Court should reject CST's unreasonable proposal.

### B. NARROWING TO 10 ASSERTED CLAIMS AND 12 PRIOR ART REFERENCES IS A SIGNIFICANT AND REASONABLE NARROWING AT THIS STAGE OF THE CASE.

Carbyne's proposal is principled—and generous—at this stage because it exceeds the eight claims and nine prior art references that the model orders contemplate after *Markman*. Ex. A ¶¶ 3–4; Ex. B ¶¶ 3–4; Ex. C ¶¶ 3–4. Many of CST's claims are nearly identical, including claims 1 and 9, claims 2 and 10, claims 5 and 13, claims 6 and 15, claims 7 and 16, and claims 8 and 14. Dkt. 1-8; *see Acantha*, 2017 WL 5186376, at *4 (ordering plaintiff to narrow from 68 to 10 asserted claims where the claims were "relatively duplicative"). With 10 claims, CST could elect both independent claims and eight dependent claims, including all six asserted claims that the EPR does not challenge. *See* Dkt. 98-2 at 5. And with 10 claims, each party will be well-positioned to perform a final narrowing to "triable limits." Dkts. 68 at 2, 102 at 1.

Under the E.D. Tex. and N.D. Tex. model orders, the narrowing to eight claims must occur at least 28 days before opening expert reports. Ex. B ¶ 3; Ex. C ¶ 3. This case has reached that point, as opening expert reports are currently due December 21, 2026. Dkt. 102 at 1; *see* Ex. N (*ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-cv-00455-LED, Dkt. 243 (E.D. Tex. Sept. 11, 2013)) at 1–2, 5 (ordering election of 10 claims and 12 references after the *Markman* hearing and before expert reports). Narrowing now will prevent the needless expense of expert reports on claims that will never be tried. *See* Ex. A at 1 ("Each unnecessary asserted claim and prior art reference must be analyzed and charted[.]"); Ex. O (*Unified Messaging Sols. LLC v. Facebook, Inc.*, No. 6:11-cv-00120-LED, Dkt. 388 (E.D. Tex. July 12, 2012)) at 2 ("Narrowing the case at an earlier stage will serve to reduce the overall costs of the litigation by eliminating needless discovery regarding issues that will likely be dropped prior to trial, and allow the Court to dedicate its resources to the truly dispositive and meritorious issues."). Because this is a "case management

motion," the parties will quickly complete briefing, meaning the Court could rule before opening expert reports are due on December 21, 2026. Local Rule CV-7(d)(2), (e)(2). Even if the Court rules after opening expert reports are served, narrowing would still prevent needless waste on rebuttal expert reports, summary judgment motions, and *Daubert* challenges. *See* Ex. G at 1.

The safeguards in Carbyne's proposed order address any residual concern. Either party may seek to add back a withdrawn claim on a specific showing that it presents a unique issue of infringement or validity; either party may re-elect claims after the EPR concludes or the PTAB issues its final written decision in the IPR; and the order dismisses withdrawn claims without prejudice. Proposed Order ¶¶ 4–6; *see Katz*, 639 F.3d at 1312–13; Ex. K (*Epistar*) at 4 (explaining that a patentee's voluntary withdrawal of claims to narrow a case "is treated as dismissal without prejudice") (citation omitted).

### C. CARBYNE WILL NARROW RECIPROCALLY.

Carbyne proposes that the same limits apply to both sides. Within five days of the Court's order on this Motion, Carbyne will elect no more than 10 of its 20 asserted '383 patent claims. Carbyne will also narrow its prior art against the '016 patent to 12 references. Ex. J at 3. A limit of 12 references falls between the model orders' single-patent limits before and after claim construction (18 and nine), Ex. B ¶¶ 2–4, and matches what courts order at this stage, *see, e.g.*, Ex. N (*ThinkOptics*) at 1–2 (10 claims and 12 references after the *Markman* hearing and before expert reports); Ex. G at 3, 8 (courts typically allow two to three references per asserted claim; suggesting 25 references alongside 10 claims before expert reports); *Acantha*, 2017 WL 5186376, at *4 (declining to limit defendants' prior art where the number of references was not unmanageable). Carbyne also reaffirms its offer regarding the three EPR grounds: for any asserted claim the examiner rejects on a ground in Carbyne's EPR request, Carbyne will not pursue that

ground at trial if the claim survives unamended. Ex. J at 2. This reciprocal approach is fair and equal to both sides.

## V. CONCLUSION

For these reasons, the Court should order each party to narrow to 10 asserted claims and 12 prior art references pursuant to the timelines set forth in the proposed order submitted with this Motion.

Respectfully submitted,

*<u>/s/ Mark D. Siegmund</u>*

Mark D. Siegmund
State Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Phone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

Alyssa Caridis
Jake O'Neal
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Phone: (213) 612-2372
acaridis@orrick.com
joneal@orrick.com

Evan Brewer
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Phone: (206) 839-4300
ebrewer@orrick.com

**Attorneys for Defendants Carbyne, Inc. and Carbyne Ltd.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for Carbyne conferred with counsel for CST regarding the relief requested in this motion on November 16, 2026. CST opposes the relief requested. The parties could not reach agreement because CST will not reduce its asserted claims below 17.

*/s/ Mark D. Siegmund*
Mark Siegmund

## CERTIFICATE OF SERVICE

I certify that on November 23, 2026, I served a true and correct copy of the foregoing document on all counsel of record via the Court's CM/ECF system.

*/s/ Mark D. Siegmund*
Mark Siegmund